George M. Haley – UT 1302
David R. Parkinson – UT 8258
HOLME ROBERTS & OWEN LLP
299 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone:    (801) 521-5800
Facsimile:    (801) 521-9639
george.haley@hro.com
david.parkinson@hro.com

Charles W. Douglas (*pro hac vice*)
Richard F. O'Malley, Jr. (*pro hac vice*)
Lisa A. Schneider (*pro hac vice*)
Neil H. Wyland (*pro hac vice*)
Todd L. Krause (*pro hac vice*)
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone:    (312) 853-7000
Facsimile:    (312) 853-7036
cdouglas@sidley.com
romalley@sidley.com
lschneider@sidley.com
nwyland@sidley.com
tkrause@sidley.com

*Attorneys for Defendants Pfizer Inc., G.D. Searle LLC, and Pharmacia Corporation*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, a Utah Non-Profit Education Institution; and Dr. DANIEL L. SIMMONS, an individual,<br><br>                Plaintiffs,<br><br>       vs.<br><br>PFIZER, INC., a Delaware Corporation, G.D. SEARLE & COMPANY, a Delaware corporation, G.D. SEARLE LLC, a Delaware Limited Liability Company, MONSANTO COMPANY, a Delaware Corporation; and PHARMACIA CORPORATION, a Delaware Corporation,<br><br>                Defendants. | Case Number: 2:06CV890DAK<br><br><br>**PFIZER'S RESPONSE TO BYU'S EXPEDITED MOTION TO PRESERVE AND PRODUCE EVIDENCE**<br><br><br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

## I.     INTRODUCTION

Prior to BYU filing its motion to preserve and produce evidence of certain COX-2 related documents, Pfizer had agreed to review and produce the collection of documents in the Pfizer legal department at issue in the motion.  (*See* May 20, 2009 Letter from Jon Spanbauer to Mark Bettilyon (attached as Exhibit 1).)  BYU, however, is insistent that its attorneys be allowed to enter Pfizer's facilities and perform a review of these documents, a procedure which would provide no protection for Pfizer's privileged documents.

Despite the fact that BYU's inside and outside counsel and Professor Simmons have repeatedly shown disregard for the security of Pfizer confidential information at past document inspections (including the use of small digital cameras and scanners to impermissibly copy documents without Pfizer's permission), and despite the fact that Pfizer believes that BYU is currently in possession of all of the relevant, nonprivileged documents from the collection of documents at issue in the Pfizer legal department, Pfizer has agreed to allow BYU to inspect the documents under a limited number of conditions meant to ensure the security of the documents and to safeguard Pfizer's privileged information.  As of the date of this response, BYU has not accepted any of Pfizer's offers and, although the parties are continuing to negotiate the terms of such an inspection, they have to date been unable to reach an agreement.  To avoid these issues of security and privilege, Pfizer believes that, in lieu of the inspection that BYU is requesting, it should be allowed to provide BYU with a discrete production of the nonprivileged documents from this collection, along with a corresponding discrete privilege log.

As for the other issues raised in BYU's Motion, before BYU even filed its motion, Pfizer had already agreed to preserve the documents as they are located in the work room – a fact that BYU concedes.  (BYU Memorandum at 5 ("Pfizer's counsel responded by assuring BYU

that it would leave the COX-2 related collection in the room until this Court makes a

decision.").)  That, of course, continues to be the case.  Because Pfizer has agreed to either

produce the documents in question or to allow an inspection of the documents by BYU attorneys,

Pfizer does not believe that the 30(b)(6) deposition that BYU is requesting (seeking information

about "how and when these documents were collected, how they have been maintained, who has

maintained them, the integrity of the collection, and all other aspects of the collection") is either

necessary or relevant to BYU's claims in this litigation.  Finally, Pfizer should not be required to

produce Mr. Warner for a deposition regarding his affidavit because Mr. Warner is involved in

the defense of this case, and likely has no information that is not privileged that is not contained

in his redacted affidavit.  Thus, any such deposition would be contrary to settled principles in this

Circuit.

II.      **ARGUMENT**

      A.      **Pfizer Has Agreed To Allow BYU Attorneys Into the Pfizer Legal
              Department To Inspect the Documents At Issue.**

      BYU seeks to inspect and review the documents at issue in their current location

in the Pfizer legal department or monitor the transport of the documents to "another more

convenient review room" at Pfizer.  (BYU Memorandum at 6.)  Unfortunately, the behavior of

BYU attorneys at other document inspections in Chicago, New York, and St. Louis has raised

serious concerns regarding the security of the information contained in the Pfizer legal

department during such an inspection.

      Specifically, BYU attorney Adam Anderson was discovered photographing Pfizer

documents with a very small digital camera during an inspection of documents at Sidley Austin's

offices in Chicago in September 2008.  He also took photographs during a similar document

inspection in Sidley's New York office.  Mr. Anderson did this knowing full well that the documents may contain privileged information, that they were being produced for inspection on a non-waiver basis, and that copying of documents during the inspection was forbidden.  (*See* September 26, 2008 Letter from Lisa Schneider to Adam Anderson (attached as Exhibit 2) ("Furthermore, it was explained both in my September 4 letter and personally to you here in Chicago that we would review the documents for things such as privilege before any copying was allowed."); *see also* September 4, 2008 Letter from Lisa Schneider to Mark Bettilyon (attached as Exhibit 3).)  Furthermore, during a document inspection in St. Louis in August 2001, Professor Simmons and Dave Thomas used a small hand-held scanner in an attempt to copy confidential Pfizer documents without permission.

            In addition to security concerns, Pfizer also has concerns for the privileged information that is likely contained in this collection of documents.  Mr. Warner explained in his affidavit that these documents have all been reviewed for other litigations, including the Teva litigation, and Pfizer therefore believes that BYU is currently in possession of all relevant, nonprivileged documents from this collection.  That certainly does not mean, however, that BYU is in possession of all of the documents at issue in the work room.  Documents that are subject to the attorney-client privilege or work product protection certainly would not have been produced in Teva or any other litigation.  But BYU apparently wants to inspect these documents as well. Pfizer believes this is inappropriate – for the same reason that it would be inappropriate for Pfizer attorneys to conduct its own search of BYU's Office of General Counsel, for relevant and responsive documents.  Neither BYU nor Pfizer is entitled to every document in the possession of the other.  They are entitled to relevant, responsive, non-privileged documents.  Pfizer is

willing to (and has offered to) produce even the irrelevant documents in the work room, but it is certainly not willing to allow BYU to inspect its privileged communications.

BYU is likely to argue that Pfizer has allowed BYU to inspect documents in the past pursuant to a "non-waiver" agreement – that is, if a privileged document was located during the inspection, Pfizer could simply ask for it back. But past inspections were distinctly different than the inspection BYU now seeks. The files at issue may contain a substantial number of privileged documents. Although we have not inspected the documents in the work room since April 2008 (see Paragraph 34 of the Redacted Spanbauer Affidavit), our recollection is that they contain, among other things, prosecution history files and boxes of Mr. Warner's working files. This was not the case for the documents previously presented for inspection. The documents previously presented for inspection in New York, as well as the bulk of the documents presented for inspection in Chicago, were documents that had already been produced (and therefore should have contained no privileged information at all). The remainder of the Chicago documents were either marketing materials (such as advertisements and training materials) or the redacted "XX" documents – which Pfizer attorneys had reviewed in sufficient detail to believe that the redactions related to relevance and not privilege. A procedure whereby BYU can review all of the documents in the work room regardless of privilege (subject only to a subsequent review by Pfizer attorneys) is not sufficient to protect Pfizer's legally recognized privileges and cannot be allowed.

To avoid issues of security and privilege, Pfizer proposes that it should be allowed to provide BYU with a discrete production of the nonprivileged documents from this collection, along with a corresponding discrete privilege log, so that BYU will know which documents in Pfizer's production were located in this workroom. Such a production is contemplated by Rule

4

34(b)(2)(E)(i) of the Federal Rules of Civil Procedure ("A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to categories in the request.")

However, if the Court believes that an inspection is appropriate in this case, Pfizer has agreed to allow BYU to inspect the documents in the work room, if BYU is willing to abide by a limited number of reasonable conditions to address Pfizer's security and privilege concerns. The following procedures were proposed by Pfizer, which at BYU's request, include the ability of BYU to take various photographs.

- Pfizer would allow one BYU attorney into the legal department work room to take photographs prior to the inspection. These photographs could include "close-ups" of the relevant boxes and materials as they are currently situated in the work room. However, "close-up" photographs would not be allowed of documents in the work room that are unrelated to this case. Photographs "of the surrounding offices" in the Pfizer legal department also would not be allowed.

- Pfizer would then be allowed to remove from the work room the prosecution history files, Mr. Warner's files, and any other documents that, in Pfizer's good faith estimation, are likely to contain privileged information. Attorneys from Sidley or Holme Roberts would then review these documents in Chicago or Salt Lake City, produce all nonprivileged documents (regardless of relevance) to BYU, and produce a log of all privileged documents (again, regardless of relevance). Documents that Pfizer considers to be irrelevant would be designated in the same manner as Pfizer's highly confidential financial information but Pfizer would, of course, consider any dedesignation requests in

good faith on a case by case basis.  If BYU would like to take separate photographs of the boxes that Pfizer removes, that would be acceptable as well.

- The designated BYU attorney would then be allowed to monitor the transport of the boxes and other materials from the work room to another review space at Pfizer outside of the legal department.  There, a team of pre-disclosed BYU attorneys and paralegals would be allowed to review the documents on a non-waiver basis and designate documents (regardless of relevance) for production.  The designated documents would be sent to an acceptable third-party vendor for scanning and production.  However, absolutely no photographing or other copying of documents will be allowed during the review, and all individuals participating in the review will be required to sign affidavits swearing that they did not photograph, copy, or otherwise reproduce documents or portions of documents during the review.

Pfizer proposed this inspection procedure in a letter to BYU's counsel on May 28, 2009.  (*See* May 28, 2009 Letter from Jon Spanbauer to Mark Bettilyon (attached as Exhibit 4).)  Nine minutes after receiving this letter, Mr. Bettilyon responded with a terse e-mail that made no mention of Pfizer's offer, but instead sought answers to specific questions about the documents. (*See* May 28, 2009 E-mail from Mark Bettilyon to Jon Spanbauer (attached as Exhibit 5).)

These questions sought highly detailed information regarding the identity and characteristics of the documents – including, for example, specific Bates ranges of any production documents located among the collection.  (*Se*e May 22, 2009 Letter from Mark Bettilyon to Jon Spanbauer (attached as Exhibit 6).)  Pfizer attorneys have not inspected these documents since April 2008 and BYU has sought specific assurances from Pfizer that it would not inspect the documents prior to the inspection that BYU is requesting (a request that Pfizer is

6

honoring).  (*See* May 19 E-mail from Mark Bettilyon to Jon Spanbauer (attached as Exhibit 7) ("Further, please provide assurances that the collection of documents mentioned in [Mr. Warner's] affidavit have not been and will not be…reviewed…until we review them…").)  Pfizer therefore informed BYU that Pfizer did not have sufficient information to answer the questions that BYU had posed.  (See June 2, 2009 Letter from Jon Spanbauer to Mark Bettilyon (attached as Exhibit 8).)  Pfizer then asked BYU whether it would prefer to withdraw its demand that Pfizer not inspect the documents, so that Pfizer could attempt to answer BYU's questions.  (Id.)

BYU responded that it would be willing to allow Pfizer to inspect the documents so long as a BYU attorney was present for the inspection.  (*See* June 4, 2009 Letter from Mark Bettilyon to Jon Spanbauer (attached as Exhibit 9).)  Pfizer responded with the following revised proposal for the inspection which incorporated BYU's desire to have an attorney present during the initial review:

- BYU would send one attorney to St. Louis and Pfizer would send one or two attorneys. Those attorneys would oversee the move of the documents in question to another appropriate workspace where the review of the documents would take place.  The Pfizer attorneys would then review the documents for the purposes of:  (1) creating a high level index of the types of documents found in the set; and (2) identifying and removing any potentially privileged documents.  To the extent any documents were removed, a record would be kept to identify the location in the file from which the document(s) were removed.  The BYU attorney would be present during this review, but would not be allowed to look at the documents until the Pfizer attorneys had done the initial review – including the review for privilege.

- Once the initial review of a box of documents was completed by the Pfizer attorney, the box (absent any documents identified as potentially privileged) would be immediately provided to the BYU attorney on a non-waiver basis for review to determine what, if any, relevant documents from the box BYU would like to have copied and numbered for production. Pfizer would then arrange to have any designated relevant documents produced to BYU. If it was later determined that a privileged document was inadvertently shown to or provided to BYU during this procedure, Pfizer could remove that document from the production. If the document had already been produced to BYU, BYU would return the privileged document to Pfizer as soon as the document was identified and would not make any argument that any applicable privilege has been waived.

- Because the procedure described above does not contemplate any review for relevance, BYU would agree to only designate for copying documents that are relevant to the issues in the litigation.

(*See* June 9, 2009 Letter from Jon Spanbauer to Mark Bettilyon (attached as Exhibit 10).) In short, Pfizer has repeatedly offered to allow BYU to inspect the documents in the Pfizer legal department under a small number of conditions that are simply meant to ensure the security of the documents and safeguard Pfizer's privileged information. BYU has refused both offers – claiming that it cannot review the documents without first receiving answers to its questions about them. (*See* June 11, 2009 Letter from Mark Bettilyon to Jon Spanbauer (attached as Exhibit 11.) BYU's unwillingness to accept Pfizer's numerous, reasonable, inspection and production proposals indicates that BYU has little or no interest in the actual contents of these documents.

**B.    Pfizer Has Agreed To Preserve the Documents**

Before BYU even filed its motion, Pfizer had already agreed to preserve the documents as they are located in the work room.  (BYU Memorandum at 5 ("Pfizer's counsel responded by assuring BYU that it would leave the COX-2 related collection in the room until this Court makes a decision.").)  But BYU cropped a quote from Mr. Spanbauer's May 20 letter to Mr. Bettilyon to create the impression that a preservation order was necessary (when it was not) because Pfizer had started shipping these documents to Sidley's office in Chicago for review *after* BYU had requested assurances that the collection of documents would not be moved.  (BYU Motion at 4.)  Pfizer did no such thing.

Pfizer began the processes of packaging the documents for shipment to Chicago (so they could be reviewed and produced) *prior to* any request that the documents not be moved and stopped the process immediately upon receiving Mr. Bettilyon's request – all of which was conveyed to BYU prior to it filing its motion late at night on May 20.  (*See* Exhibit 1 (sent at 1:30 p.m. CDT) ("*Before we received your e-mail last night*, Pfizer had started boxing these documents for shipment to Sidley's office in Chicago to facilitate this process.") (portion of letter deleted from BYU's Motion italicized).)  *See also* May 20, 2009 e-mail from Jon Spanbauer to Mark Bettilyon (sent at 4:37 p.m. CDT) (attached as Exhibit 12):

> Mark -- I understand that you left a voicemail message with Mr. Haley this afternoon requesting that Pfizer maintain the documents in the Pfizer legal workroom until the Court addresses whether BYU is entitled to inspect them in that location.  As I stated in my letter to you earlier today, prior to receiving your e-mail last night, Pfizer had started boxing these documents for shipment to Sidley's office in Chicago.  Nevertheless, as you requested, Pfizer has stopped boxing the documents and they will not be sent to Chicago.  The documents will remain in the workroom until this issue is resolved.

Therefore, with regard to the preservation order, BYU was simply spoiling for a fight when it knew that there was no actual dispute.

### C.    A 30(b)(6) Deposition Is Not Necessary

Because Pfizer has agreed to either produce the documents or allow an inspection of the documents by BYU attorneys, Pfizer does not believe that the 30(b)(6) deposition that BYU is requesting (seeking information about "how and when these documents were collected, how they have been maintained, who has maintained them, the integrity of the collection, and all other aspects of the collection") is necessary.  The information is simply not relevant to BYU's claims in this litigation – any relevant information is contained in the documents themselves.

### D.    The Deposition of Mr. Warner Is Neither Appropriate Nor Necessary

Finally, BYU seeks to depose Mr. Warner (Pfizer's assistant General Counsel) "regarding his affidavit filed with this Court."  The law disfavors depositions of attorneys due to the risks to the attorney-client privilege and the work product privilege.  The practice of deposing litigation counsel, in general, is highly disfavored.  For example, the Tenth Circuit Court of Appeals has expressed its disapproval of deposition testimony from counsel:

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony.  Finally, the practice of deposing counsel detracts from the quality of client representation.  Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent.

*See, e.g.*, *Boughton v. Cotter Corp.*, 65 F.3d 823, 829 (10th Cir. 1995), quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).  In *Boughton*, the Tenth Circuit affirmed the

district court's issuance of a protective order forbidding the deposition of opposing counsel. 65 F.3d at 828-31. The court described a three-part rule for depositions of opposing counsel: such depositions "should be limited to where the party seeking to take the deposition has shown that: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id*. at 829. The court then stated that "the trial court at least has the discretion under Rule 26(c) to issue a protective order against the deposition of opposing counsel" if one or more of the criteria is not met. *Id*. at 830; *see also Thiessen v. Gen. Elec. Capital Corp*., 267 F.3d 1095, 1112 (10th Cir. 2001) (affirming the issuance of a protective order that prohibited the deposition of opposing corporate counsel, based on failure to prove one of the three criteria).

   None of these criteria are met with regard to BYU's request to depose Mr. Warner about the documents in the Pfizer legal department. First, Mr. Warner is actively involved in the daily management and defense of this case and therefore functions as litigation counsel for Pfizer with respect to BYU. Second, BYU has not articulated any reason why it believes Mr. Warner's deposition is necessary or what information it believes Mr. Warner personally possesses regarding these documents that is relevant to this litigation and is not privileged. The purpose of Paragraph 8 of Mr. Warner's affidavit was to convey his belief that, while he was aware of this collection of documents in the Pfizer legal department work room, it was his belief that "these documents had all been reviewed for other litigations, including the *Teva* litigation." The sort of detailed additional information that BYU seeks regarding these documents is generally not within the personal knowledge of Mr. Warner.

### III.    CONCLUSION

For the reasons set forth above:  (1) in lieu of an inspection, Pfizer should be allowed to provide BYU with a discrete production of the nonprivileged documents from this collection, along with a corresponding discrete privilege log of the privileged documents; (2) if the Court decides that an inspection is appropriate in this case, the inspection should occur pursuant to the conditions that Pfizer has proposed; (3) Pfizer should not be required to produce a 30(b)(6) witness to testify regarding these documents; and (4) Pfizer should not be required to produce Mr. Warner for a deposition regarding his statement in Paragraph 8 of his affidavit.

Dated: June 12, 2009                                    Respectfully submitted,


_/s/ George M. Haley_____

George M. Haley
David R. Parkinson
HOLME ROBERTS & OWEN LLP
299 South Main Street, Suite 1800
Salt Lake City, UT 84111

Charles W. Douglas (*pro hac vice*)
Richard F. O'Malley, Jr. (*pro hac vice*)
Lisa A. Schneider (*pro hac vice*)
Neil H. Wyland (*pro hac vice*)
Todd L. Krause (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603

*Attorneys for Defendants Pfizer Inc., G.D. Searle LLC, and Pharmacia Corporation*

## INDEX TO EXHIBITS

| Exhibit No. | Document |
|:---:|:---|
| 1 | 05/20/09 Letter from Spanbauer to Bettilyon |
| 2 | 08/26/08 Letter from Schneider to Anderson |
| 3 | 09/04/08 Letter from Schneider to Bettilyon |
| 4 | 05/28/09 Letter from Spanbauer to Bettilyon |
| 5 | 05/28/09 E-mail from Mark Bettilyon |
| 6 | 05/22/09 Letter from Bettilyon to Spanbauer |
| 7 | 05/19/09 E-mail from Bettilyon to Spanbauer |
| 8 | 06/02/09 Letter from Spanbauer to Mark Bettilyon |
| 9 | 06/04/09 Letter from Bettilyon to Spanbauer |
| 10 | 06/09/09 Letter from Spanbauer to Bettilyon |
| 11 | 06/11/09 Letter from Bettilyon to Spanbauer |
| 12 | 05/20/09 E-mail from Spanbauer to Bettilyon |

CH1 4690828v.2

CH1 4724993v.1