IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **BRIGHAM YOUNG UNIVERSITY, a Utah Non-Profit Education Institution; and DR. DAVID L. SIMMONS, an individual,**<br><br>      **Plaintiffs,**<br><br>vs.<br><br>**PFIZER, INC., a Delaware Corporation, G.D. SEARLE & COMPANY, a Delaware corporation, G.D. SEARLE LLC, a Delaware Limited Liability Company, MONSANTO COMPANY, a Delaware Corporation, and PHARMACIA CORPORATION, a Delaware Corporation,**<br><br>      **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No.  2:06CV890 DAK |

  This matter is before the court on (1) Defendants' Motion for Leave from and Modification to the Protective Order; (2) Plaintiffs' Motion for Suspension of Reissue Proceedings; (3) Defendants' Motion for Partial Summary Judgment Regarding Integration of the Research Agreement, Dated August 1, 1991; and (4) Plaintiffs' Alternative Rule 56(f) Motion. A hearing on the motions was held on August 18, 2009.  At the hearing, Plaintiffs BYU and Dr. Simmons (collectively referred to as "BYU" or "Plaintiffs") were represented by Leo R. Beus, L. Richard Williams, Mark M. Bettilyon, and Samuel C. Straight.  Defendants Pfizer, Inc., G..D. Searle & Company, G.D. Searle LLC, Monsanto Company, and Pharmacia Corporation

(collectively referred to as "Defendants," or "Pfizer" or "Monsanto") were represented by George M. Haley, Richard F. O'Malley, Jr., Lisa A. Schneider, and David R. Parkinson. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the motions under advisement, the court has further considered the law and facts relating to these motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

I. **DEFENDANTS' MOTION FOR LEAVE FROM AND MODIFICATION TO THE PROTECTIVE ORDER AND PLAINTIFFS' MOTION FOR SUSPENSION OF REISSUE PROCEEDINGS**

Defendant Pfizer seeks leave from the Protective Order, entered by this court on June 7, 2007 (the "Protective Order") in order to provide certain documents from the present litigation to the United States Patent and Trademark Office ("PTO") with respect to Pfizer's pending reissue patent application for U.S. Patent No. 5,760,068 (the "'068 patent"). In addition, Pfizer requests that the court modify Paragraph 4 of the Protective Order to allow Pfizer to provide highly confidential documents to Pfizer patent attorney, Phil Polster, so he may oversee the submission of documents to the PTO.

Plaintiffs, however, are concerned that if Pfizer is successful in the reissue proceedings, Pfizer will unfairly use reissuance as evidence that the PTO purportedly considered and rejected Dr. Simmons's claim of co-inventorship. According to Plaintiffs, Pfizer has repeatedly refused to stipulate that it would not do so, and, Plaintiffs argue, any such use would be unfair and prejudicial to Plaintiffs because any PTO consideration of Dr. Simmons's claims during reissue would be illusory. For these reasons, Plaintiffs request that the court either require Pfizer to stay

the reissue proceeding or preclude Pfizer from introducing any results from the reissue at trial.

The court declines to suspend the reissue proceeding; however, any result from the PTO proceeding will be inadmissible in the instant proceeding. In addition, Pfizer may use a third-party's confidential documents, provided that it obtains permission from the third-party whose documents Pfizer seeks to use. Finally, the court will permit Pfizer to provide the confidential documents to Pfizer's in-house patent counsel, Phil Polster, so that he may submit the documents to the PTO.

II. **DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING INTEGRATION OF THE RESEARCH AGREEMENT, DATED AUGUST 1, 1991 AND PLAINTIFFS' ALTERNATIVE RULE 56(F) MOTION**

Defendants request that the court enter an order finding that the Research Agreement (the "Agreement") between the parties is a fully integrated contract that merges and supersedes all previous agreements, including the alleged oral agreement regarding the confidentiality of materials sent from Dr. Simmons to Washington University on April 29, 1991. Defendants contend that the confidentiality provisions contained in the Agreement do not refer to materials transmitted by Dr. Simmons to Drs. Seibert and Masferrer on April 29, 1991 or to any other materials or information transmitted by BYU or Monsanto prior to the effective date of the Agreement, which they claim is August 1, 1991. Defendants argue that it is clear and unambiguous that the Agreement does not pertain to anything prior to August 1, 1991, and thus the confidentiality provisions do not apply to materials provided prior to that date. Defendants contend that Plaintiffs seek an interpretation of the Agreement that is contrary to its clear and unambiguous language.

Plaintiffs, on the other hand, contend that Pfizer ignores relevant language in the Research Agreement and instead relies on a two-line boilerplate integration clause to argue that evidence concerning the circumstances under which BYU's confidential biological materials and information were transmitted to Monsanto cannot be considered by this court and that these confidential materials transmitted to Monsanto in April 1991 are not protected by the Research Agreement. Plaintiffs argue that, under Pfizer's theory of this case, the confidential biological materials and information transmitted by BYU to Monsanto while the parties were negotiating the Research Agreement can only be characterized as a gift from BYU to Monsanto, a gift that resulted in the generation of over $30 billion in revenue to Monsanto. Plaintiffs claim that neither the facts nor the law supports the result sought by Pfizer's motion, and the court agrees.

### A. *Relevant Facts and Contract Provisions*

The following facts, relevant to the instant motion, are not disputed:

- In April 1991, Monsanto and BYU began negotiations to collaborate on a research program;

- On 9 April 1991, Monsanto sent BYU a letter stating that "[y]our proposal seems reasonable to me and I would be willing to commit to a grant for $40,000/year . . . for 2 years at which time we can discuss renewal possibilities. You will be receiving an agreement from our patent attorney which follows the guidelines and spirit of our successful agreement with Washington University." The letter also expresses the hope for a "productive collaboration with our scientists (especially Karen Seibert…)";

- On 11 April 1991, L. R. Swaney, a lawyer at Monsanto sent to BYU, on behalf of Monsanto, a draft Research Agreement, containing confidentiality, ownership, and royalty provisions;

- On 29 April 1991, Dr. Daniel Simmons of BYU first sent to Monsanto various confidential biological materials and information in the possession of BYU.

>   During the next three months, Dr. Simmons sent additional confidential materials and information to Monsanto scientists;

- The Research Agreement was signed on July 9, 1991 and bore an effective date of 1 August 1991; and

- The Research Agreement contains no specific language excluding information and materials submitted by either party prior to the Research Agreement's stated effective date.

The provisions of the Research Agreement that are relevant to the instant motion are as follows:

- "The PROJECT covered by this Agreement extends for a period of two (2) years commencing on August 1,1991, and continuing through July 31, 1993."[1]  Research Agreement ¶ 1.4.

- "In order for the parties to more fully cooperate in this effort, it may be necessary for UNIVERSITY or MONSANTO to disclose to the other party proprietary information . . . ." Research Agreement ¶ 4.1.  "The parties agree that CONFIDENTIAL INFORMATION will be used only as provided for in this Agreement . . . provided that these obligations shall terminate five (5) years *from the date of disclosure* of the CONFIDENTIAL INFORMATION.  *Id.* (emphasis added)

- "This Agreement merges and supersedes all previous agreements respecting its subject matter." Research Agreement ¶ 11.1.

---

[1] The only provision of the Research Agreement that explicitly ties a party's obligations to August 1991 provides that "Fifty Thousand Dollars ($50,000.00) shall be paid within thirty (30) days after the execution of this Agreement and Fifty Thousand Dollars ($50,000.00) within thirty (30) days of August 1, 1992." Research Agreement ¶ 1.6

*B. Discussion*

The court agrees with Plaintiffs that neither the integration clause nor the parol evidence rule is applicable to this case because the Research Agreement itself fully protects materials submitted prior to the effective date of the Agreement: "The parties agree that CONFIDENTIAL INFORMATION will be used only as provided for in this Agreement . . . provided that these obligations shall terminate five (5) years *from the date of disclosure* of the CONFIDENTIAL INFORMATION. *Id.* (emphasis added).

In Missouri, and most, if not all, other jurisdictions, "the cardinal rule permeating the entire field of construction is that the court ascertain the intention of the parties and then give effect to that intent unless it conflicts with some positive rule of law."[2] *Tri-Lakes Newspapers, Inc. v. Logan*, 713 S.W.2d 891, 893 (Mo. Ct. App. 1986); *Newco Atlas, Inc. v. Park Range Constr., Inc*. 272 S.W.3d 886, 891 (Mo. Ct. App. 2008). To ascertain the parties' intention, "the terms of a contract are read as a whole . . . and are given their plain, ordinary, and usual meaning." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. 2003) (en banc). Also, "a construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense." *Id.* Similarly, "'the Court should consider the object, nature and purpose of the agreement,' and 'the spirit, purpose and substance of the agreement must control rather than the letter.'" *Jake C. Byers, Inc. v. J.B.C. Investments*, 834 S.W.2d 806, 814 (Mo. Ct. App. 1992) (quoting *Wilshire*

---

[2] The Research Agreement provides that Missouri law governs the interpretation of and any dispute connected to the Agreement. See Research Agreement ¶ 8.1.

*Constr. Co. v. Union Elec. Co.*, 463 S.W.2d 903 (Mo. 1971)).

Applying these contract interpretation principles, the court finds that the Research Agreement is unambiguous and protects all Confidential Information from the time it was disclosed. The integration and merger clause simply has no bearing on whether the confidential materials provided to Defendants prior to August 1, 1991 are protected under the Agreement.

Moreover, the parol evidence rule "as a principle of substantive law prohibits the *contradiction* of integrated contracts. *Gibson v. Harl*, 857 S.W.2d 260, 270 (Mo. Ct. App. 1993). It "does not apply to parol testimony that does not contradict the certain terms of an integrated agreement." *Id.* Indeed, "[e]ven a complete and integrated contract must be interpreted. Admission of oral testimony of agreements or negotiations contemporaneous with the execution of the written agreement are admissible to establish the meaning of the contract." *Id.* at 270 (citing *Rugkahr Constr. Co. v. Weber*, 658 S.W.2d 489, 497-99 (Mo. Ct. App. 1983)).

Here, the extrinsic evidence does not contradict the Research Agreement, but rather supports the language found in paragraph 4.1 of the Research Agreement that all parties understood that obligations regarding the confidential information would terminate five years *from the date of disclosure*. In the instant case, there is abundant evidence that both parties intended that materials submitted by BYU prior to the Agreement's "effective date" were to be maintained as confidential. The agreement Dr. Simmons had with Monsanto scientists when he submitted BYU's confidential materials and information is wholly consistent with the Research Agreement subsequently signed by the parties. Thus, while the court has found that extrinsic evidence is not necessary to interpret the Agreement, the parol evidence rule would not bar

consideration of such evidence in interpreting the Agreement in any event.

Finally, even if the court were to conclude that paragraphs 1.4 and 4.1 of the Research Agreement created an ambiguity with respect to the status of confidential materials transmitted prior to August 1, 1991, parol evidence would be admissible to resolve that ambiguity. To resolve ambiguities, "the cardinal principal is to determine the intent of the parties" by considering collateral facts, including "subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties." *Finova Capital v. Ream*, 230 S.W.3d 35, 49 (Mo. Ct. App. 2007). As noted above, there is significant extrinsic evidence supporting the interpretation that both parties considered the materials that Dr. Simmons provided to Monsanto prior to August 1, 1991 to be protected under the Research Agreement.

### III. CONCLUSION

For the foregoing reasons and good cause appearing, IT IS HEREBY ORDERED that (1) Defendants' Motion for Leave from and Modification to the Protective Order [docket #172] is GRANTED IN PART AND DENIED IN PART. As discussed more fully above, the court grants leave from the Protective Order, but any result from the PTO proceedings will not be admissible in the instant litigation; (2) Plaintiffs' Motion for Suspension of Reissue Proceedings [docket #194] is DENIED; (3) Defendants' Motion for Partial Summary Judgment Regarding Integration of the Research Agreement, Dated August 1, 1991 [docket #214] is DENIED; and (4) Plaintiffs'

Alternative Rule 56(f) Motion [docket #255] is DENIED AS MOOT.

DATED this 30th day of September, 2009.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge