# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, and DR. DANIEL L. SIMMONS<br><br>Plaintiffs,<br><br>vs.<br><br>PFIZER, INC., et al.<br><br>Defendants. | **ORDER AND MEMORANDUM DECISION GRANTING IN PART PLAINTIFFS' MOTION FOR SANCTIONS**<br><br>Case No. 2:06-CV-890<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke Wells |

Plaintiffs Brigham Young University and Dr. Daniel Simmons (collectively BYU) have filed a motion for sanctions concerning discovery under Federal Rule 37(b) against Defendant Pfizer, Incorporated et al.  BYU asks this Court to enter the following sanctions: (1) striking Pfizer's Answer; (2) ordering Pfizer to pay BYU's costs and fees associated in "discovering Pfizer's discovery abuses;"[1] (3) "entering a spoliation instruction that all the documents Pfizer has destroyed or otherwise withheld support BYU's contention that Dr. Simmons's COX-2 clones worked;"[2] (4) finding Pfizer in contempt of court; (5) ordering the deposition of witnesses, including Pfizer's attorneys Mr. O'Mally and Ms. Schnider, who will be asked to explain any discovery abuses; and (6) "entering a jury instruction that, in the event BYU proves at trial that Dr. Simmons's contribution to Pfizer's development of Celebrex provided Pfizer with a head start and/or first to market advantage, that BYU's damages for the head start Dr.

---

[1] Pla.s' mem. in supp. p. 123.
[2] *Id.*

1

Simmons's biological material and other trade secrets provided Pfizer should be calculated at, at least, $10 million per day."[3]  The magnitude of these requested sanctions are very serious.

After considering the parties' memoranda and certifications[4] and having heard oral argument, the Court enters the following order.  Because Defendants have committed discovery abuses, the Court finds it appropriate to enter sanctions.  As outlined in greater detail below the Court declines, however, to enter what it deems to be the most severe sanctions <u>at this time</u>. Thus Plaintiffs' motion for sanctions is GRANTED in PART.

## BACKGROUND

This case arises from the historical discovery of an enzyme cyclooxygenase-2, or in short, COX-2.  The discovery of this enzyme led to the development of nonsteroidal anti-inflammatory drugs such as Celebrex and Bextra which have enjoyed tremendous success.[5] Plaintiffs claim that Dr. Daniel Simmons had a key role in the discovery of the COX-2 enzyme that then translated into "blockbuster" drugs for Defendants.  BYU and Dr. Simmons entered into a Research Agreement with Searle/1933 Monsanto in 1991.  The pharmaceutical industry has undergone many changes since this agreement in the early 1990s when this case had its origins.  This includes many mergers and acquisitions involving Defendant Pfizer.  The Court does not delve into the details of all these transactions but finds it sufficient to note that Pfizer is the successor to the COX-2 legacy that includes the disputes in this case.

---

[3] *Id.*

[4] This includes review of the Notice of Supplemental Authority submitted by Pfizer on August 24, 2009, docket no. 298.

[5] *See* Compl. p. 2; *see also* Answer p. 5 (admitting that sales of Celebrex and Bextra have generated total sales exceeding $20 billion dollars).

Defendants contest the involvement of Dr. Simmons with the discovery of the COX-2 enzyme and the subsequent selective inhibitors that resulted in the blockbuster drugs.[6] According to Defendants, Dr. Phillip Needleman, Monsanto's Chief Scientific Officer at the time, and his colleagues, were also seeking to selectively inhibit COX-2 and engaging in the same type of research as Dr. Simmons.[7]  In essence, Pfizer claims that Dr. Simmons "had nothing to do with the creation of Celebrex, the compound."[8]

The parties entered into a tolling agreement in 2001, but were unable to resolve their dispute through mediation.  In October of 2006 Plaintiffs filed suit seeking *inter alia*, correction of inventorship concerning certain patents[9] and for actual damages and punitive damages to be determined at trial.

BYU served its First Request for Production of Documents on February 13, 2007.[10] Nearly a year later on January 10, 2008, BYU filed a Motion to Compel Immediate Production of Documents.[11]  Of concern in BYU's motion was Pfizer's reliance on meeting BYU's discovery requests with documents produced in other COX-2 cases (namely the *Rochester*[12] and *Teva*[13] litigations).  In opposing BYU's motion Pfizer represented that "in July 2007, Pfizer produced the complete *Teva* production to BYU."[14]

---

[6] *See* Answer p. 2.
[7] *Id.*
[8] July 29, 2008, hearing transcript p. 50:11-12.
[9] *See* Compl. p. 56-58.
[10] Docket no. 36.
[11] Docket no. 58.
[12] *See University of Rochester v. G.D. Searle, et al.*, 6:00-cv-6161-DGL-JWF (W.D.N.Y.).
[13] *See Pfizer, Inc., et al. v. Teva Pharmaceuticals USA, Inc.*, 2:04-cv-754-GEB-MCA (D.N.J.).
[14] Op. to Mtn. to Compel Immediate Production p. 3.

In its motion BYU sought scientific notebooks and other documents from Pfizer and Monsanto research scientists.[15]  BYU further sought "[a]ll documents relating to any COX-related litigation including, but not limited to, communications, notes, briefs, memoranda, deposition transcripts, interrogatory responses, expert witness testimony and reports, or electronic media."[16]  This included the exhibits and transcripts from depositions of Dr. Philip Needleman in the *Rochester* litigation.  Next, BYU sought production of financial documents and biological materials.  For example, BYU's Request Number 46 sought Pfizer's production of "All recombinant constructs and clones (including but not limited to plasmids and viruses) of murine COX-1 and COX-2 as well as samples of all antibodies purportedly generated by Monsanto and its collaborators."[17]  Finally, BYU's motion requested COX related communications with other scientists and memoranda and internal communications relating to Monsanto's organization and resources put into the COX projects during the relevant time frame.

## I.      The Court's Order Granting BYU's Motion

The Court heard argument on BYU's motion, and a few other related motions, on March 19, 2008.[18]  On March 26, 2008, the Court entered its order granting BYU's motion (the discovery order).  The Court ordered Pfizer to "provide a complete production, after a full search for all documents in Defendants' possession, custody or control, responsive to BYU's First Request for Production of Documents."[19]  Some of the specifics of the Court's order included ordering Pfizer to:

---

[15] *See* BYU's Motion for Immediate Production of Documents p. 3.
[16] *Id.* at p. 7, request number 39.
[17] *Id.* at p. 9.
[18] Docket no. 101.
[19] Order dated March 26, 2008, p. 1.

- "produce all documents produced in the . . . *Rochester, Merck* and *Teva* litigation matters."[20]

- produce legible copies of certain scientific notebooks.

- provide the requested biological materials which included logs concerning any "repairs and malfunctions of freezer labs"[21] that contained  "Dr. Simmons' Biological materials."[22]

- "produce all correspondence and agreements with any third parties relating to COX, its COX II projects or any use of biological materials provided by Dr. Simmons."[23]

- provide "all internal correspondence including email, memoranda, meeting minutes, reports (including those to Boards of Directors) and other corporate documents referring or relating to plaintiff's DIP and COX II projects."[24]

Finally, the Court ordered Pfizer to comply with the order within 60 days and "certify, in writing that its production in response to BYU's Discovery Requests is complete."[25]  If discovery was unavailable, Pfizer was instructed to "discuss the nature and extent of its search, the efforts used and by whom such searches were performed."[26]

In its order the Court expressed some of its concerns with the discovery process.  For example, the Court stated:

> The court is concerned because Pfizer appears to be primarily relying on its production of documents in prior litigation that may involve issues which differ from those in the instant case.  Although the items produced during prior litigation may be relevant to the instant litigation, such prior production does not absolve Pfizer of its duties in this litigation to provide responsive discovery and the appropriate certifications regarding its efforts to provide such discovery.[27]

---

[20] *Id.* at 2.
[21] *Id.* at 4.
[22] *Id.*
[23] *Id.* at 5.
[24] *Id.*
[25] *Id.*
[26] *Id.* at 6.
[27] Order dated March 26, 2008, p. 1-2.

The Court's order also incorporated items that arose directly from the parties' representations.  For example, Lisa Schneider counsel for Pfizer, represented at the March 19, 2008, hearing that Pfizer did have the biological materials sought by BYU "back in the early 2000's during the mediation,"[28] but the "materials were no longer there"[29] because they had been damaged due to a freezer malfunction.  Ms. Schneider further represented that "if what BYU wants is a certification from us explaining where we looked for documents, who we contacted, who we inquired of for documents, we'll give that to them."[30]

## II.   Activities Following the Entry of the Order

On May 27, 2008, Pfizer filed a motion for extension of time to comply with the discovery order.[31]  In its motion Pfizer asked the Court "for a ten-week extension of time [August 3, 2008] to comply with the . . . order."[32]  Pfizer argued the extension was necessary because compliance with the original 60 day time frame was "impossible."[33]  Pfizer represented that its "attorneys, legal assistants, contract attorneys and employees have devoted approximately 5300 hours in the past 60 days in its efforts to comply with the Court's Order [and] Pfizer has produced approximately 1.4 million . . . pages of documents since the Court's Order issued."[34]  Pfizer also found and made available "approximately 300 discrete biological samples."[35]

---

[28] March 19, 2008, hearing transcript p. 53:10-11.
[29] *Id.* at 53:23.
[30] *Id.* at 58:4-5.
[31] Docket no. 113.
[32] Motion for extension of time p. 2.
[33] *Id.*
[34] Mem. in supp. p. 2.
[35] *Id.*

In addition, on this same date Pfizer asked the Court for relief from portions of the discovery order concerning documents from third parties Boehringer Ingelheim Pharmaceuticals, Schering-Plough Corporation and Teva Pharmaceuticals USA.[36]

The Court held a hearing on these two motions and ruled denying Pfizer's motion for relief from portions of the discovery order.[37]  After holding another hearing concerning discovery on January 30, 2009, the Court deemed moot Pfizer's motion for extension of time in an order entered February 5, 2009.[38]

Pfizer has filed one certification[39] and three supplemental certifications[40] regarding its discovery efforts in this case.  In turn, BYU has responded to these certifications complaining about missing documents or missing materials that allegedly fall within its original discovery requests and this Court's discovery order.  In reviewing these certifications and responses the Court finds a reoccurring pattern.  After reviewing responses BYU would complain about certain alleged discoverable items that were missing.  Then, Pfizer would provide those missing items.  It was in response to Pfizer's third supplemental certification that BYU filed the instant motion for sanctions on January 14, 2009.[41]  The Court held a two day hearing concerning the status of discovery and BYU's motion for sanctions on April 7th and 8th.[42]  At the hearing Pfizer was ordered to complete all remaining discovery by May 11, 2009, and to file affidavits by attorneys that have participated in the discovery process.  The Court ordered BYU to file affidavits

---

[36] Docket no. 115.
[37] The court modified the protective order including an attorney's eyes only provision that alleviated most of the third parties' concerns with Pfizer providing documents to BYU.  *See* docket no. 152.
[38] Docket no. 190.
[39] Docket no. 117.
[40] Docket nos. 134, 147 and 157.
[41] Docket no. 179.
[42] Docket nos. 221 and 222.

regarding attorney's fees.  And, both parties submitted proposed findings of fact pursuant to the

Court's request.

Contrary to Ms. Schneider's simple solution concerning certifications suggested at the

March 2008 hearing, the filing of affidavits regarding Pfizer's discovery efforts created a whole

new series of issues.  In an effort to allegedly "err on the side of over compliance"[43] as instructed

by this Court, Pfizer sought to file twenty of its affidavits for *in camera* review.[44]  BYU opposed

Pfizer's proposed *in camera* filings for a number of reasons including the fact that it would be

prejudicial for this court to use the *in camera* portions in its decision regarding BYU's motion

for sanctions.  Tellingly, it was during BYU's review of a redacted affidavit from J. Michael

Warner, Pfizer's Assistant General Counsel, that BYU discovered information about "a

collection of COX-2 related documents that Pfizer has never reviewed for responsiveness to

BYU's Requests for Production."[45]  This in turn led BYU to file an expedited motion to preserve

and produce evidence,[46] which the Court granted following a hearing held in July of this year.[47]

At this same hearing Pfizer agreed to rely on the redacted affidavits rather than those

submitted in camera.[48]  Shortly thereafter, BYU provided the Court notice that the instant motion

was ripe for decision and declined to file any additional briefing concerning the affidavits or

additional discovery misconduct by Pfizer.[49]

Given this background, the Court now turns to the motion for sanctions.

---

[43] April 8, 2009, Transcript 171:9-10.
[44] Docket no. 229.
[45] Expedited Motion to Preserve and Produce Evidence of COX-2 Related Documents p. 2.
[46] Docket no. 240.
[47] Docket no. 272.
[48] *See* Transcript of July2, 2009, hearing 18:6-9.
[49] *See* Pla.s' notice regarding 22 July 2009 hearing, docket no. 273.

## ANALYSIS

Plaintiffs seek the following sanctions in their motion:

(1) striking Pfizer's Answer

(2) awarding Plaintiffs their costs and fees associated with discovering Pfizer's alleged discovery abuses

(3) "entering a spoliation instruction that all the documents Pfizer has destroyed or otherwise withheld support BYU's contention that Dr. Simmons's COX-2 clones worked;"[50]

(4) finding Pfizer in contempt of court;

(5) ordering the deposition of witnesses, including Pfizer's attorneys Mr. O'Mally and Ms. Schnider, who will be asked to explain any discovery abuses; and

(6) "entering a jury instruction that, in the event BYU proves at trial that Dr. Simmons's contribution to Pfizer's development of Celebrex provided Pfizer with a head start and/or first to market advantage, that BYU's damages for the head start Dr. Simmons's biological material and other trade secrets provided Pfizer should be calculated at, at least, $10 million per day."[51]

Rule 37 of the Federal Rules of Civil Procedure permits a court to impose a number of sanctions for a party's failure to comply with a court's discovery orders.  Such sanctions include, but are not limited to:

(i)      directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)     prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)    striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

---

[50] Pla.s' mem. in supp. p. 123..

[51] *Id.*

9

(vii)    treating as contempt of court, the failure to obey any order except an order to submit to a physical or mental examination.[52]

The Court has discretion to impose any such sanction that is "just and related to the particular claim which was at issue in the order to provide discovery."[53]  But, the Court's discretion "'is limited in that the chosen sanction must be both just and related to the particular claim which was at issue in the order to provide discovery.'"[54]

Generally before imposing sanctions-especially a sanction such as striking Pfizer's answer-courts in this Circuit consider what are called the *Ehrenhaus* factors.  The Tenth Circuit laid out these factors in affirming a district court's decision to dismiss a complaint with prejudice as a sanction for violating a discovery order.  They are not a "rigid test"[55] but include the following factors: (1) the degree of actual prejudice to the other party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[56]  These factors are not exhaustive, nor are the factors necessarily of equal weight.[57]  "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction."[58]

With this backdrop in mind the Court now considers each of the *Ehrenhaus* factors before turning to the specific sanctions sought by Plaintiffs.

---

[52] Fed. R. Civ. P. 37(b)(2)(A) (2009).

[53] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

[54] *Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005) (quoting *Ehrenhaus*, 965 F.2d at 920).

[55] *Ehrenhaus*, 965 F.2d at 921.

[56] *See id.*; *see also Procter & Gamble Co.*, 427 F.3d at 738; *Gripe v. City of Enid*, 312 F.3d 1184, 1187 (10th Cir. 2002).

[57] *See Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005).

[58] *Ehrenhaus*, 965 F.2d at 921 (internal quotation marks omitted).

## I.      Ehrenhaus Factors

*a. The degree of actual prejudice to Plaintiffs*

Plaintiffs argue they are prejudiced just like the party was in *Ehrenhaus* by "delay and mounting attorneys' fees."[59]  BYU notes that "[b]efore filing its Motion to Compel on 10 January 2008, BYU spent almost a year working with Pfizer to obtain basic discovery."[60] According to BYU, it has spent "over $1 million to obtain the most relevant and discoverable information."

Defendant, however, alleges BYU has not been prejudiced by its actions.  The Court has extended fact discovery and BYU by its own choice has failed to take a single deposition.[61] Pfizer has "at all times been willing to meet and confer with BYU regarding discovery issues and has repeatedly produced to BYU documents requested by BYU that Pfizer does not even think are relevant."[62]  In addition, Pfizer alleges the conduct described in *Ehrenhaus*, that is cited to by BYU, is not at all comparable to Pfizer's conduct in complying with this Court's order.  In contrast to the party in *Ehrenhaus* "Pfizer has never intentionally failed to comply with a Court Order."[63]

The Court disagrees with Pfizer.  While Pfizer's conduct may not be as blatant as that of Mr. Ehrenhaus yet, it is still prejudicial to BYU.  For example, just recently during a review of Pfizer's redacted affidavits, BYU discovered information about a collection of COX-2 related documents that Pfizer had yet again failed to produce.  Pfizer continually represents that it has spent thousands of hours and vast resources to comply with BYU's requests and this Court's

---

[59] *Id.*
[60] Mem. in supp. p. 125..
[61] *See* op. p. 87.
[62] *Id.*
[63] *Id.* at 88.

order.  But, based on the continued need for BYU to file discovery motions, and the repeated

holes that are found in Pfizer's production, the Court wonders if Pfizer is counting its efforts and

production of documents in other cases as part of its thousands of hours calculus.  The large

volume of documents produced after BYU's motion was filed and after this Court entered its

order is indicative of the prejudice caused.  In addition, it is troubling to the Court that there are

repeated failures in producing documents such as exhibits and articles that pertain to crucial

witnesses.  The Court finds Pfizer's incomplete discovery responses have created delay,

mounting attorneys' fees and is prejudicial to Plaintiffs.

      Accordingly, the first factor weighs in favor of Plaintiffs.

*b. The amount of interference with the judicial process*

      BYU claims Pfizer has significantly interfered with the judicial process.  Plaintiffs cite to

*Ehrenhaus* once again arguing Pfizer has willfully failed to comply with the order which inhibits

the Court from administering orderly justice.  As support BYU cites to Pfizer's defacto extension

of the discovery order deadline and its failure to comply with the order.

      In contrast Pfizer argues it has not willfully ignored the Court's order.  Pfizer points to its

discovery efforts including the certifications it has filed concerning discovery.  Additionally,

Pfizer cites to *Danjanovich v. Robbins*,[64] and *Construction Laborers Trust Funds v. Rosal*,[65] as

support for its position.  In *Danjanovich*, Judge Stewart found that an order of default judgment

was necessary due to the defendants' "continual and willful disregard of [the] Court's Orders."[66]

---

[64] 2006 U.S. Dist. LEXIS 31175 (D.Utah May 15, 2006), Utah Case No. 2:04-cv-623 TS.
[65] 2008 WL 4500757 (C.D.Cal. Oct. 6, 2008).
[66] *Danjanovich*, 2006 U.S. Dist. LEXIS at *2-3.

Similarly, in *Construction Laborers*, the defendant's complete failure to comply with the discovery process led that court to enter default.[67]

Here, there has not been a complete failure by Pfizer to comply with the Court's orders or participate in the discovery process. But, over the history of this case thus far, this Court has been forced to intervene on numerous occasions and order the production of further discovery. Pfizer has consistently argued that the additional discovery sought by Plaintiffs is irrelevant. Yet, Pfizer has repeatedly failed to convince the Court that such discovery is irrelevant and not discoverable at this stage of the litigation.

Pfizer is reminded that under rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."[68] The rule further states that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[69] "[A]t the discovery stage, the concept of relevance should be construed very broadly." [70] In essence, one party's labels of relevant or non relevant upon requested discovery should not dictate another party's case. That determination is left for the Court.[71] Based upon the large amount of time and resources the Court has been forced to use in this case due to Pfizer's repeated delays in failing to provide relevant discovery, the Court finds Pfizer has interfered with the judicial process.

---

[67] *Consturction Laborers*, 2008 WL 4500757 at *3.
[68] Fed. R. Civ. P. 26(b)(1) (2009).
[69] *Id.*
[70] *Gohler v. Wood*, 162 F.R.D. 691, 695 (D. Utah 1995).
[71] *See Regan-Touchy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008) ("the [United States] Supreme Court has underscored that 'the requirement of Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery [to protect] "a party or person from annoyance, embarrassment, [or] oppression."'") (quoting *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (quoting Fed. R. Civ. P. 26(b)(1), (c)(1))).

*c. The culpability of Pfizer*

The Court has given Defendants multiple opportunities to comply with its orders and Pfizer has repeatedly failed to fully comply in a timely manner.  While the Court understands there may be some delay in producing discovery, Pfizer did not represent to the Court that its production would be a long slow rolling production.  BYU argues this pattern of "ongoing pattern of discovery abuses demonstrates a willingness to disregard discovery obligations and this Court's orders."[72]  Pfizer disagrees arguing its conduct does not rise to the level of willfulness or bad faith.

The Court agrees with Pfizer in part and notes that given the age of the circumstances surrounding this case, there is likely to be some expected difficulties in obtaining discovery and deposing witnesses.  In the Court's view the record reveals that Pfizer's conduct has not risen to a level of willful and intentional disobedience.  But, Pfizer's production has been negligent to the point that it closely approaches a finding of bad faith.  For example, it is inexcusable to find an entire collection of COX-2 related documents after many months of Pfizer's alleged super search efforts.  Moreover, it was BYU that discovered the missing collection and not Pfizer coming forward with the newly discovered documents.

As noted by Pfizer, "[i]n this Circuit, a finding of culpability is predicated upon a showing that the party acted willfully or in bad faith."[73]  At this point in time Pfizer has come about as close to such a finding as a party can come.  The majority of depositions in this case

---

[72] Mem. in supp. p. 127.
[73] Op. p. 91.

14

have yet to occur.  If BYU uncovers further discovery "problems" or misconduct by Pfizer during the course of these depositions it would tip the scales in Plaintiffs favor.  Given the record now before the Court, however, the Court declines to find that Pfizer has acted willfully or in bad faith.

*d. Whether the Court has warned Pfizer regarding the possibility of severe sanctions*

Notwithstanding BYU's arguments, the Court agrees with Pfizer concerning this factor. The Court has not explicitly warned Pfizer of the possibility of severe sanctions although it has expressed concern about Pfizer not meeting its discovery duties in this litigation.[74]  At this time, however, the Court formally warns Pfizer: continued delays in discovery and misrepresentations about its status or the availability of discovery will not be tolerated.  If such conduct continues the Court will recommend dispositive sanctions, including but not limited to striking pleadings and dismissal.

*e. The efficacy of lesser sanctions*

Generally courts in this Circuit do not enter severe sanctions until a party has been sanctioned to a lessor degree.  Severe sanctions such as striking an answer or dismissal are "'used as a weapon of last, rather than first, resort.'"[75]  "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction."[76]

Here, the Court has yet to enter sanctions against Pfizer.  BYU claims that "Pfizer has almost unlimited resources."[77]  So, according to BYU, "the mere payment of attorneys' fees will

---

[74] *For e.g. see*, Order dated March 26, 2008, p. 1.
[75] *Ehrenhaus*, 965 F.2d at 920 (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1520 n. 6 (10th Cir. 1988)).
[76] *Id.* at 921.
[77] Mem. in supp. p. 128.

never entice Pfizer to comply with its discovery obligations."[78]  The Court disagrees.  BYU's argument is primarily based on speculation.  At this point in time there is no evidence before the Court indicating that lessor sanctions will not provide sufficient incentive for Pfizer to comply with its discovery obligations.  This factor, therefore weighs in favor of Pfizer.

## II.      Sanctions Sought by BYU

As noted previously, Plaintiffs seek the following sanctions: (1) striking Pfizer's Answer; (2) awarding Plaintiffs their costs and fees associated with discovery Pfizer's alleged discovery abuses; (3) entering a spoliation instruction regarding Pfizer's destruction of documents that showed Dr. Simmon's COX-2 clones worked; (4) finding Pfizer in contempt of court; (5) order the deposition of certain witness, including attorneys, who would be required to testify concerning Pfizer's discovery abuses; and (6) entering a jury instruction concerning damages.

After reviewing the record, the parties' memoranda and Pfizer's certifications, and pursuant to the *Ehrenhaus* factors as outlined above the Court:

(1) Denies Plaintiffs' motion to strike Pfizer's Answer.  The Court finds Pfizer's conduct during discovery does not at this time warrant striking Pfizer's Answer.

(2) Grants Plaintiffs' motion for costs and fees.  The Court further discusses its decision to award costs and fees below.

(3) Denies without prejudice Plaintiffs' motion for entering a spoliation instruction.  In the Court's view, Plaintiffs request for a spoliation instruction should be brought after completing discovery and at or near the start of trial.

---

[78] *Id.* at 129.

16

(4) <u>Denies</u> Plaintiffs' motion to find Pfizer in contempt of court.  The Court finds Pfizer's conduct thus far does not support a finding of contempt.

(5) <u>Grants in part</u> Plaintiffs' request for depositions concerning discovery abuses. Plaintiffs seek the testimony of a number of individuals concerning discovery production.  The Court notes that generally, deposing opposing counsel is disfavored.  It "lowers the standards of the profession [and] adds to the already burdensome time and costs of litigation."[79]  Usually, such depositions occur when there is no other means, other than deposing opposing counsel, to obtain relevant and nonprivileged information that is crucial to a case.[80]  Here, information regarding Pfizer's discovery conduct is relevant, largely nonprivileged and crucial to BYU's preparation for part of its case.  But, the Court believes there are other means to obtain this information rather than through the depositions of opposing counsel.  Therefore, BYU's motion is denied as to deposing Pfizer's counsel.

Given Pfizer's conduct, however, the Court finds it appropriate to allow depositions concerning Pfizer's discovery efforts.  The Court grants BYU five additional depositions that may be used however BYU so chooses to address discovery issues.  In addition, the depositions of Kathy Owen and Scott Hauser-which Pfizer has agreed to provide as 30(b)(6) deponents-will not count toward BYU's total number of depositions or toward the five additional depositions allowed by the Court.  The Court declines to compel the depositions of specific individuals; rather, BYU should set these additional depositions pursuant to a subpoena.

(6)  <u>Denies without prejudice</u> Plaintiffs' motion to enter a jury instruction concerning damages.  In similar fashion to Plaintiffs' motion for entering a spoliation instruction, any jury

---

[79] *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).
[80] *See Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995).

instruction, is in the Court's opinion, best left for trial after discovery has closed and will likely come under the purview of Judge Kimball.

Finally, BYU "further requests that the Court remedy Pfizer's improper redaction of documents, especially scientific notebooks [by reviewing] unredacted copies of the documents in camera to determine whether they are, in fact, privileged."[81]  The Court is willing to conduct in camera reviews.  But, at this time, the Court believes the better course of action is to have BYU first depose individuals regarding discovery-including authors of scientific notebooks-and then determine at a later date whether in camera reviews are necessary.  The Court declines BYU's invitation for substantive in camera reviews.

## III. Costs and Fees

Rule 37(a) provides that "If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[82]  Pfizer argues against an award because "BYU sought premature intervention by the Court."[83]  The Court disagrees.

Here, the Court granted BYU's Motion to Compel—from which the instant Motion for Sanctions arose—on March 28, 2008.[84]  Pfizer has produced relevant discovery following the Court's order and BYU's motion.  This additional discovery falls within BYU's First Request for Production of Documents.  After reviewing the record, the Court finds BYU did not file its

---

[81] Mem. in supp. p 132-33.
[82] Fed. R. Civ. P. 37(a)(5)(A).
[83] Op. p. 52.
[84] Docket no. 106.

Motion to Compel prematurely. The Court, therefore, finds that an award of expenses for BYU is appropriate under Rule 37(a).

Further, Rule 37(b)(2) provides for the award of reasonable expenses and attorney's fees for the failure of a party "to obey an order to provide or permit discovery."[85]  As noted previously, one example of Pfizer's failure to comply with the Court's order is the recent discovery and Court ordered production of a collection of COX-2 related documents. Based on the record, the Court finds there is ample evidence to warrant an award of expenses under Rule 37(b).

Having concluded that fees and expenses are appropriate, the Court now turns to the reasonableness of BYU's request. At the outset the Court notes that it has reviewed the rates charged by comparable counsel in both the Salt Lake City,[86] and Phoenix areas,[87] and finds the rates charged by BYU's counsel fair and comparable to those of other attorneys. Thus, there is no need for the Court to reduce the rates charged by Plaintiffs' law firms. At the conclusion of the April 7-8, 2009 hearing, the Court asked BYU to submit affidavits relating to their fees in bringing the January 14, 2009, motion for discovery sanctions.[88]  BYU submitted two affidavits on May 11, 2009.[89]  The affidavit of Mark Bettilyon lists total fees of "approximately $206,955.00 representing all of the work performed by [Ray Quinney & Nebeker] regarding the discovery dispute heard at the 7 and 8 April 2009 hearing."[90]  Leo Beus' affidavit sets forth fees

---

[85] Fed. R. Civ. P. 37(b)(2)(A).
[86] Ray Quinney & Nebeker's principal office is located in Salt Lake City, Utah.
[87] Beus Gilbert's principal office is located in Scottsdale, Arizona which is part of the greater Phoenix, Arizona metropolitan area.
[88] See Tr. from April 8, 2009, hearing 170:13-16. ("I want you, Mr. Beus and Mr. Bettilyon on behalf of the plaintiffs to submit for my consideration affidavits related to your fees in brining this matter.").
[89] Docket nos. 232 and 233.
[90] Affidavit of Mark Battilyon p. 2, docket no. 232.

19

of "approximately $1,272,018.50, representing some of the work performed by [Beus Gilbert]

regarding the discovery dispute heard at the 7 and 8 April 2009 hearing."[91]   Based on the

affidavits, the total costs and fees sought by BYU is $1,478,973.50.   In contrast, BYU's

proposed findings list total fees and costs of $1,681,157.76.   The difference between the two

figures, $202,184.26, arises from BYU's inclusion of "Associated Costs" in its proposed

findings.   The affidavits fail to substantiate the associated costs in detail.

Pfizer takes issue with BYU's requested fees and costs arguing the $1,681,157.76, as set

forth by BYU in its proposed findings, is excessive "because, for example, it includes

$202,184.26 in costs that are not adequately documented, at least $512,704.50 for fees associated

with document review . . . other excessive fees, and fees associated with work unrelated to

preparing its motion for sanctions."[92]   The Court agrees with Pfizer's position and reduces

BYU's requested fees and costs as follows.

First, the Court declines to award BYU the "associated costs" of $202,184.26 set forth in

its proposed findings because the associated costs are not set forth in detail in the affidavits.[93]

Next, in *Digecor, Inc., v. E.Digital Corp.*,[94] my esteemed colleague Judge Nuffer, found

that reasonable expenses do "not include expenses of review of documents which is necessary in

any document exchange."[95]   The Court agrees with this principle.   BYU is not entitled to

document review expenses.   Therefore the following fees are not awarded:

---

[91] Affidavit of Leo Beuss p. 2, docket no. 233.
[92] Op. p. 49.
[93] *For e.g., see, Lucky Brand Dungarees, Inc. v. Ally Apparel Res. LLC.*, 2009 WL 466136, * 6 (S.D.N.Y. Feb. 25, 2009) (declining to award other costs that are not set forth in sufficient detail to warrant awarding them).
[94] 2008 WL 803108 (D. Utah March 22, 2008).
[95] *Id.* at * 6.

- $94,513.50 for time that Beus Gilbert spent in reviewing documents from June 2007 to January 2008;[96]

- $274,378.50 for Beus Gilbert's review of "approximately 2,002,950 pages of documents produced by Pfizer;"[97]

- $88,730.50 related to Beus Gilbert's review of approximately "5,283,959 pages of documents produced by Pfizer after the 29 July 2008 status conference;"[98]

- $54,426.00 in fees for Ray Quinney & Nebeker's review of "2,002,950 pages of documents produced by Pfizer after BYU filed it Motion to Compel and before the 29 July 2008 status conference;"[99] and

- $656 for Ray Quinney & Nebeker's review of "5,283,959 pages of documents produced by Pfizer after the 29 July 2008 status conference."[100]

Taking into account these reductions, this leaves $966,269 in requested costs and fees for the Court to consider.  Pfizer argues this amount is also inappropriate.

In support of its position, Pfizer cites to *Liew v. Breen*,[101] a decision from the Ninth Circuit where the court refused to award fees associated with obtaining a court order versus those fees incurred because of a party's failure to obey the order.[102]  The Court finds this case distinguishable from *Liew* because the Court has concluded that fees are recoverable for BYU's initial Motion to Compel and for Pfizer's failure to comply with the Court's order.

---

[96] *See* affidavit of Leo Beuss p. 2-3.
[97] *Id.* at p. 3.
[98] *Id.* at p. 4.
[99] Affidavit of Mark Bettilyon p. 3.
[100] *Id.* at p. 4.
[101] 640 F.2d 1046 (9th Cir. 1981).
[102] *See id.* at 1051.

Pfizer next contends that BYU seeks "other excessive and duplicative fees."[103]  Such excessiveness, according to Pfizer, includes seeking reimbursement for travel time at a full hourly rate.  In *Wirtz v. Kansas Farm Bureau Services, Inc.*,[104] a sister court from this Circuit found that "'travel time should not be compensated at the full hourly rate because such time is inherently unproductive."[105]  The *Wirtz* court went on to state that "travel time is not equivalent to time exclusively devoted to the case while in one's office.  On the road, the driver is necessarily distracted, unable to make notes, read or access files.  As such, the time is, at the least, not as productive as it would be if the person were seated behind his or her desk."[106]

The Court agrees with this principle and finds that BYU's requested fees and expenses related to travel time should be reduced.  A summary of the billing entries for Beus Gilbert's attorneys and paralegals is attached as Exhibit 1 to Leo Beus' Affidavit.  Some entries consist entirely of travel.  Other entries, however, have travel coupled with other work activities that likely occurred outside of travel.  For example, on page 10 two travel entries state, "Travel to Salt Lake city; Prepare for oral argument" and "Travel to Utah and meet with Jim Jardine and others RE: oral argument."  In comparison the third travel entry on page 10 states, "Travel back to Phoenix."

Given these mixed types of entries it is somewhat difficult for the Court to ascertain exactly how much travel time there is in Plaintiffs' affidavits.  But, rather than have Plaintiffs refile their affidavits, which would create another round of briefing on issues already properly before the Court and place additional strain and costs upon all the clients, parties, and the Court,

---

[103] Op. p. 53.
[104] 355 F.Supp.2d 1190 (D.Kan. 2005).
[105] *Id.* at 1199 (quoting *Aquilino v. Univ. of Kansas*, 109 F.Supp.2d 1319, 1326 (D.Kan. 2000)).
[106] *Id.*

the Court reduces the requested fees involving travel as follows: for entries that outline only travel the Court reduces them by 50%, in similar fashion to the *Wirtz* court; for time involving travel and other listed work activities the Court reduces the fees sought by 25%. The Court believes this strikes the proper balance between reducing travel time that is not the equivalent to work done in the office, while still recognizing the fact that the some entries in the affidavits support work performed outside of travel. These reductions also address Pfizer's concern that the travel time claimed by BYU is excessive.[107]

Beus Gilbert's Affidavits request $48,627.50 in mixed travel entries and $18,571.50 in travel time. Ray Quinney's Affidavits request $7464 in mixed travel entries and $3710 in travel time. Accordingly Plaintiffs are awarded $53,209.38 in expenses and fees related to travel and work coupled with travel in their affidavits.

Next, as noted by Pfizer, BYU "has also sought fees for time spent preparing for and attending depositions."[108] While BYU may not fully explain how preparing for and taking depositions relates to the status hearing, the record reveals their connection to the discovery issues. These depositions relate to Pfizer's compliance with the Court's orders. Thus, the Court finds them properly included within a fees and costs calculation by the Court.

BYU also seeks costs and fees for multiple attorneys attending the same depositions. The Court finds these requests to be excessive. Additionally, the Court further finds that the documented time and requested fees spent in preparation for the two day sanctions hearing, over 611 hours for approximately 6 hours of Court time, excessive. Finally, given Pfizer's conduct in

---

[107] *See* Op. p. 53.
[108] Op. p. 53.

this case, the Court is not convinced that BYU has improperly sought fees for tasks performed by partners that associate or paralegals should have performed.

Based upon the foregoing, the Court reduces the remaining costs and fees sought by BYU by an additional 10%. BYU therefore is awarded $799,106.70 in fees and costs against Pfizer. Coupled with the travel fees and costs awarded previously, this brings the total amount to $852,315.80. This is a substantial sum of money. Yet, given Pfizer's conduct in this case as outlined in detail above, the Court finds such an award is appropriate. The Court is hopeful that such an award will "entice Pfizer to comply with its discovery obligations."

### Conclusion

Based upon the forgoing BYU's Motion for Sanctions is GRANTED IN PART and DENIED IN PART. Pfizer is ordered to pay $852,315.80 in costs and fees by November 30, 2009.

DATED this 28th day of October, 2009.

BY THE COURT:

_____
Magistrate Judge Brooke Wells