Mark M. Bettilyon (4798)
Rick B. Hoggard (5088)
Arthur B. Berger (6490)
Samuel C. Straight (7638)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
mbettilyon@rqn.com
rhoggard@rqn.com
aberger@rqn.com
sstraight@rqn.com

David B. Thomas – (3228)
Office of the General Counsel
Brigham Young University
A-350 ASB
Provo, Utah 84602
Telephone:  801-422-4722
Facsimile:  801-422-0265
Dave_Thomas@byu.edu

Leo R. Beus (admitted *pro hac vice*)
L. Richard Williams (admitted *pro hac vice*)
Mark C. Dangerfield (admitted *pro hac vice*)
Adam C. Anderson (admitted *pro hac vice*)
Keith C. Ricker (admitted *pro hac vice*)
BEUS GILBERT PLLC
4800 North Scottsdale Road, Suite 6000
Scottsdale, Arizona  85251
Telephone: 480-429-3000
Facsimile:  480-429-3100
lbeus@beusgilbert.com
rwilliams@beusgilbert.com
mdangerfield@beusgilbert.com
aanderson@beusgilbert.com
kricker@beusgilbert.com

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, a Utah Non-Profit Education Institution; and Dr. DANIEL L. SIMMONS, an individual,<br><br>Plaintiffs,<br>vs.<br><br>PFIZER, INC., a Delaware corporation; G.D. SEARLE & COMPANY, a Delaware corporation; G.D. SEARLE LLC, a Delaware limited liability company; MONSANTO COMPANY, a Delaware corporation; and PHARMACIA CORPORATION, a Delaware corporation,<br><br>Defendants. | **PLAINTIFFS' MOTION TO EXTEND TRIAL DATE**<br><br>**(REDACTED)**<br><br>Case Number: 2:06CV-890-BTS (BCW)<br><br>Judge Ted Stewart<br><br>Magistrate Judge Brooke C. Wells |

## I.   __INTRODUCTION__

Under the current trial date, 31 January 2011, Plaintiffs expert disclosures are due today[1],

the fact discovery cutoff is ten and a half weeks away, and expert reports are due two weeks

before then, on 16 July 2010. The schedule prejudices Plaintiffs for seeking a full production

from Pfizer instead of simply proceeding. This is exactly what Pfizer wants because it still has

not complied with this Court's 26 March 2008 Order to "provide a complete production, after a

full search for all documents in Defendants' possession, custody or control."[2]

In the more than three and a half years of this litigation, Pfizer has continually insisted

that Plaintiffs take depositions. For example, Pfizer did not produce the complete Seibert file—a

box containing approximately 3400 pages of documents from a crucial witness in this case, Dr.

Seibert—until 19 November 2009, more than three years after BYU filed its Complaint.

However, while withholding Dr. Seibert's file, before BYU knew it existed, Pfizer insisted that

Plaintiffs take Dr. Seibert's deposition:

> Take the depositions. … We've talked to Seibert. … We know
> what they're going to say. Take the depositions. Rather than
> speculating about it, rather than presuming that we withheld and
> destroyed copies, they should take the depositions and ask them.[3]

Instead, relying on this Court's Order, through Magistrate Judge Wells, Plaintiffs have

waited to take depositions until Pfizer produces the documents:

> I'm going to require that these persons [Plaintiffs' witnesses] not
> be deposed prior to that [complete discovery]. I want to ensure that
> what testimony they give is accurate in nature and that they are not

---

[1] Just prior to Plaintiffs' filing this motion, the parties agreed to continue the date for expert disclosures by two weeks—until 1 June 2010. Based on the relief Plaintiffs seek in this motion, If Defendants do not stipulate to allow Plaintiffs more time, Plaintiffs will have to seek further relief regarding specifically that impending date.

[2] Order Granting BYU's Motion to Compel, 26 Mar 01, Dkt. 106.

[3] Sanctions Hrg. Trans., 8 Apr 09, 133:5-12, Ex. 1.

subject because of some documents that may come in at a later time to have to be recalled.[4]

Under the current schedule, BYU, still without all the documents, must, at the same time it takes depositions, disclose the identity of its experts and begin preparing expert reports. That schedule is unworkable because the experts require both the documents and the deposition transcripts in order to prepare their reports. Not extending the current trial schedule rewards Pfizer for withholding documents and penalizes BYU for trying to obtain a full production.

In the interests of justice, BYU respectfully requests that this Court extend the trial date, and all corresponding dates, nine months, from 31 January 2011 to 26 September 2011.

## II.   PFIZER'S DISCOVERY MISCONDUCT DELAYS THIS LITIGATION.

Although the Court may be aware of the facts BYU presents below, BYU presents them here to demonstrate why extending the trial date is appropriate and necessary.

### A.   Pfizer Misrepresented the Existence of Critical Documents.

On 28 October 2009, over three years after BYU filed its Complaint, Magistrate Judge Wells found that "Pfizer has come about as close to [a finding of bad faith] as a party can come" with regard to its discovery conduct and sanctioned Pfizer $852,315.80.[5] Even after that, Pfizer continued to produce documents and is in the process of producing still more documents. BYU is still waiting for the documents the Court ordered Pfizer to produce more than two years ago.

From the beginning of this litigation, Pfizer withheld documents. On 12 February 2007, in response to BYU's First Request for Production, Pfizer represented that, instead of reviewing all its documents for documents responsive to BYU's requests, Pfizer would produce its entire production from an earlier COX-2 related litigation with generic drug manufacturer Teva. Pfizer

---

[4] Hrg. Trans., 29 Jul 08, 83:22-84:1, Ex. 2.

[5] Order and Memorandum Decision, 28 Oct 09, Dkt. 303.

represented that the *Teva* production contained all the documents and more from an even earlier COX-2 related litigation with the University of Rochester.

Over time, BYU discovered that the *Teva* production did not contain all of the *Rochester* production. In fact, Pfizer had removed critical documents known as, for example, the Raz letters, the blue slide, and the Seibert email, from the *Rochester* production before producing it in *Teva*. Pfizer had an incentive to hide these documents from Teva because the documents may have helped Teva invalidate Pfizer's patents. Similarly, Pfizer had incentive to hide them from BYU because all of these documents are critical to BYU's case and prove that Pfizer used the biological materials and other information Dr. Simmons provided to Pfizer, and that Dr. Simmons provided a substantial contribution to Pfizer's development of COX-2 selective inhibitors, including Celebrex.

Even after BYU confronted Pfizer with evidence that Pfizer's production was incomplete, on 7 January 2008, Pfizer called BYU "absurd" for its claims.[6]

Finally, with no other recourse, in January 2008, 15 months after BYU filed its Complaint, BYU filed its Motion to Compel. Only after BYU filed its Motion, Pfizer finally admitted that its previous representations regarding the completeness of its production had been incorrect and promised to correct its production deficiencies. But at the hearing on BYU's motion, Pfizer's counsel represented that "everything had been produced."[7]

In spite of Pfizer's representations, on 26 March 2008, Magistrate Judge Wells ordered Pfizer "to provide a complete production," after conducting a "full search for all documents" in

---

[6] Ltr. from L. Schneider to L.R. Williams, 7 Jan 08, Ex. 3.

[7] Motion to Compel Hrg. Trans., 19 Mar 08, 45:8-10, Ex. 4.

its "possession, custody or control" that were responsive to BYU's production request.[8] Further, the Court ordered Pfizer to produce a complete set of the documents it produced in *Rochester*.[9]

Subsequently, between June and October 2008, Pfizer filed four certifications with the Court. In the first three, Pfizer claimed that it had " ████████████ *REDACTED* ████████████ ██████████."[10] Finally, in its last Certification, Pfizer claimed that its "production in response to BYU's First Request for Production of Documents is now complete."[11]

Because Pfizer had still not produced all the documents, in January 2009, BYU moved the Court for sanctions. At the hearing on BYU's Motion, on 8 April 2009, Judge Magistrate Wells ordered Pfizer and its attorneys to submit affidavits regarding "the nature and completeness or lack of completeness and the types of searches that have been conducted."[12]

In response, on 11 May 2009, Pfizer and its attorneys filed 114 affidavits for a total of approximately 800 pages. Among those pages, in an affidavit from Michael Warner, one of Pfizer's in-house attorney's, BYU found that Pfizer had been concealing a collection of documents in its St. Louis General Counsel's office, the COX-2 collection:



*REDACTED*

---

[8] Order Granting BYU's Motion to Compel, 26 Mar 08, Dkt. 106 at 1.

[9] *Id.* at 2.

[10] Pfizer's Certification, 27 May 08, Dkt. 117, Pfizer's Supplemental Certification, 18 Jul 08, Dkt. 138, and Pfizer's Second Supplemental Certification, 12 Aug 08, Dkt. 147.

[11] Third Supplemental Certification Concerning Discovery Efforts, 15 Oct 08, Dkt. 157 at 2.

[12] Sanctions Hrg. Trans., 8 Apr 09, 170:22-25, Ex. 1.

REDACTED [13]

Amazingly, Pfizer had been concealing the COX-2 collection with full knowledge of its outside counsel, including Ms. Schneider, who had represented, several times, to Magistrate Judge Wells, that Pfizer's production was complete: "I mean everything has been produced."[14]

On 15 May 2009, BYU insisted that Pfizer grant it access to the COX-2 collection. Pfizer, however, still tried to persuade the Court that the COX-2 collection was inconsequential by representing that "everything in [it] was produced at least once, probably twice."[15]

But, this Court, through Magistrate Judge Wells, allowed BYU to review the COX-2 collection in St. Louis. During its review of the COX-2 collection in August 2009, almost three years after filing its Complaint, BYU discovered thousands of pages that Pfizer had never produced. Approximately 3,397 of those pages were a collection of documents Pfizer had gathered from a key witness in this case, Dr. Karen Seibert. This Seibert file contained many previously unproduced relevant documents including, among others, the Seibert fax—a 10 September 1991 fax from Dr. Seibert which demonstrates, for example, Pfizer's use of Dr. Simmons's DNA sequences and his alignment of those sequences.

BYU subsequently discovered that Pfizer withheld the Seibert file in the *Rochester* production until over nine months after Rochester had deposed Dr. Seibert. Further, even though Pfizer eventually produced the Seibert file to Rochester, Pfizer removed it from the production in *Teva*, and never produced the Seibert file in that litigation. All this in spite of Pfizer's repeated and adamant claims that *Teva* contained *Rochester* and that everything had been produced.

---

[13] Affidavit of J. Michael Warner, Dkt 236, Ex. 18 at ¶ 8.

[14] Motion to Compel Hrg. Trans., 19 Mar 08, 44:21-45:10, Ex. 4.

[15] *Id.* at 28:20-22.

Additionally, early this year, Plaintiffs discovered that Pfizer stored the Seibert file in its outside counsel's office and knowingly failed to produce it, in spite of its certifications to this Court. The Seibert file contains documents necessary for a thorough deposition of Dr. Seibert. Especially since Dr. Seibert seems to require documents to remember COX-2 related facts:



Q:              REDACTED

A:              REDACTED
                [16]

And four years later:

Q:              REDACTED

                        * * *

A:              REDACTED
                        [17]

If BYU had deposed Dr. Seibert prior to discovering the Seibert file, Plaintiffs would have been in the position of having to depose her again, a process that might have included further delay and motion practice.

## III.   PFIZER IS STILL WITHHOLDING DOCUMENTS.

Above, Plaintiffs provide an abbreviated discussion of events that have taken over three and half years and have prevented BYU from taking depositions. Pfizer has an established

---

[16] K. Seibert Dep., 18 Jan 02, *Univ. of Rochester vs. G.D. Searle & Co., et al.*, 325:5-13, BYU-PFE 120937, Ex. 5.

[17] K. Seibert Dep., 19 Jul 06, *Pfizer, et al. v. Teva Pharmaceuticals USA, Inc.,* 83:16-84:7, BYU-PFE 686655-56, Ex. 6.

pattern of not producing critical documents until after BYU spends significant time and money identifying the documents and, in some cases, obtaining an Order from the Court.

Still, though, Pfizer is not producing documents even though BYU has identified them and the Court has sanctioned and warned Pfizer. Below is a list of some of the documents that Plaintiffs have identified for Pfizer but that Pfizer has not produced. Although Plaintiffs save space by offering only brief descriptions of the missing documents, Plaintiffs will provide any additional description if requested by the Court:

- Additional Bates labeled pages from the *Rochester* production;

- Karen Seibert notebook no. 5,403,901;

- Scott Hauser notebooks no. 4,548,601, 4,232,301, 4,391,801, 4,082,301, 3,850,301, 3,570,301, 3,074,801, 2,700,301, 2,885,701, 2,940,001, and 2,639,701;

- Laboratory notebooks no. 5,483,601, 4,983,001, 4,885,101, 4,420,901, 4,561,201, 4,004,901, 4,136,901, 4,328,801, 4,416,001, 4,144,201;

- Tom Warren notebooks (Warren was a Monsanto biologist who had contact with BYU's confidential biological materials and information);

- Daniela Salvemini notebooks (Salvemini was a member of the small group of COX-2 scientists, including Karen Seibert, who reported to Philip Needleman);

- A complete set of the notebooks of all other Monsanto/Searle employees, including Masferrer and Zweifel who were members of the COX-2 Project team. Pfizer should also produce all relevant notebooks that were kept by Pfizer researchers such as Masferrer, Zweifel, and Leahy;

- Scientific notebook index or notebook assignment log showing the notebooks assigned to COX-2 Project team members;

- Notebooks showing the work Dr. Seibert did during the summer of 1992 when she was " ███████████████████████████████████████

- Notebooks showing the cloning work reported in Seibert's draft articles that document Monsanto's use of BYU/Dr. Simmons's mCOX-1 and mCOX-2 clones to create "expression vectors" for the creation of drug testing systems;

- Notebooks showing the creation of the data contained in the Rangwala chart and the Pre-Big Ten Document (those data reflect Monsanto's successful creation of "expression vectors" by 6 October 1992 at the latest);

- Drafts, and presentations, and memoranda related to Dr. Philip Needleman's speech and article claiming that "[f]or each day the drug development is accelerated, there is $1 Million added to the Company's sales figures" and "[f]or Celebrex®, this figure could approach $10 Million per day;"

- Documents from COX-2 related litigations (Pfizer has filed for a protective order on some of the litigation-related documents that BYU seeks. If Pfizer is unsuccessful, BYU will be entitled to more documents—potentially after the current fact discovery cut-off);

- Notebooks showing the creation of COX-related chimeras, specifically the "Simmons COX1/COX2" molecule (Pfizer admits losing, while under Court order to produce all biological materials, a vial containing biological materials labeled "Simmons COX1/COX2");

- Notebooks showing Monsanto's use of Dr. Simmons's COX-2 antibodies, including for immunoprecipitations, in site analysis, and Western Blots;

- The file associated with Monsanto's Dr. Masferrer, similar to the Seibert file;

- Emails, diaries, and other documents from Karen Seibert, Kathleen Leahy, Jaime Masferrer, Philip Needleman, Peter Isakson, Gwen Krivi, Tom Warren, Carol Koboldt, Scott Hauser, and other Monsanto employees for the critical 1991-1995 time period;

- Internal administrative documents regarding the COX-2 project and the DIP project, such as board and other meeting minutes and memoranda;

- Documents from Searle CEO Richard DeSchutter, including those supporting his claims that ████████████████████████████████████████████

## IV.  BYU SHOULD NOT BE PREJUDICED FOR PFIZER'S MISCONDUCT BY BEING REQUIRED TO RUSH TRIAL PREPARATION WITHOUT ALL THE DOCUMENTS.

Given the long list of documents the Pfizer has still not produced, Plaintiffs' decision not to take depositions makes sense. Further, far from sitting on its hands, Plaintiffs have been litigating this case by, among other things, expending massive resources trying to uncover the documents Pfizer has been withholding, preparing a motion for dispositive sanctions based on

Pfizer's discovery misconduct, and preparing a motion, currently pending, to disqualify Pfizer's counsel Winston & Strawn for its conflict with Brigham Young University.

When this Court filed its Amended Scheduling Order signed by Magistrate Judge Wells on 3 May 2010, an Order that, for example, allowed Plaintiffs only 15 days to disclose the identity of its experts, Plaintiffs reached out to Defendants asking if they would object to a request for an extension. On 17 May 2010, one day before Plaintiffs' expert disclosures are due under the current Order, Defendants informed Plaintiffs that Defendants would object to any movement of the trial date. Therefore, Plaintiffs are forced to file this motion.

Penalizing Plaintiffs by requiring them to barrel toward an imminent trial date by disclosing its experts today, taking 30 depositions before 31 July 2010, and preparing approximately 10 expert reports before 16 July 2010 will unfairly prejudice BYU and reward Pfizer for its discovery misconduct. And that doesn't take into consideration the four other depositions Defendants recently requested dates for.

Further, the logistics of scheduling, preparing for, and then taking more than 30 depositions in different cities across the country in the next 11 weeks, 53 business days, are not practical. Even triple tracking the depositions does not provide a workable solution.

Then, on top of the deposition schedule, BYU is required to prepare approximately 10 expert reports in the next 43 business days. Even assuming that all of BYU's experts can drop their other professional and personal obligations, coordinating and finalizing all the reports would be impossible because they wouldn't have the entire corpus of deposition testimony necessary for the experts to form their opinions.

BYU recently accepted 1-3 June for Dr. Seibert's deposition because she "is unavailable from June 4 until the week of Aug. 23."[18] And BYU accepted 22-23 July for Dr. Masferrer "because he is out of the country until mid-May, and then … will be looking for a place to live in June while he commutes from St. Louis to Boston."[19]

Plaintiffs have accepted the deposition dates because they have no other choice; Plaintiffs anticipate seeking dates for their approximately 26 other depositions soon.

In the interests of justice, BYU should not be required to pay the penalty for Pfizer's discovery conduct by being forced to unreasonably speed through its trial preparations. BYU does not believe Pfizer has produced all the documents the Court ordered it to produce, but BYU seeks a schedule that will allow it time to prepare for trial with the documents it has.

## V.   CONCLUSION

For the above-stated reasons, BYU respectfully requests that the Court amend the current schedule as follows:

| Close of discovery | 1 April 2011 | BYU's pretrial disclosures | 12 August 2011 |
|---|---|---|---|
| Plaintiffs' expert reports | 29 April 2011 | Pfizer's pretrial disclosures | 19 August 2011 |
| Counter expert reports | 13 May 2011 | Settlement conference | 16 September 2011 |
| Close of expert discovery | 10 June 2011 | Pretrial conference | 22 September 2011 |
| Dispositive motions | 24 June 2011 | Trial | 26 September 2011. |

---

[18] Email from G. Haley to M. Bettilyon, 27 Apr 2010, Ex. 7.

[19] *Id.*

RESPECTFULLY SUBMITTED this 18th day of May 2010.

**BEUS GILBERT PLLC**


By____*s/ Adam C. Anderson*____
　　　Leo R. Beus
　　　L. Richard Williams
　　　Mark C. Dangerfield
　　　Adam C. Anderson
　　　Keith C. Ricker


RAY QUINNEY & NEBEKER P.C.
　　　Mark M. Bettilyon
　　　Rick B. Hoggard
　　　Arthur B. Berger
　　　Samuel C. Straight


OFFICE OF THE GENERAL COUNSEL
　　　David B. Thomas
　　　BRIGHAM YOUNG UNIVERSITY

::ODMA\PCDOCS\BGD\93276\3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of May, 2010, I electronically filed the foregoing

**PLAINTIFFS' MOTION TO EXTEND TRIAL DATE** with the Clerk of the United States

District, District of Utah Central Division, using the CM/ECF system which sent notification of

such filing to the following:

| | |
|---|---|
| Charles W. Douglas, Esq.<br>Richard O'Malley, Esq.<br>Lisa A. Schneider, Esq.<br>Neil H. Wyland, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL  60603<br>Telephone:  312-853-3577<br>Facsimile:  312-853-7036<br>cdouglas@sidley.com<br>romalley@sidley.com<br>lschneider@sidley.com<br>nwyland@sidley.com | George Haley, Esq.<br>David R. Parkinson, Esq.<br>Holme Roberts & Owen LLP<br>299 South Main Street<br>Suite 1800<br>Salt Lake City, UT  84111<br>Telephone:  801-521-5800<br>Facsimile:  801-521-9639<br>george.haley@hro.com<br>david.parkinson@bro.com |
| Dan K. Webb<br>Raymond C. Perkins<br>WINSTON & STRAWN LLP<br>35 W. Wacker Drive<br>Chicago, IL  60601<br>Telephone:  312-558-5600<br>Facsimile:  312-558-5700<br>dwebb@winston.com<br>dperkins@winston.com | John Caleb Dougherty<br>Richard T. Mulloy<br>Kathy J. Owen<br>DLA PIPER<br>6225 Smith Avenue<br>Baltimore, MD  21209<br>Telephone:  410-580-4140<br>Facsimile:  410-580-3140<br>john.dougherty@dlapiper.com<br>richard.mulloy@dlapiper.com<br>kathy.owen@dlapiper.com |

_s/ Adam C. Anderson_