George M. Haley, #1302
David R. Parkinson, #8258
HOLME ROBERTS & OWEN LLP
299 South Main Street, Suite 1800
Salt Lake City, UT  84111
Telephone:  (801) 521-5800
Facsimile:  (801) 521-9639
george.haley@hro.com
david.parkinson@hro.com

John Caleb Dougherty (*pro hac vice*)
DLA PIPER LLP
6225 Smith Avenue
Baltimore, Maryland  21209-3600
Telephone:  (410) 580-4140
Facsimile:  (410) 580-3140
john.dougherty@dlapiper.com

Richard T. Mulloy (*pro hac vice*)
DLA PIPER LLP
401 B Street, Suite 1700
San Diego, CA  92101-4297
richard.mulloy@dlapiper.com

Kathy J. Owen (*pro hac vice*)
DLA PIPER LLP
1717 Main Street, Suite 4600
Dallas, Texas  75201
kathy.owen@dlapiper.com

Charles W. Douglas (*pro hac vice*)
Richard F. O'Malley, Jr. (*pro hac vice*)
Lisa A. Schneider (*pro hac vice*)
Neil H. Wyland (*pro hac vice*)
Todd L. Krause (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036
cdouglas@sidley.com
romalley@sidley.com
lschneider@sidley.com
nwyland@sidley.com
tkrause@sidley.com

Dan K. Webb (*pro hac vice*)
Raymond C. Perkins (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois  60601
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700
dwebb@winston.com
rperkins@winston.com

*Attorneys for Defendants Pfizer Inc., G.D. Searle LLC, and Pharmacia Corporation*

## UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, a Utah non-profit educational institution; and DR. DANIEL L. SIMMONS, an individual,<br><br>     Plaintiffs,<br><br>vs.<br><br>PFIZER, INC., a Delaware corporation, G.D. SEARLE & COMPANY, a Delaware corporation, G.D. SEARLE LLC, a Delaware limited liability company, MONSANTO COMPANY, a Delaware corporation; and PHARMACIA CORPORATION, a Delaware corporation,<br><br>     Defendants. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXTEND TRIAL DATE**<br><br>Case No. 2:06CV00890 DAK<br><br>Honorable Ted Stewart<br><br>Magistrate Judge Brooke C. Wells |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................... 2

       A.      Plaintiffs' Complaint .............................................................................................. 2

       B.      Relevant Procedural History .................................................................................. 2

III.    PLAINTIFFS HAVE FAILED TO ESTABLISH GOOD CAUSE FOR
       CONTINUING THE TRIAL DATE .................................................................................. 5

       A.      Plaintiffs Must Demonstrate Good Cause For Extending the Trial Date and
                 Modifying the Procedural Schedule ....................................................................... 5

       B.      Plaintiffs Have Not Been Diligent in Conducting Discovery or Seeking a
                 Continuance ............................................................................................................ 6

       C.      Plaintiffs' Cannot Blame Pfizer For Their Own Lack of Diligence ..................... 8

IV.     CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Edizone, LC v. Cloud Nine, LLC*, 505 F.Supp.2d 1226, 1231 (D.Utah 2007)..................................5

*Fairchild v. Peak Medical Corp,.,* No. 09-CV-296-TCK-FMH, 2010 WL 845974
    (N.D.Okla. March 5, 2010) (unpublished)..................................................................................6

*Home Design Services, Inc. v. Trumble,* No. 09-cv-00964-WYD-CBS, 2010 WL 1435382
    (D.Colo. April 9, 2010) (unpublished) ................................................................................5, 6

*Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604 (9th Cir. 1992)..........................................6

*Minter v. Prime Equip. Co.,* 451 F.3d 1196 (10th Cir. 2006)..........................................................5

*Pumpco, Inc. v. Schenker International, Inc.,* 204 F.R.D. 667 (D.Colo. 2001)..............................5

*Rent-a-Center, Inc. v. 47 Mamaroneck Ave. Corp.,* 215 F.R.D. 100 (S.D.N.Y. 2003) ..................5

*Washington v. Arapahoe County Department of Social Services,* 197 F.R.D. 439 (D.Colo.
    2000) .........................................................................................................................................5


**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Fed.R.Civ.P. 16(b) ...........................................................................................................................5

Fed.R.Civ.P 16(b)(4).........................................................................................................................5

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT.

Defendants oppose Plaintiffs' Motion to Extend the Trial Date.  There is ample time in the current schedule to prepare this case for trial if the parties stay focused and cooperate.  The January 2011 trial date assists both the parties and the Court in driving this case towards resolution.  In the event some deadline in the current schedule becomes unworkable after sincere efforts are made to comply, the parties should address the Court with their concerns at that time and show, with good cause, why a particular date inside the schedule should be changed.  A wholesale change to the schedule at this point is not necessary, and would complicate and prolong this lawsuit.

In this opposition, Defendants review why the procedural history of this case does not warrant any revision to the current schedule.  During the nearly four years this lawsuit has been pending, Plaintiffs have taken virtually no merits depositions.  Defendants also point out how Plaintiffs have chosen to use their time in this lawsuit to aggressively pursue non-merits discovery and issues.  Plaintiffs are entitled to make these choices, of course, but they bear the responsibility for their lack of preparedness on the merits.  Indeed, it was only after Plaintiffs' motion for dispositive sanctions was denied earlier this month that Plaintiffs raised any objection to the current trial date that has now been in place for nearly two months.  Finally, because Plaintiffs' motion includes their now familiar attacks on Defendants' discovery efforts and sinister speculations, Defendants respond briefly to those allegations and show how Plaintiffs have failed to articulate any basis for extending the trial date based upon Defendants' conduct.  Accordingly, Pfizer respectfully requests that the Court deny Plaintiffs' motion to further extend the trial date and allow the parties to move forward toward a resolution of Plaintiffs' claims on the merits.

WEST\21977151.3

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY.

### A.     Plaintiffs' Complaint.

Plaintiffs' lawsuit relates back to information allegedly shared with Monsanto by BYU researcher Dr. Daniel Simmons under a 1991 Research Agreement between BYU and Monsanto (the "Research Agreement").[1]  The Research Agreement required BYU to perform certain work relating to the study of a then newly-sequenced enzyme—now known as the COX-2 enzyme—in exchange for Monsanto paying BYU up to $100,000.  (Dkt. No. 1 at Exhibit A.)  The Research Agreement was terminated by mutual consent of the parties on March 27, 1992.  (*Id.* at 30.)  Plaintiffs now allege that Pfizer breached the agreement and misused Plaintiffs' information to create the selective COX-2 inhibitor class of medicines, including Celebrex®, and seek damages in excess of $1 billion.  (*Id.* at 54-56.)

More than fourteen years after the mutual termination of the Research Agreement, in October 2006, Plaintiffs filed this lawsuit.  Pfizer disputes the allegations in Plaintiffs' complaint and denies liability for any of Plaintiffs' claims.  Dr. Simmons and BYU made no material contribution to the discovery of Pfizer's COX-2 inhibitors, and have attempted to convert what is, at most, a simple (and stale) contract dispute into a complex conspiracy against them.

### B.     Relevant Procedural History.

On July 30, 2007, the Court entered the initial Scheduling Order in this case.  (Dkt. No. 48.)  At that time, the Court set a trial date of October 19, 2009, thus giving the parties three years from filing of the Complaint to prepare the case for trial.  (*Id.* at 4.)  On October 23, 2008,

---

[1] An entity then known as the Monsanto Company was the original party to the Research Agreement at issue in this case.  At the time of the Research Agreement, Monsanto Company included its subsidiary pharmaceutical company, G.D. Searle & Co.  In connection with a merger effective in 2000, the former Monsanto Company changed its name to Pharmacia Corporation, which, through a subsequent transaction, became a wholly owned subsidiary of Pfizer Inc. in 2003.  In this Memorandum, "Monsanto" refers to the Monsanto Company that was the original party to the Research Agreement in 1991, although that company is now actually Pharmacia Corporation.

the Court amended the Scheduling Order and continued the trial date until September 13, 2010. (Dkt. No. 159 at 4.)

In the time this lawsuit has been pending, Plaintiffs have declined to conduct substantive deposition discovery.  Instead, Plaintiffs elected to pursue extensive document discovery regarding tangential issues, and took a limited number of depositions limited to discovery issues.[2]  Although Pfizer previously offered deposition dates for some of its witnesses, Plaintiffs declined those dates.  (*See* Dkt. No. 326 (December 2009 Joint Status Report) at 3.)  When Pfizer filed its Motion For A Hearing To Amend The Discovery Plan in January 2010, Plaintiffs opposed Pfizer's request for a schedule that would move the case forward to a resolution on the merits.  Instead, Plaintiffs took the position that no additional discovery would be necessary if their then-yet-to-be-filed motion for dispositive sanctions was successful.  (*See* Dkt. No. 348 at 19 ("Additional Discovery Procedure is Unnecessary, And Discovery Should End, Because Pfizer's Answer Should Be Stricken.").)  Defendants did not acquiesce to this position and have consistently maintained the need to move forward on the merits.

On March 10, 2010, Plaintiffs filed their motion for dispositive sanctions.  (Dkt. No. 350.)  Plaintiffs' 88-page motion was based largely on issues already addressed by the Court in an October 2009 Order on Plaintiffs' previous motion for dispositive sanctions.[3]  Nowhere in that motion did Plaintiffs explain how the alleged historical discovery misconduct prevented them from moving forward in the case.  On April 2, 2010, the Court further continued the trial

---

[2] Pfizer has been forced to make motions for protective order based on Plaintiffs' overly broad discovery requests.  *See* Dkt. No. 343 (motion regarding criminal proceedings addressing off-label drug marketing more than a decade after the 1991 Research Agreement); Dkt. No. 345 (motion regarding COX-2 materials created more than a decade after the 1991 Monsanto-BYU Research Agreement).

[3] In that October 2009 Order, the Court denied Plaintiffs' initial motion for dispositive sanctions, finding that Pfizer did not act willfully or in bad faith.  (Dkt. No. 303 at 15-16)  Instead, the Court issued monetary sanctions of $852,315.80 as compensation for Plaintiffs' attorneys' fees incurred during the discovery process.  (*Id.* at 24.)

date in this matter until January 31, 2011.  (Dkt. No. 373.)  Plaintiffs did not raise any objection

to the trial date at that time.  Instead, Plaintiffs filed a motion to further extend their time to

amend their complaint until July 31, 2010.  (Dkt. No. 386.)  Plaintiffs did not seek any

corresponding extension of the trial date in that motion, and in their reply brief supporting that

motion argued that Pfizer would *not* be prejudiced if Plaintiffs were granted leave to amend their

Complaint in July 2010—four months before the scheduled trial date.  (Dkt. No. 415 at 5.)

On May 3, 2010, the Court entered the Amended Scheduling Order.  (Dkt. No. 406.)  On

May 4, 2010—the day after Pfizer filed its opposition to Plaintiffs' motion for dispositive

sanctions—the Court denied Plaintiffs' motion for sanctions without prejudice:  "[T]here is no

need to continually replay the same movie that the Court has viewed a number of times in this

case."  (Dkt. No. 409 at 2.)  Only after the denial of their motion for dispositive sanctions did

Plaintiffs contact Defendants' counsel to request a continuance of the January 2011 trial date.

(*See* Ex. 1 (Declaration of David Parkinson) at ¶¶ 2-3.)  Plaintiffs initially expressed a desire to

move the trial date by one year based on their belief that the procedural schedule did not provide

sufficient time to complete fact and expert discovery, but later stated that they were not sure how

much additional time they wanted in the trial schedule.  (*Id.* at ¶¶ 2-4.)  When Defendants

expressed a willingness to work with Plaintiffs to address any issues that might arise in meeting

all of the dates of the Amended Scheduling Order (e.g., the proximity of the expert discovery

cut-off date to the date for expert rebuttal reports), Plaintiffs chose to file their motion to extend

instead of address any potential problems in the current schedule.  (*Id.* at ¶ 5.)

### III. PLAINTIFFS HAVE FAILED TO ESTABLISH GOOD CAUSE FOR CONTINUING THE TRIAL DATE.

#### A. Plaintiffs Must Demonstrate Good Cause For Extending the Trial Date and Modifying the Procedural Schedule.

Plaintiffs' motion seeks a continuance of the trial date and modification of the Scheduling Order. A Scheduling Order may be modified "only for good cause…." Fed.R.Civ.P 16(b)(4); *see also* Dkt. No. 460 (Amended Scheduling Order; noting "the times and deadlines set forth herein may not be modified without approval of the Court and on a showing of good cause"). This "good cause" requirement reflects the important role a scheduling order plays in the court's management of its docket. *See Washington v. Arapahoe County Department of Social Services,* 197 F.R.D. 439, 441 (D.Colo. 2000) (noting that a "scheduling order is an important tool necessary for the orderly preparation of a case for trial"); *see also Rent-a-Center, Inc. v. 47 Mamaroneck Ave. Corp.,* 215 F.R.D. 100, 101 (S.D.N.Y. 2003) ("scheduling orders are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed").

The "good cause" standard under Rule 16 requires the moving party to show that despite its diligent efforts, it could not have reasonably met the scheduled deadline. *See Edizone, LC v. Cloud Nine, LLC,* 505 F.Supp.2d 1226, 1231 (D.Utah 2007); *Pumpco, Inc. v. Schenker International, Inc.,* 204 F.R.D. 667, 668 (D.Colo. 2001); *Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1205 n. 4 (10th Cir. 2006); *see also* Advisory Committee Notes to 1983 Amendment to Fed.R.Civ.P. 16(b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension"). The good cause standard of Rule 16 "primarily considers the diligence of the party seeking the amendment." *Home Design Services, Inc. v. Trumble,* No. 09-cv-00964-WYD-CBS, 2010 WL 1435382, at *6 (D.Colo. April 9, 2010) (unpublished) (citation omitted). "[T]he focus of the

inquiry is upon the moving party's reasons for seeking modification," and "[i]f that party was not

diligent, the inquiry should end." *Fairchild v. Peak Medical Corp,*. No. 09-CV-296-TCK-FMH,

2010 WL 845974, at *1 (N.D.Okla. March 5, 2010) (unpublished) (quoting *Johnson v. Mammoth*

*Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992)).

> **B.      Plaintiffs Have Not Been Diligent in Conducting Discovery or Seeking a
> Continuance.**

Plaintiffs' motion should be denied because Plaintiffs cannot demonstrate that they have

acted diligently to bring this case to trial or that the trial date could not be met despite their

efforts.  To the contrary, the facts and procedural history in this case both confirm that Plaintiffs

elected to pursue non-merits discovery and dispositive sanctions in lieu of preparing their case

for trial on the merits.  Although Plaintiffs and their counsel are entitled to make those strategic

choices, those decisions do not constitute good cause to continue the trial date.

This case was filed nearly four years ago.  Since that time, Plaintiffs have pursued wide-

ranging document discovery often directed at ancillary issues that have little bearing on the

merits of the dispute related to the 1991 Research Agreement between BYU and Monsanto.  As

part of that strategy, Plaintiffs declined to conduct depositions directed to the merits of this case

even though Pfizer offered deposition dates for a number of its witnesses months ago.  (*See* Dkt.

No. 326 (December 2009 Joint Status Memorandum) at 3.)  *See Home Design Services,* No. 09-

cv-00964-WYD-CBS, 2010 WL 1435382, at *8 (denying motion to modify certain dates in the

procedural schedule; "Without expressing any opinion as to the potential value of the desired

discovery, it is clear that Plaintiff's predicament is the result of counsel's own tactical decisions

and failure to pursue discovery in a timely manner.")

Importantly, there is still time to complete fact discovery.  Pfizer has worked with

Plaintiffs to accommodate their very recent requests for merits depositions.  For example, Pfizer

has offered—and Plaintiffs have accepted—dates for depositions of Dr. Karen Seibert and Dr. Jaime Masferrer on June 1-3 and July 22-23, respectively.  Thus, these depositions will both take place well before the July 31, 2010 discovery cut-off under the current procedural schedule.

Plaintiffs have likewise failed to promptly seek an extension of the trial date and the procedural schedule.  The Court's order setting a trial date for January 31, 2011 issued on April 2, 2010—more than six weeks before Plaintiffs filed their motion.  Plaintiffs' motion fails to explain why they waited six weeks before making a motion to continue the trial date.  Nor do Plaintiffs explain what actions they took to move this case forward on the merits between April 2 and the time they filed their motion for a continuance.  Although Plaintiffs now state that they need to take nearly 30 fact depositions in this case, Plaintiffs requested deposition dates for just two of those witnesses before filing their motion to extend the trial date.[4]  Indeed, even after filing their motion, Plaintiffs have only requested dates for approximately half of the 30 fact witnesses they claim to need, and Pfizer has already provided proposed deposition dates for some of those witnesses.[5]  (*See* Exs. 2-4 (correspondence from Pfizer's counsel offering various deposition dates).)  It is not clear who the remaining witnesses are or when Plaintiffs intend to identify them, but Plaintiffs' argument that the Court's procedural schedule is "unworkable" because of the timeframe to conduct fact depositions should be rejected in view of Plaintiffs' own failure to timely identify fact witnesses and conduct depositions.

Plaintiffs' argument that their delay in seeking to move the trial date should be excused because they have not "sat on their hands" by filing a motion for dispositive sanctions and a

---

[4] Dr. Seibert and Dr. Masferrer were previously offered for deposition back in January and February 2010, respectively.  (*See* Dkt. No. 326 at 3; Ex. 5 (E-mail exchange between counsel).  Plaintiffs declined Pfizer's offers.

[5] A number of the witnesses Plaintiffs have identified are former employees of Pfizer or its predecessor companies. Pfizer's counsel has agreed to contact those witnesses in an effort to schedule their deposition dates.

motion to disqualify Pfizer's counsel is misplaced. (Pfs. Br. at 8-9.) Plaintiffs' argument ignores that their motion for sanctions was made on March 10 and the motion to disqualify was made on April 5. Thus, Plaintiffs' argument that they have been consumed with briefing those motions since the Court's April 2, 2010 order setting the trial date is incorrect because both of those motions were filed (or substantially finished) before that order.

Plaintiffs' arguments regarding expert discovery are equally unavailing. For example, Plaintiffs claim they will be prejudiced by having to prepare ten expert reports within the timeframe permitted by the Court's scheduling order. (Pfs. Br. at 9.) But Plaintiffs make no attempt to explain why they need ten experts or why their experts did not begin working on these reports earlier, or at least begin work (at the latest) two months ago after the Court's April 2, 2010 order setting the trial date. Likewise, Plaintiffs provide no support for the suggestion that their experts cannot meet the procedural schedule due to "other personal and professional obligations." (*Id.* at 9.) Plaintiffs' vague reference to "other personal and professional obligations" that may affect their experts' ability to comply with the schedule does not constitute good cause.[6]

### C. Plaintiffs' Cannot Blame Pfizer For Their Own Lack of Diligence.

Because Plaintiffs cannot demonstrate that they have diligently attempted to move this case forward on the merits, they spend a majority of their brief attacking Pfizer based on past discovery disputes. For example, Plaintiffs spend half of their brief detailing discovery disputes in 2008 and 2009 related to documents they refer to as the "Seibert file," but then acknowledge that Pfizer produced all of those documents no later than November 2009. (*See* Pfs. Br. at 2-6.)

---

[6] Plaintiffs also cite the expert disclosure requirement as further support for its request for a continuance, but that issue is now moot. On May 26, 2010, the Court issued an order stating that Plaintiffs do not have to disclose their experts until after a ruling on Plaintiffs' Motion to Extend Trial Date. (*See* Dkt. No. 426 at 3.)

Plaintiffs fail to mention that an overwhelming majority of those same documents were produced months earlier (in August 2009) and that many of those same documents had been produced even earlier than that.  But even accepting Plaintiffs' skewed version of the facts, these documents were produced more than eight months before the July 31, 2010 discovery cut-off and nearly 15 months before trial.  That is more than sufficient time to prepare to take depositions based on those documents.  Indeed, Plaintiffs are taking Dr. Seibert's deposition for three days this coming week and are free to question her regarding those documents and any others. Plaintiffs' argument that the "Seibert file" should have been produced before 2009 does not support their argument that the procedural schedule is prejudicial or unworkable.

Likewise, Plaintiffs' unsupported accusation that Pfizer continues to intentionally withhold documents is insufficient to satisfy their burden to demonstrate good cause for continuing the trial date.  Significantly, Plaintiffs offer no evidence to support their accusations that additional critical documents have been withheld.  Nor do Plaintiffs mention that they have declined Pfizer's offers to make various documents and electronic databases available—such as the Preserve database and the Pfizer Records Service Centre ("PRSC")—so Plaintiffs can confirm for themselves that Pfizer has conducted a diligent search for responsive documents. Instead, Plaintiffs simply state that they "believe" that various categories of additional critical documents have not been produced.  (*See* Pfs. Br. at 10.)  In many cases, however, Plaintiffs' unfounded speculation is demonstrably false.  For example:

- Plaintiffs claim that Pfizer is withholding board of director meeting minutes and other documents.  But Pfizer made nearly 30 boxes of its Board of Director meeting minutes and other documents available for Plaintiffs' inspection months ago.  (*See* July 22, 2009 Hearing Transcript) at 8:11-20.)  Plaintiffs never inspected those documents.

- Plaintiffs claim that Pfizer is withholding lab notebooks from summer of 1992 and other years reflecting Dr. Seibert's COX-2 experiments.  But Pfizer produced those notebooks years ago, and attached some of Dr. Seibert's notebooks as exhibits to its recent opposition to Plaintiffs' motion for dispositive sanctions.  (*See, e.g.,* Dkt. No. 408 at Exs. 46, 47.)  Plaintiffs cannot credibly argue they have not received those documents.

- Among the other notebooks plaintiffs accuse Pfizer of withholding are notebooks (notebook nos. 4,561,201 and 4,328,801) that describe HIV research.  Those notebooks have nothing to do with this case, which relates to COX-2 research and development efforts during a discrete period of time in the early 1990's.

If Plaintiffs believe there are outstanding discovery issues, there is a procedure in place to resolve those issues.  Indeed, Plaintiffs raised a number of these same issues in the context of their recent motion for dispositive sanctions.  The Court denied that motion on May 3, 2010 (without prejudice) and Plaintiffs indicated they intended to file another motion.  (Dkt. No. 415 at 2, fn. 2.)  But instead of filing that motion, Plaintiffs now attempt to bootstrap the same unfounded discovery accusations made in their unsuccessful sanctions motion into a continuance of the January 2011 trial date.

## IV.    CONCLUSION.

Plaintiffs have failed to satisfy their burden to demonstrate good cause to continue the January 31, 2011 trial date or further extend the procedural schedule.  Accordingly, Pfizer respectfully requests that the Court deny Plaintiffs' motion to extend the trial date and the procedural schedule.

Dated:  May 28, 2010                                       Respectfully submitted,


                                                           /s/  George M. Haley

Dan K. Webb *(pro hac vice)*                               George M. Haley, UT – 1302
Raymond Perkins *(pro hac vice)*                           David R. Parkinson, UT – 8268
**WINSTON & STRAWN LLP**                                   **HOLME ROBERTS & OWEN LLP**
35 W. Wacker Drive                                         299 South Main Street, Suite 1800
Chicago, IL 60601-9703                                     Salt Lake City, UT 84111
Telephone:  (312)-558-5600                                 Telephone:  (801)-521-5800


John C. Dougherty *(pro hac vice)*                         Charles W. Douglas *(pro hac vice)*
**DLA PIPER LLP**                                          Richard F. O'Malley, Jr. *(pro hac vice)*
6225 Smith Avenue                                          Lisa A. Schneider *(pro hac vice)*
Baltimore, MD 21209-3600                                   Neil H. Wyland *(pro hac vice)*
Telephone:  (410)-580-3000                                 **SIDLEY AUSTIN LLP**
                                                           One South Dearborn Street
*Attorneys for Defendants Pfizer Inc.,*                    Chicago, IL 60603
*G.D. Searle LLC, and Pharmacia Corporation*               Telephone:   (312) 853-7000