DAVID J. JORDAN (#1751)
djjordan@stoel.com
JILL M. POHLMAN (#7602)
jmpohlman@stoel.com
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, UT 84111
(801) 328-3131

BRAD D. BRIAN (*pro hac vice*)
brad.brian@mto.com
STUART N. SENATOR (*pro hac vice*)
stuart.senator@mto.com
KRISTIN S. ESCALANTE (*pro hac vice*)
kristin.escalante@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 683-9100

*ATTORNEYS FOR WINSTON & STRAWN LLP*

Redacted public version pursuant
to Court's Sept. 9, 2010 Order (Dkt. 479)

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, a Utah Non-Profit Education Institution; and DR. DANIEL L. SIMMONS, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>PFIZER, INC., a Delaware Corporation; G.D. SEARLE & COMPANY, a Delaware Corporation; G.D. SEARLE LLC, a Delaware Limited Liability Company; MONSANTO COMPANY, a Delaware Corporation; and PHARMACIA CORPORATION, a Delaware Corporation,<br><br>Defendants. | **WINSTON & STRAWN LLP'S OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO DISQUALIFY**<br><br>Case No. 2:06cv-890-BTS (BCW)<br><br>The Honorable Ted Stewart<br><br>Magistrate Judge Brooke C. Wells<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. i
II. BACKGROUND ................................................................................................................. ii
    A. Relevant Facts ........................................................................................................ ii
    B. The Order ............................................................................................................... v
III. ARGUMENT ....................................................................................................................... 1
    A. Standard Of Review .............................................................................................. 1
    B. The Order's Interpretation Of The Conflict Waiver Is Contrary To Law ............. 1
    C. The Decision To Disqualify Winston Is Clearly Erroneous .................................. 3
        1. Winston's Conduct Was Not Egregious ..................................................... 4
        2. Winston's Representation of Pfizer Will Not Prejudice BYU ................... 7
        3. Winston Can Effectively Represent BYU and Pfizer Simultaneously ...... 7
        4. Pfizer Will Suffer Significant Prejudice If Winston Is Disqualified .......... 8
        5. The Stage of Trial Proceedings Counsels Against Disqualification .......... 9
IV. CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

FEDERAL CASES

*Bodily v. Intermountain Health Care Corp.*,
   649 F. Supp. 468 (D. Utah 1986) ..................................................................................... 4

*Combe v. Cinemark USA, Inc.*,
   No. 1:08-cv-142 TS, 2009 WL 3584883 (D. Utah Oct. 26, 2009) ..................................... 1

*Flying J Inc. v. TA Operating Corp.*,
   No. 1:06-CV-30 TC, 2008 WL 648545, at *6 (D. Utah Mar. 10, 2008) ..................... 4, 9, 10

*J.R. Simplot Co. v. Chevron Pipe Line Co.*,
   No. 2:04CV00624DAK, 2006 WL 2796887 (D. Utah Sept. 27, 2006) ............................. 2

*Milk 'N' More, Inc. v. Beavert*,
   963 F.2d 1342 (10th Cir. 1992) ........................................................................................ 1

*Parkinson v. Phonex Corp.*,
   857 F. Supp. 1474 (D. Utah 1994) ................................................................................ 3, 4

*Procter & Gamble Co. v. Haugen*,
   183 F.R.D. 571 (D. Utah 1998) ........................................................................................ 3

*Richardson-Merrell, Inc. v. Koller*,
   472 U.S. 424 (1985) ..................................................................................................... 3, 9

*Smith v. Dickinson Operating Co.*,
   Civ. A. No. 89-4216-S, 1991 WL 105208 (D. Kan. May 29, 1991) ................................. 1

*United States v. U.S. Gypsum Co.*,
   333 U.S. 364 (1948) .......................................................................................................... 1

FEDERAL RULES

FED. R. CIV. P. 72(a) .................................................................................................................. 1

STATE RULES

Utah Rule of Professional Conduct 1.7 ................................................................................ i, v, 3

OTHER AUTHORITIES

1 Geoffrey C. Hazard & W. William Hodes, *The Law of Lawyering* § 9.15:60 (3d ed. supp. 2010) ................................................................................................................................. 7

I.  **INTRODUCTION**

Winston & Strawn LLP ("Winston") respectfully submits the following objections to the Magistrate Judge's August 24, 2010 Memorandum Decision and Order Granting Plaintiffs' Motion to Disqualify ("Order"). The Order concludes that Winston had violated Rule 1.7 of the Utah Rules of Professional Conduct ("URPC") and that the severe sanction of disqualification of Winston as counsel for Pfizer, Inc. ("Pfizer") was appropriate. Winston has been allowed to intervene for the purpose of arguing against BYU's motion for disqualification. *See* Dkt. 402.

The Order is both contrary to law and clearly erroneous. First, the Order misinterprets the Advance Patent Waiver wherein Winston and BYU agreed that Winston could represent certain clients adverse to BYU. The waiver explicitly applies to pharmaceutical companies (like Pfizer) and to intellectual property ("IP") litigation (like the litigation before the Court). Yet, the Order adopts an unreasonable reading of the waiver whereby it would apply only to clients that Winston happened to represent in IP matters on the specific day that the waiver was signed. Application of the waiver should not turn on the vagaries of whether another matter for another client happened to open or close before or after the particular day that BYU agreed to waive certain future conflicts. This is not the agreement that Winston and BYU struck, and the Court's interpretation of the waiver should not frustrate the intent of the parties. Winston's extensive representation of Pfizer has included IP matters and the advance waiver should not be interpreted to exclude Pfizer matters from its scope.

Second, the Order opts for the drastic remedy of disqualification despite the technical nature of the violation that it found – the Order's determination that the language of the waiver is not sufficiently broad to include Pfizer because Pfizer has not been shown to have been represented by Winston in an IP matter on the particular day that the waiver was signed. Disqualification is reserved for the most egregious of ethical violations. The circumstances here are nowhere close to meeting that high bar. The Order's conclusion is based on the unstated but erroneous and unsupported premise that Winston's lawyers believed that the Advance Patent Waiver did not apply to Pfizer matters. It is undisputed that Winston acted on the good faith belief that its conflict waiver was valid and applied to the firm's representation of Pfizer adverse to BYU in the current matter while allowing it to continue to represent BYU in separate, totally unrelated, matters. Indeed, there is no evidence that BYU had a different

view. Even if, for the technical reason identified in the Order, the waiver is held not to apply to Pfizer matters, Winston's good faith reliance on the waiver certainly cannot be categorized as egregious. Moreover, BYU will not be prejudiced by Winston's continuing to represent Pfizer in this litigation while Pfizer will be severely prejudiced by imposition of the Order's drastic remedy of depriving Pfizer of its counsel of choice in this high-stakes litigation. On the evidentiary record, the Order is clearly erroneous in concluding that Winston should be disqualified.

## II. BACKGROUND

### A. Relevant Facts

In February 2005, Gene Schaerr left the law firm Sidley Austin to join Winston as a partner specializing in appellate practice. While working at Sidley, Mr. Schaerr was asked by BYU's then-General Counsel Tom Griffith to represent BYU in conjunction with certain legislation and regulatory proceedings that BYU was concerned could affect its religious freedom. Dkt. 410, Ex. 6, Declaration of Gene C. Schaerr ("Schaerr Decl.") ¶18.

When Mr. Schaerr joined Winston, BYU sought continued representation from Mr. Schaerr. Winston agreed to represent BYU only on the condition that BYU sign a prospective conflict waiver. Dkt. 374, Ex. 1, Declaration of Michael Orme ("Orme Decl.") ¶10.

REDACTED

Winston views prospective conflict waivers as vital to the protection of its highly regarded IP practice. Dkt. 410, Ex. 2, Declaration of Thomas J. Frederick ("Frederick Decl.") ¶3. Winston has been recognized as having one of the top four such practices in the country, and the firm is proactive in protecting that practice through the use of advance conflict waivers. *Id.* To that end, Winston will not represent certain types of clients, such as research universities, unless the prospective client provides consent in advance that Winston can represent other clients adverse to the new client in future IP matters. *Id.* Winston sought an advance consent from BYU for this very reason. *Id.* ¶6. If BYU had

refused, Winston would have turned down the representation of BYU, in accordance with Winston's standard practice. *Id.* ¶4.

To accommodate BYU's desire to retain Mr. Schaerr without impinging on Winston's IP practice, BYU, through its then-General Counsel Tom Griffith, signed an engagement letter that included an Advance Patent Waiver. The waiver states:

> Advance Patent Waiver: As you may know, universities frequently hold patents in the products and inventions developed at such universities. Winston & Strawn LLP currently represents multiple pharmaceutical and other companies with respect to patent and intellectual property matters (collectively, the "Other Clients), including litigation (the "Patent Matters"). Winston & Strawn LLP is not currently representing any Other Clients in matters adverse to the University. Because of the scope of our patent practice, however, it is possible that Winston & Strawn will be asked in the future to represent one or more Other Clients in matters, including litigation, adverse to the University. Therefore, as a condition to Winston & Strawn LLP's undertaking to represent you in the BYU matters, you agree that this firm may continue to represent the Other Clients in the Patent Matters, including litigation, directly adverse to the University and hereby waive any conflict of interest relating to such representation of the Other Clients.

Orme Decl. Ex. B at ¶7. For five years thereafter, BYU enjoyed the benefit of Mr. Schaerr's services on matters related to preserving the institution's religious freedom. Schaerr Decl. ¶¶21-25.

## REDACTED

Orme Decl. ¶14. After the current litigation was filed, but before Winston was asked to represent Pfizer in this litigation, and *before* Mr. Schaerr was aware that Winston then represented Pfizer in other matters (Schaerr Decl. ¶36), these conversations also sometimes touched on BYU's case against Pfizer. While Winston and BYU dispute whether any information shared by Mr. Orme was confidential, the Order concluded there was "no evidence in the record that Mr. Schaerr [ ] shared the information obtained from Mr. Orme with others at Winston that represent Pfizer." Order at 20; *see also* Schaerr Decl. ¶¶39, 40, 48. Once BYU let it be known that it would object to Winston's representing Pfizer in

- iii -

11559675.4

this litigation, Winston also instituted a formal ethical screen prohibiting sharing of the information. Frederick Decl. ¶16.

In January 2010, Winston was contacted for the first time by Pfizer, inquiring whether Winston could represent Pfizer in the current litigation adverse to BYU. Frederick Decl. ¶7. Winston had previously represented Pfizer and its predecessor entities since 1985 in more than 490 separate matters, including numerous IP matters. *Id.* Although Winston partner Dan Webb had represented Pfizer in mass tort personal injury litigation related to the drugs Celebrex and Bextra since 2006 (*id.* ¶8), Winston had never been asked by Pfizer to represent it in this litigation or any other matter adverse to BYU until January 2010. *Id.* ¶7. When Pfizer contacted Winston in January 2010, Tom Frederick, Chairman of Winston's Litigation Department, concluded that Winston could rely on the advance waiver signed five years earlier by now-Judge Griffith and represent Pfizer adverse to BYU in the current matter and continue to represent BYU in other unrelated matters. *Id.* ¶6.

While it was Mr. Frederick, not Mr. Schaerr, who decided that Winston could proceed pursuant to the advance waiver, Mr. Schaerr learned about the potential Pfizer engagement and called Mr. Orme about it shortly after Pfizer's inquiry. Schaerr Decl. ¶40. Mr. Schaerr explained that the waiver allowed Winston to represent Pfizer while continuing to represent BYU in its **REDACTED** matters. *Id.* ¶43. Mr. Schaerr also suggested that based on his relationship with BYU, he might be able to facilitate settlement discussions. Dkt. 440, Supplemental Declaration of Gene C. Schaerr ("Supp. Schaerr Decl.") ¶5. Shortly after that telephone call, Winston instituted its formal ethical screen walling off Mr. Schaerr from his colleagues working on the Pfizer matter. Frederick Decl. ¶16 & Ex. C. The screen has been fully complied with since it was put in place. Supp. Schaerr Decl. ¶6.

After Mr. Schaerr informed BYU that Winston would be representing Pfizer pursuant to the waiver letter, counsel for BYU had discussions and exchanged letters and e-mails with Winston regarding its decision. Never once was it suggested that BYU thought the waiver did not apply because Winston did not have an active IP matter for Pfizer on the particular day the waiver was signed. Rather, counsel for BYU objected only generally to the enforceability of an advance waiver (an argument correctly rejected by the Order). *See* BYU's Memorandum in Support of its Motion to Disqualify (Dkt. 374) ("BYU Memo") Ex. 5.

Shortly thereafter, despite its prior agreement to allow Winston to represent clients like Pfizer adverse to BYU, and despite enjoying the benefits of that agreement and Mr. Schaerr's representation for five years, BYU moved to disqualify Winston as counsel for Pfizer in this case. *See* Dkt. 374.

B. <u>The Order</u>

On August 24, 2010, the Magistrate Judge granted BYU's motion to disqualify Winston. *See* Dkt. 465. The Order correctly concluded first that advance waivers are permissible under URPC 1.7, particularly given the national and international nature of the modern practice of law and the increasing size of law firms. Order at 8. The Order also gave no credit to BYU's argument that an advance waiver need specifically mention the names of the future clients covered by the waiver to be effective.

Nonetheless, the Order determined that the Advance Patent Waiver signed by BYU is inapplicable to Winston's representation of Pfizer here and that, as a result, Winston had violated URPC 1.7 by representing Pfizer in this litigation while its representation of BYU, although currently dormant, has not terminated. *Id.* at 9-12. This conclusion was based largely on the Order's interpretation of the defined term "Other Clients" in the waiver letter. Based on the location of the "Other Clients" parenthetical in the sentence in which it appears, the Order interprets the term to refer only to clients who, on the *particular* day that the waiver was signed, were represented by Winston in IP and patent matters. *Id.* at 11. Although it is undisputed that Winston previously represented Pfizer in hundreds of matters, including IP matters, the Order found that Pfizer did not qualify as an Other Client because there was no specific evidence that Winston was representing Pfizer *in an IP matter* on the *specific date* that the Advance Patent Waiver was signed. *Id.* at 11-12.

The Order correctly recognized that the finding of a URPC violation does not automatically result in disqualification, acknowledging that instead disqualification is a drastic remedy reserved for exceptional circumstances. *Id.* at 13. The Order nevertheless concluded that disqualification of Winston is appropriate because the violation of URPC 1.7 was egregious, BYU would be prejudiced by Winston's representation of Pfizer, Winston could not effectively represent BYU in its other matters while representing Pfizer adverse to BYU in the current litigation, the hardship of disqualification of Winston on Pfizer was minimal, and the stage of the trial proceedings weighed in favor of disqualification. *Id.* at 16-22.

- v -

11559675.4

## III. ARGUMENT

### A. Standard Of Review

A district judge should modify or set aside a magistrate judge's order that is clearly erroneous or contrary to law. FED. R. CIV. P. 72(a). The Order's conclusion here was based on its interpretation of the Advance Patent Waiver, a contract between BYU and Winston. This is a purely legal issue (*see Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1345 (10th Cir. 1992)), and should therefore be reviewed under the "contrary to law" standard, which "permits the district court to conduct plenary review of the magistrate's purely legal determinations." *Combe v. Cinemark USA, Inc.*, No. 1:08-cv-142 TS, 2009 WL 3584883, at *1 (D. Utah Oct. 26, 2009) (Ex. A). The decision to disqualify Winston is reviewed under the "clearly erroneous" standard. This standard requires reversal if, "although there is evidence to support [a Magistrate Judge's decision], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A Magistrate Judge's decision is clearly erroneous if based on an unsupported factual premise. *See Smith v. Dickinson Operating Co.*, Civ. A. No. 89-4216-S, 1991 WL 105208, at *2 (D. Kan. May 29, 1991) (setting aside portion of Magistrate Judge's decision "based solely upon [a] factual premise" that was "clearly erroneous") (Ex. B).

### B. The Order's Interpretation Of The Conflict Waiver Is Contrary To Law

The Order concludes that the Advance Patent Waiver, while valid, did not apply to Pfizer. Order at 11-12. This conclusion is based principally on a strained reading of which clients are included in the defined term "Other Clients" and is apparently based upon the fact that the parenthetical definition appears after the entire phrase "Winston & Strawn LLP currently represents multiple pharmaceutical and other companies with respect to patent and intellectual property matters" rather than after the phrase "Winston & Strawn LLP currently represents multiple pharmaceutical and other companies." *Id.* at 11. According to the Order, "Other Clients" includes only clients represented by Winston in IP matters on the particular day that the waiver was signed. *Id.* Although Pfizer had been a Winston client for more than 20 years before the waiver was signed, and the matters on which Winston had represented Pfizer and its predecessors included IP matters, Winston did not have an *open* IP matter for Pfizer on March 1, 2005, the particular day when the waiver was signed. *Id.* at 11-12.

- 1 -

Such a cramped interpretation makes little sense in the context of modern law practice. As the Order recognizes, the modern practice of law is such that potential conflicts, particularly at large firms, have proliferated. *Id.* at 8-9. The prospective conflict waiver has become a useful tool not just for law firms to assure that they may continue to represent certain types of clients, but also for new clients to assure they may obtain the counsel of their choosing. *Id.* The waiver in this case did just that. It assured BYU the counsel of its choice, Mr. Schaerr, while allowing Winston to protect its IP and patent practice. *See* Frederick Decl. ¶¶3-6. The Order's conclusion, however, eliminates Winston's protection based on the vagaries of litigation. Under the Order, Winston could have had an IP matter for Pfizer close on February 28, 2005 and another open on March 2, 2005, but because on March 1 there was no open IP matter for Pfizer, the waiver would not apply to Pfizer. This makes no sense. Regardless of whether advance waivers should generally be interpreted narrowly, the scope of an advance waiver is an issue of the parties' intent and a court's interpreting the advance waiver should not lead to an unintended and unreasonable result. *See J.R. Simplot Co. v. Chevron Pipe Line Co.*, No. 2:04CV00624DAK, 2006 WL 2796887, at *6 (D. Utah Sept. 27, 2006) (court's interpretation of contract should not lead to "absurd consequences") (Ex. C). The Order's interpretation of the waiver based on the particular day that it was signed does so and was therefore contrary to law.

If the Order were correct, one would be left to wonder why Winston would have asked for the waiver it sought. Winston's undisputed intent based on the evidentiary record was to maintain the ability to represent its IP clients adverse to BYU. But of course, Winston did not know to which client in which future matter the waiver would apply. Instead, the waiver sought to identify generically a certain type of existing client (pharmaceutical companies), in certain types of matters (IP and patent litigation), and to protect Winston's ability to represent those existing clients in the same types of cases in the future. Frederick Decl. ¶¶4-5. The Order is unreasonable in its conclusion that Winston would have proposed, or agreed to, an advance waiver that included only those specific Winston clients that had open IP matters on the particular day that BYU happened to sign the waiver, and excluded long-term clients that Winston had previously represented in IP matters.

There is no evidence that BYU understood the scope of the waiver differently than Winston. BYU offered no evidence that it contemporaneously believed the waiver did not apply to long-term

- 2 -

Winston clients because Winston did not have open IP matters for the clients on the date the waiver was given. When, in February 2010, Mr. Schaerr raised the issue of Winston's representing Pfizer in this litigation, BYU's objection was that an advance waiver could never be effective. *See* BYU Memo Ex. 5. Later, in its moving papers in this Court, BYU argued the waiver did not cover Winston's representing Pfizer because the waiver did not mention Pfizer by name. *See* BYU Memo at pp. 8, 14. But the Order correctly does not accept either argument, as advance waivers are generally acceptable (Order at 8-9), and need not identify other clients by name, (*see* Am. Bar Ass'n Formal Ethics Op. 05-436). It was only BYU's disqualification motion reply brief that first argued Winston's roster of open IP matters on March 1, 2005 was relevant here. And although BYU obtained a declaration from former BYU General Counsel Thomas Griffith who executed the waiver on BYU's behalf **REDACTED** the declaration does not say that Mr. Griffith (or anyone else at BYU) contemporaneously believed it applied only to Winston clients for whom Winston had open IP matters on the date it was signed. Griffith Decl. ¶¶7-8.

In sum, the Order's interpretation of the scope of the Advance Patent Waiver (1) makes no practical sense in the context of the purpose of such waivers generally, (2) does not comport with the reasons the that Winston was seeking such a waiver, and (3) is not based on any evidence of what *BYU* contemporaneously understood the waiver meant. Accordingly, the Order's interpretation of the waiver to exclude Pfizer from its scope is contrary to law and should be set aside. Because the waiver is valid, Winston has not violated URPC 1.7 and should not have been disqualified.

### C. The Decision To Disqualify Winston Is Clearly Erroneous

Even if the Order were correct in concluding that Winston violated URPC 1.7, the decision to disqualify Winston is clearly erroneous. A litigant's right to the counsel of its choice is fundamental to our adversarial system (*see Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 441 (1985) (Brennan, J., concurring)), and disqualification is a "drastic remedy" reserved for extreme situations. *See Procter & Gamble Co. v. Haugen*, 183 F.R.D. 571, 574 (D. Utah 1998). This is not such a case.

When deciding whether disqualification is warranted, courts focus on whether the alleged misconduct will "taint" the lawsuit. *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1476 (D. Utah 1994). Typically five factors are considered: "(1) the egregiousness of the violation, (2) the presence

- 3 -

11559675.4

or absence of prejudice to the other side, (3) whether and to what extent there has been a diminution of effectiveness of counsel, (4) hardship to the other side, and (5) the stage of trial proceedings." *Flying J Inc. v. TA Operating Corp.*, No. 1:06-CV-30 TC, 2008 WL 648545, at *6 (D. Utah Mar. 10, 2008) (Ex. D). In evaluating these factors, the Order's analysis was clouded by implicit but unsupported factual premises and the decision to disqualify Winston was therefore clearly erroneous.

### 1. Winston's Conduct Was Not Egregious

The Order concludes that Winston's conduct was more egregious than the conduct at issue in *Parkinson*, *Flying J*, and *Bodily v. Intermountain Health Care Corp.*, 649 F. Supp. 468 (D. Utah 1986). On this basis, the Order states that this factor weighs in favor of disqualification. That conclusion is clearly erroneous.

*First*, although *Parkinson*, *Flying J*, and *Bodily* all involved instances of concurrent conflicts, none dealt with the situation here where the law firm invoked a conflict waiver that it in good faith believed applied and no one had contended did not apply on the basis that the court articulated. Indeed, there was no written waiver in any of the referenced case. Thus, while *Parkinson*, *Flying J*, and *Bodily* involved flagrant violations of the ethical rules (while the law firms were nonetheless *not* disqualified), Winston's alleged violation is technical in nature and based on a by no means inevitable interpretation of the waiver. Indeed, the Order makes no finding that Winston's reliance on the waiver was unreasonable. Moreover, the amount of fees that Winston collected from BYU, and the length of Mr. Schaerr's representation of BYU as higher and longer than the representations at issue in *Parkinson*, *Flying J*, and *Bodily*, are both irrelevant. The Order having found that the waiver is valid, contractual interpretation of whether the waiver includes Pfizer is the only issue.

*Second*, the Order's conclusion that Winston's conduct was egregious is based largely on the erroneous factual premise that Mr. Schaerr knew or should have known Winston represented Pfizer in other matters by Summer 2008, when Mr. Schaerr included this litigation in his list of matters on which to receive Lexis/Nexis notices. But Mr. Schaerr's inclusion of the litigation in this list shows only that Mr. Schaerr knew about the litigation at that time, *not* that Mr. Schaerr knew at that time that Pfizer was a Winston client. Winston was not identified in Lexis/Nexis as counsel for Pfizer, of course, because Winston was not then counsel to Pfizer in the matter. The uncontroverted evidence is

11559675.4

that it was only recently that Mr. Schaerr learned Pfizer is a Winston client. Schaerr Decl. ¶36. Moreover, contrary to the Order's assumption, Mr. Schaerr was not under any general "dut[y] to monitor potential conflicts between BYU and Winston's *clients*." Order at 17 (emphasis added). Although a lawyer must check for potential conflicts between firm clients in matters actually handled by the law firm – a duty that Winston fully discharged here – this duty does not extend to monitoring adversity between firm clients in matters in which the firm is not representing either party. Such a duty would be virtually impossible to discharge, especially in firms of significant size like Winston.[1] In light of this evidentiary record, to the extent the Order's conclusion that Winston's conduct was "egregious" is based on the determination that Mr. Schaerr knew or should have known of Winston's representation of Pfizer in Summer 2008, that determination is clearly erroneous.

*Third*, the decision to disqualify Winston focuses heavily on the Order's assessment that Mr. Schaerr's mindset was to sacrifice his loyalty to BYU in the hopes of achieving a more lucrative representation of Pfizer. Order at 18, 22. But there is no evidentiary support for that conclusion. The assessment is based on a single e-mail from Mr. Schaerr to Mr. Orme. *See* Orme Decl. Ex. C. In that e-mail, Mr. Schaerr explained his strong personal feelings for BYU and his hope to maintain his relationship with BYU. *Id.* He noted, however, that he was a single partner in a large firm, and that his fiduciary duties to his other partners did not allow him to stand in the way "unnecessarily" of Winston's taking on the Pfizer representation. *Id.*; *see also* Schaerr Decl. ¶29. This was not an admission that Mr. Schaerr opted for money over client loyalty, but rather a statement of the reality that Mr. Schaerr could not veto Winston's acceptance of a client when Winston believed in good faith that it had a valid waiver expressly permitting the firm to take on the matter. Schaerr Decl. ¶29.

It is undisputed that it was not Mr. Schaerr who made the decision that Winston would undertake the representation of Pfizer in the current litigation. That decision was made by the firm's

---

**REDACTED**

Mr. Schaerr understood his conversations with Mr. Orme about the litigation to be "small talk between friends, as lawyers often have regarding their cases without disclosing privileged or confidential information." *Id.* ¶32.

- 5 -

11559675.4

Head of Litigation Tom Frederick. Frederick Decl. ¶6. But the use of the phrase "stand in the way *unnecessarily*" in Mr. Schaerr's e-mail was an implicit recognition of the fact that Mr. Schaerr would have objected to Winston's undertaking a representation adverse to BYU if he did not believe that BYU had executed a valid conflict waiver covering the matter. The email therefore affirmatively shows sensitivity to ethical issues and client loyalty, not a disregard for them.

Likewise in his January 28 email, Mr. Schaerr expressly stated his "hope [that he could] live up to my responsibilities to the firm and its employees in a way that maintains the strong relationship that I have enjoyed with BYU over the past 36 years, and that minimizes any discomfort to you and my other friends in the BYU administration." Orme Decl. Ex. C. Finally, in his February 9 letter **REDACTED** Mr. Schaerr unambiguously stated that the firm's decision **REDACTED** BYU Memo Ex. 3. There is nothing in the record to support that Mr. Schaerr (or Winston) made a decision to discard BYU in favor of Pfizer, let alone that he did so out of a cavalier "attitude about client loyalty." Order at 18. The Order's contrary determination is clearly erroneous and is not an appropriate basis for disqualification.

Stripped of BYU's rhetoric and unsupported allegations, Winston's alleged ethical violation does not come close to being egregious. BYU signed an advance conflict waiver in 2005. BYU enjoyed the benefit of that waiver for five years as Mr. Schaerr represented BYU in religious freedom matters that Winston would not have permitted Mr. Schaerr to undertake absent the waiver. In January 2010, Winston relied on the waiver in undertaking to represent Pfizer, while seeking to continue to represent BYU in unrelated religious freedom matters. Winston's only violation, according to the Order, is based upon the Order's interpretation of the waiver not to include Pfizer, an interpretation that is grounded in a technical reading of the contract language. Even were that interpretation ultimately correct, Winston's reliance on the waiver was not unreasonable, and the Order does not determine it was. Taking into account the entire record, the Order is clearly erroneous in concluding that any violation of the ethical rules was so egregious as to weigh in favor of disqualification.

### 2. Winston's Representation of Pfizer Will Not Prejudice BYU

The Order is also clearly erroneous in concluding that BYU would suffer prejudice if Winston were allowed to represent Pfizer and that this factor narrowly favored disqualification. Order at 18-20.

The Order is first concerned with information disclosed by Mr. Orme to Mr. Schaerr. *Id.* at 19. But the Order concludes that there was no evidence that Mr. Schaerr has disclosed the information he learned from Mr. Orme. *Id.* at 20. Neither the Order, nor BYU, identifies a single case in which a court found prejudice where a lawyer receives information from a client and does not disclose that information. It makes sense such citations are lacking. A litigant does not suffer prejudice from the simple fact that another lawyer has learned information about the litigant's case but the lawyer has no personal involvement in the case and has not shared that information with anyone else.

The Order goes on to question whether there is a "generally known exception" to those of the URPC that prohibit disclosure of information learned from a client. *Id.* at 19. But this simply sidesteps the threshold point that it is uncontroverted that there has been no such disclosure here. There is no explanation in the Order of how Mr. Schaerr, and only Mr. Schaerr, knowing the information that Mr. Orme told him prejudices BYU in any way. *See Id.* at 20 (finding no evidence that Mr. Schaerr disclosed any information he learned from Mr. Orme); Frederick Decl. ¶16 (describing formal ethical screen in place at Winston). Moreover, as explained in the treatise 1 Geoffrey C. Hazard & W. William Hodes, *The Law of Lawyering* § 9.15:60 (3d ed. supp. 2010), any interpretation of the URPC not to include a "generally known" exception to disclosure prohibitions is both "unworkable" and "unrealistic." Accordingly, the Order's determination that prejudice to BYU weighs, even narrowly, in favor disqualification is clearly erroneous.

### 3. Winston Can Effectively Represent BYU and Pfizer Simultaneously

The Order also concludes that Winston could not effectively represent Pfizer adverse to BYU in the current matter while simultaneously representing BYU in unrelated religious freedom matters. This conclusion is premised on (1) the Order's view that the ethical screen instituted by Winston had not been 100 percent effective and (2) Mr. Schaerr's having asked Mr. Orme about prior settlement discussions. Neither supports disqualification.

- 7 -

*First*, the evidence is undisputed that the ethical screen instituted by Winston has been effective. At the time of the phone conversation between Mr. Orme and Mr. Schaerr referenced in the Order, the screen was not in place because Winston had not yet agreed to represent Pfizer in this case. Instead, the conversation was a professional courtesy – an opportunity for Mr. Schaerr to discuss the potential acceptance of the matter with BYU before the firm did so. Supp. Schaerr Decl. ¶6. Since the screen has been in place, Mr. Schaerr has complied with it. *Id.* Further, as the Order determines, even before the screen was in place, there is no evidence Mr. Schaerr shared the information he learned from Mr. Orme with Winston lawyers working on the Pfizer litigation or anyone else. Order at 20.

*Second*, Mr. Schaerr's brief inquiry into whether he might play a role in settlement does not suggest that Winston cannot effectively represent both Pfizer and BYU simultaneously. When Sidley Austin initially took on the Pfizer representation adverse to BYU, it too required a conflict waiver from BYU, which BYU granted. According to BYU, it agreed to that waiver in part because it had a "unique relationship" with Sidley and thought "the relationship between BYU and Sidley Austin might create an atmosphere of trust that would facilitate an amicable resolution of the dispute." Griffith Decl. ¶4. Years later, it was not unreasonable for Mr. Schaerr to believe that his long relationship with BYU might similarly be viewed by BYU as creating an atmosphere of trust that would facilitate an amicable resolution of the dispute. Supp. Schaerr Decl. ¶5. While BYU rejected Mr. Schaerr's playing this role, that does not change the reasonableness of the inquiry in light of Mr. Schaerr's knowledge of a similar mindset at BYU years earlier. That inquiry was neither unethical nor inappropriate.

Both Winston generally, and Mr. Schaerr specifically, believe Winston will be able to provide competent and diligent representation to BYU in its religious freedom matters while totally different attorneys at Winston simultaneously represent Pfizer adverse to BYU. Frederick Decl. ¶6; Schaerr Decl. ¶28. The Order identifies nothing to cast doubt on this conclusion, and the finding of the Order that diminution of effectiveness of counsel weighs in favor of disqualification is clearly erroneous.

### 4. Pfizer Will Suffer Significant Prejudice If Winston Is Disqualified

The Order discounts the hardship that Pfizer will suffer if Winston is disqualified on the grounds that Winston has been involved in this matter for only a short period of time and there are other qualified law firms Pfizer can hire instead. Order at 21. This conclusion too is clearly erroneous.

- 8 -

On the first point, while it's true Winston has not represented Pfizer in this matter for many years, it has been involved since January 2010 and since that time has been one of two firms primarily responsible for litigating this case on behalf of Pfizer. More importantly, Pfizer has a long history of trusting some of its most important litigation to Winston. Frederick Decl. ¶8. This sort of previous working relationship, where trust and confidence is developed between lawyer and client, is as important as having worked on the case for an extended period of time. *See* Dkt. 410, Ex. 1, Declaration of Paul G. Cassell ("Cassell Decl.") ¶3; Dkt. 410, Ex. 3, Declaration of Stephen D. O'Sullivan ("O'Sullivan Decl.") ¶4; *see also Flying J*, 2008 WL 648545 at *8 (finding prejudice where firm was "highly familiar" with client's business and legal matters) (Ex. D).

On the second point, of course it is true that there are other lawyers and other law firms that Pfizer could have hired. But our adversarial system does not require Pfizer to settle for its second or third choice. Fundamental to the system of justice is that a litigant's choice of counsel should not be so easily cast aside. *See Koller*, 472 U.S. at 441 ("A fundamental premise of the adversary system is that individuals have the right to retain the attorney of their choice to represent their interests in judicial proceedings."). Yet the Order does not acknowledge the case law recognizing the importance of a litigant's right to counsel of their choice, let alone afford Pfizer any sort of deference in its choice of Winston and specifically Dan Webb, a lawyer characterized by multiple publications as *the top* trial lawyer in the country. *See* Frederick Decl. ¶10. As retired-Judge Paul Cassell explained, "choice of lead counsel is often of immense importance." Cassell Decl. ¶3. That is particularly true in a case like this one where BYU is pursuing claims against Pfizer in excess of $1 billion. The Order's discounting Pfizer's choice of counsel is also clearly erroneous.

### 5. The Stage of Trial Proceedings Counsels Against Disqualification

Finally, the Order concludes that the stage of trial proceedings weighs in favor of disqualification. This conclusion is based on the assessments that Winston has not been involved in the discovery process, Sidley Austin is familiar with the case and no delay would result from disqualifying Winston, and that allowing Winston to represent Pfizer might delay proceedings while Winston gets up to speed. Order at 21-22. The record does not support these assessments.

First, Winston began actively participating as co-lead counsel in this litigation early in 2010; it does not need to get up to speed now. For example, Winston is identified as Pfizer's counsel on every Pfizer filing in this litigation between March 5, 2010 and the date of service of the Order. *See* Dkt. 342. Disqualifying Winston means putting a different firm in that role. Regardless of any firm's prior role in this litigation, it is a significant and expensive disruption for Pfizer to transfer responsibility away from Winton. Second, the notion that allowing Winston to stay on as counsel for Pfizer will delay trial proceedings is unsupported by anything in the record and wrong. As noted, Winston has been co-lead counsel for Pfizer since January 2010 and is one of the two firms with principal day-to-day responsibility for the litigation. And it was BYU, not Pfizer, that recently moved (successfully) to delay the trial until Fall 2011. Pfizer, represented by Winston, opposed the motion. *See* Dkt. 430.

As the Order notes, a trial date has been set for this case and discovery is well under way. In similar circumstances, the court in *Flying J* concluded that the stage of proceedings weighed against disqualification. *See* 2008 WL 648545 at *9 (Ex. D). The Order should have reached the same conclusion here and to conclude otherwise is clearly erroneous.

*   *   *

The Order's remedy of disqualification should be set aside if the Order is clearly erroneous on any of the five factors identified by the Order. Here, the Order's conclusion on every one of the factors is not supported by the evidence and is therefore clearly erroneous. In particular, the Order's determination that Winston decided to drop a less lucrative client (BYU) for a more lucrative client (Pfizer) simply is not true. Indeed,

REDACTED

*See* BYU Memo Ex. 3. Under the waiver Winston believed was effective and applicable, Winston, Mr. Schaerr for BYU, and a totally different team of lawyers for Pfizer, hoped and intended to continue to represent both clients. An ethics violation based on the Order's strained reading of the conflict waiver should not be the basis for depriving Pfizer of its counsel of choice, particularly in this situation where there has been no finding of bad faith and the evidence does not support such a finding.

## IV. CONCLUSION

Based on the foregoing, Winston respectfully submits that the Order is contrary to law and clearly erroneous and should be overruled.

Dated: September 8, 2010

/s/ Jill M. Pohlman
David J. Jordan
Jill M. Pohlman
STOEL RIVES LLP

Brad D. Brian
Stuart N. Senator
Kristin S. Escalante
MUNGER, TOLLES & OLSON LLP

*Attorneys for Winston & Strawn LLP*

# CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of September, 2010, a true and correct copy of the foregoing WINSTON & STRAWN LLP'S OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO DISQUALIFY was served as follows:

**via CM/ECF:**

Mark M. Bettilyon
Rick B. Hoggard
Arthur B. Berger
Samuel C. Straight
Ray Quinney & Nebeker P.C.
36 South State Street, Suite 1400
Salt Lake City, UT 84111

Leo R. Beus
L. Richard Williams
Adam C. Anderson
Keith C. Ricker
Mark C. Dangerfield
Beus Gilbert PLLC
4800 North Scottsdale Road, Suite 6000
Scottsdale, AZ 85251

John Caleb Dougherty
DLA Piper LLP
6225 Smith Avenue
Baltimore, MD 21209-3600

Richard T. Mulloy
DLA Piper LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297

Kathy J. Owen
DLA Piper LLP
1717 Main Street, Suite 4600
Dallas, TX 75201

George M. Haley
David R. Parkinson
Holme Roberts & Owen LLP
299 South Main Street, Suite 1800
Salt Lake City, UT 84111

Charles W. Douglas
Richard F. O'Malley, Jr.
Lisa A. Schneider
Neil H. Wyland
Todd L. Krause
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

Dan K. Webb
Raymond C. Perkins
Winston & Strawn
35 W. Wacker Drive
Chicago, IL 60601

**via U.S. Mail:**

David B. Thomas
Office of the General Counsel
Brigham Young University
A-350 ASB
Provo, UT 84602

/s/ Stacy A. Kamaya