IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, and DR. DANIEL L. SIMMONS,<br><br>Plaintiffs,<br><br>vs.<br><br>PFIZER, INC., et al.<br><br>Defendants. | MEMORANDUM DECISION AND ORDER OVERRULING WINSTON & STRAWN LLP'S OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO DISQUALIFY<br><br><br>Case No. 2:06-CV-890 TS BCW |

Before the Court is Winston & Strawn LLP's ("Winston") Objections to Magistrate Judge's Memorandum Decision and Order Granting Plaintiffs' Motion to Disqualify. Winston seeks review of Magistrate Judge Well's recent Memorandum Decision and Order[1] ("Order") disqualifying Winston from representing Defendant Pfizer.

---

[1] Docket No. 465.

1

## I. PROCEDURAL HISTORY

BYU filed its Motion to Disqualify Winston & Stawn LLP on April 1, 2010, asserting that Winston & Strawn should be disqualified because it violated Rule 1.7 of the Utah Rules of Professional Conduct ("Rule 1.7"). Following extensive briefing and a hearing on the matter, the Magistrate Judge found in favor of BYU and granted its Motion. The Magistrate Judge's decision has two central holdings: first, the Advance Patent Waiver found in the 2001 engagement letter entered into between BYU and Winston did not apply to this specific conflict—which thereby negated Winston's argument that BYU had previously waived this specific conflict therein; and second, Winston's violation of Rule 1.7 was sufficiently egregious to merit Winston's disqualification.

Winston objects to these two holdings. Winston asserts that the Magistrate Judge misconstrued the language of the Advance Patent Waiver and advanced a reading of the provision which is contrary to law because the reading is unreasonable and unanticipated by the contracting parties.[2] Moreover, Winston asserts that the Magistrate Judge's holding that Winston be disqualified due to a "technical" violation is clearly erroneous in light of the facts in evidence.[3]

BYU has not entered a formal response to Winston's objections—which the Court notes is not required of BYU under the pertinent local rule.[4] Instead, BYU has submitted a proposed

---

[2] *See* Docket No. 480, at i.

[3] *See id.*

[4] *See* DUCivR 72-3(b).

order and requests that the Court affirm the Magistrate Judge's ruling for the reasons expressed in the Magistrate Judge's decision.[5]

Although oral argument was requested by Winston, after reviewing the objections, the Court finds that argument is not necessary and therefore provides the following decision on the Objections.

## II. FACTUAL BACKGROUND

The Court will not repeat the Magistrate Judge's detailed rehearsal of the factual circumstances surrounding this matter,[6] but will instead only provide a general background. Winston, through its partner Mr. Gene Schaerr, has represented BYU since Mr. Schaerr joined Winston in February of 2005. Prior to joining Winston in 2005, Mr. Schaerr had represented BYU since 2001 at his previous firm in matters concerning certain legislative and regulatory proceedings relating to BYU's religious freedom.[7] When Mr. Schaerr joined Winston in 2005, Winston required BYU to sign an engagement letter before Winston would allow Mr. Schaerr to continue representation of BYU. The engagement letter contained a prospective conflict waiver, which states:

---

[5]In conjunction with its submission of the proposed order, BYU advances a reading of DUCivR 72-3(b) which suggests that the Court is *required* to deny the objections after the expiration of fourteen days. The Court disagrees. Instead, the Court reads the rule as merely providing the non-objecting party an opportunity to respond within ten days, and if that party so declines, inviting the party to then submit a proposed order after the expiration of fourteen days if the Court has not yet entered a ruling. The Court finds nothing in this rules to suggest that a default entry in favor of the non-moving party is required. Therefore, the Court will address the objections on the merits.

[6]*See* Docket No. 465, at 1-6.

[7]*Id.* at 2.

> Advance Patent Waiver: As you may know, universities frequently hold patents in the products and inventions developed at such universities. Winston & Strawn LLP currently represents multiple pharmaceutical and other companies with respect to patent and intellectual property matters (collectively, the "Other Clients"), including litigation (the "Patent Matters"). Winston & Strawn LLP is not currently representing any Other Clients in matters adverse to the University. Because of the scope of our patent practice, however, it is possible that Winston & Strawn LLP will be asked in the future to represent one or more Other Clients in matters, including litigation, adverse to the University. Therefore, as a condition to Winston & Strawn LLP's undertaking to represent you in the BYU Matters, you agree that this firm may continue to represent Other Clients in the Patent Matters, including litigation, directly adverse to the University and hereby waive any conflict of interest relating to such representation of Other Clients.[8]

Counsel for BYU signed the engagement letter on March 1, 2005.

Following BYU's consent, Winston—through Mr. Schaerr—represented BYU on a matter relating to the Higher Education Opportunity Act ("HEOA"). Winston's work on the HEOA matter concluded sometime in February 2009, with the final bill being sent to BYU on March 20, 2009.

BYU filed this case against Pfizer on October 18, 2006. Since the inception of the case, the law firm of Sidley Austin LLP has represented Pfizer. In January 2010, however, Winston was contacted by Pfizer to inquire whether Winston could represent Pfizer in the BYU matter. Upon investigating the matter, Mr. Tom Frederick of Winston's litigation department concluded that Winston could represent Pfizer because of the Advance Patent Waiver contained in BYU's March 2005 engagement letter. Shortly thereafter, Winston began representation of Pfizer.

BYU quickly moved to disqualify Winston based on the two parties prior attorney-client relationship, which motion the Magistrate Judge granted on August 24, 2010.

---

[8] *Id.* at 2-3.

## III. STANDARD OF REVIEW

28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure, permit a district court to review a Magistrate Judge's orders on nondispositive matters under a clearly erroneous or contrary to law standard.[9] The clearly erroneous standard applies to factual findings and requires an affirmation of the Magistrate Judge's decision unless "on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed."[10] The contrary to law standard, however, permits the district court to conduct a plenary review of the magistrate judge's purely legal determinations and may set aside an order if the wrong legal standard was applied.[11]

## IV. DISCUSSION

A.  THE ADVANCE PATENT WAIVER

Winston argues that the Magistrate Judge misconstrued the language of the Advance Patent Waiver. As contract interpretation is a question of law,[12] the Court will review the Magistrate Judge's findings under the contrary to law standard.

---

[9] 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); *Sprint Communications Co. L.P. v. Vonage Holdings Corp.*, 500 F.Supp.2d 1290, 1346 (D. Kan. 2007) (citing *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000)); *Smith v. MCI Telecommunications Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

[10] *Smith*, 137 F.R.D. at 27 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal quotations omitted)); *Sprint*, 500 F.Supp. 2d at 1346.

[11] *Williams v. Vail Resorts Development Co.*, 2003 WL 25768656, at *2 (D. Wyo. Nov. 14, 2003); *Sprint*, 500 F.Supp. 2d at 1346; *see also Computer Econ., Inc. v. Gartner Group, Inc.*, 50 F.Supp. 2d 980, 983 (S.D. Cal. 1999).

[12] *See Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008).

The Order holds that the Advance Patent Waiver does not apply to Pfizer. The Order limits the Advance Patent Waiver to apply only to Winston's clients who had open matters on the date the engagement letter was signed. Winston assails this interpretation as overly narrow and unreasonable. Instead, Winston asserts that the Advance Patent Waiver should cover all "existing clients" in matters relating to intellectual property and patents, including litigation.

As the Magistrate Judge correctly set forth, courts evaluating waivers should:

> look primarily to the language and construction of the waiver to determine its validity. For a consent to be interpreted as validly waiving the client's right to exclusive representation, '[l]anguage in a contract of release . . . would have to be positive, unequivocal and inconsistent with any other interpretation.' Where the terms of a waiver are not explicit, the client should not be held to the terms of the document.[13]

As set forth above, the Advance Patent Waiver provision provides:

> As you may know, universities frequently hold patents in the products and inventions developed at such universities. Winston & Strawn LLP currently represents multiple pharmaceutical and other companies with respect to patent and intellectual property matters (collectively, the "Other Clients"), including litigation (the "Patent Matters"). Winston & Strawn LLP is not currently representing any Other Clients in matters adverse to the University. Because of the scope of our patent practice, however, it is possible that Winston & Strawn LLP will be asked in the future to represent one or more Other Clients in matters, including litigation, adverse to the University. Therefore, as a condition to Winston & Strawn LLP's undertaking to represent you in the BYU Matters, you agree that this firm may continue to represent Other Clients in the Patent Matters, including litigation, directly adverse to the University and hereby waive any conflict of interest relating to such representation of Other Clients.[14]

---

[13] Docket No. 465, at 9 (internal citations omitted).

[14] *Id.* at 9-10.

The Magistrate Judge found that "Other Clients" was a term defined internally within the waiver provision itself to mean "companies that Winston currently represents 'with respect to patents and intellectual property matters.'"[15] Thus, the Magistrate Judge concluded, that the "waiver only applies to clients that Winston was representing with respect to patent and intellectual property matters as of the date of the agreement."[16]

Winston contends that the Magistrate Judge's definition is based on the fact that the parenthetical definition of the term "Other Clients" is found "after the entire phrase 'Winston & Strawn LLP currently represents multiple pharmaceutical and other companies with respect to patent and intellectual property matters' rather than the phrase "Winston & Strawn LLP currently represents multiple pharmaceutical and other companies."[17] The Court disagrees. Instead, it appears the rationale underlying the Magistrate Judge's Order is based upon the distinction between the broader status of being a client of a firm, and the more limited act of undertaking representation of a client. In defining the term "Other Clients," the waiver expressly limits the term to companies that Winston "currently represents." As used in the definitional phrase, "represents" is used as a verb, modified by the adverb "currently." Looking at the plain meaning of these two words, "represents" generally means to act in another's behalf or stead,[18] while

---

[15]*Id.* at 11 (quoting the Advance Patent Waiver).

[16]*Id.*

[17]Docket No. 480, at 1.

[18]*See, e.g.*, Merriam-Webster Dictionary 445 (Home and Office Ed. 1998).

7

"currently" means "occurring in or belonging to the present."[19] Thus, the plain language of the engagement letter limits the term "Other Clients" to companies the firm is, at the present, acting in their behalf or stead.

The Court finds the plain language to be clear and fully supports the Magistrate Judge's conclusion that "the waiver only applies to clients that Winston was representing with respect to patent and intellectual property matters as of the date of the agreement."[20] Despite Winston's expressions of intent to the contrary, the Court finds that to adopt Winston's reading would require the Court to ignore the plain language of the engagement letter and read the words "currently represents" entirely out of the definitional phrase. Consequently, the Court overrules Winston's objections as to the Magistrate Judge's definition of the term "Other Clients" and affirms the Magistrate Judge's finding that the Advance Patent Waiver was ineffective as to Pfizer because Winston was not "currently represent[ing]" Pfizer the day the engagement letter was signed.

B.  DISQUALIFICATION OF WINSTON

Winston further objects that the Magistrate Judge's disqualification of Winston as counsel for Pfizer was clearly erroneous. As set forth above, under the "clearly erroneous" standard, the Court must affirm the Magistrate Judge's ruling unless the Court is left with a "definite and firm conviction that a mistake has been committed."[21]

---

[19]*Id.* at 128.

[20]Docket No. 465, at 11.

[21]*Smith*, 137 F.R.D. at 27 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal quotations omitted)).

8

The Magistrate Judge correctly set forth the standard for disqualification:

> [W]hen considering a motion to disqualify[,] the Court must consider the facts of each particular case, the nature of any violations, and the impact of the violations on trial proceedings. Factors to consider include: (1) the egregiousness of the violation, (2) the presence or absence of prejudice to the other side, (3) whether and to what extent there has been a diminution of effectiveness of counsel, (4) hardship to the other side, and (5) the stage of trial proceedings.[22]

Winston's objections attack the Magistrate Judge's finding on each of these factors.[23] Having reviewed the Magistrate Judge's findings in light of the factual record, the Court finds no such clear error. The Magistrate Judge's findings are sufficiently supported in the factual record and Winston fails to demonstrate how the Magistrate Judge's findings are clearly erroneous in light of the facts presented. Therefore, the Court overrules Winston's objections as to the Magistrate Judge's disqualification of Winston.

## V. CONCLUSION

It is therefore,

ORDERED that Winston & Strawn LLP's Objections to Magistrate Judge's Memorandum Decision and Order Granting Plaintiff's Motion to Disqualify (Docket No. 480) is OVERRULED. It is further,

ORDERED that Defendant's Motion to Stay Disqualification Order (Docket No. 474) is DENIED as MOOT.

---

[22] Docket No. 465, at 14 (internal citations omitted).

[23] *See* Docket No. 480, at 4-6.

DATED September 29, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge