IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, a Utah Non-Profit Education Institution; and Dr. DANIEL L. SIMMONS, an individual , <br><br> Plaintiffs, <br> v. <br><br> PFIZER, INC., a Delaware corporation; G.D. SEARLE & COMPANY, a Delaware corporation; G.D. SEARLE LLC, a Delaware limited liability company; MONSANTO COMPANY, a Delaware corporation; and PHARMACIA CORPORATION, a Delaware corporation, <br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL DOCUMENTS SUBMITTED FOR *IN CAMERA* REVIEW <br><br> Case No. 2:06-cv-890 TS <br><br> Chief District Judge Ted Stewart <br><br> Magistrate Judge Brooke Wells |

Before the Court is Plaintiffs' Brigham Young University and Dr. Daniel L. Simmons Motion to Compel Production of Invention Disclosure Statements, Draft Patent Applications and Communications with New Monsanto.[1] On April 7, 2011, the Court heard argument concerning certain matters including issues surrounding Plaintiffs' motion. At the hearing Plaintiffs and Defendants (Pfizer, Inc.) each submitted documents they claim are privileged to the Court for *in camera* review. The parties also filed additional briefing regarding the issues surrounding these documents.[2] The Court has reviewed the documents submitted for *in camera* review, the parties' memoranda and relevant case law. Having done so, the Court now enters the following

---

[1] Docket no. 545.

[2] Docket nos. 589, 601 and 606.

order GRANTING IN PART Plaintiffs' motion to compel production of the documents submitted by Pfizer for *in camera* review.[3]

The Court finds it unnecessary to give a detailed background of the dispute between the parties as this has been set forth in prior orders. Suffice it to say, the parties have a disagreement concerning the creation of Celebrex and other Cox-2 drugs.

The instant dispute centers on the production of correspondence "exchanged between Pfizer and New Monsanto relating to document production."[4] Defendants argue Plaintiffs' request for these "Communications" should be denied for three reasons. First, the "Communications are neither relevant to this proceeding nor reasonably calculated to lead to the discovery of admissible evidence as they do not bear on any issue that is or may be relevant to claims asserted in this litigation."[5] Second, Defendants assert that the Communications "took place well beyond the Court Ordered discovery cut-off of May 8, 2001."[6] And, third, the Communications are protected from discovery "under the common interest doctrine."[7]

In addition to submitting the Communications for *in camera* review, Defendants also prepared a privilege log of the Communications to assist the Court in its review. The Court appreciates Defendants' efforts, but it is concerned by the fact that several entries under the description list "No document included."[8] Thus, it appears Defendants made a relevancy determination without allowing the Court to review certain documents in an *in camera* review setting requested by the parties. The Court disagrees with this approach. In an effort to ensure

---

[3] The Court notes that previously the parties resolved many issues within Plaintiffs' motion. This order only pertains to those documents submitted for *in camera* review by Defendants following the hearing held in April.

[4] Def.s' stmt in sup. *in camera* submission p. 2, docket no. 589.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *See e.g.,* nos. 1, 2 and 47.

full disclosure the Court **HEREBY ORDERS** Defendants to provide those missing documents to BYU within fifteen days from the date of this order if they fit within the confines of the order as outlined below. Or, provide them to the Court for *in camera* review within ten days from the date of this order. If they are not relevant, as Defendants allege, then the Court will not order them produced to Plaintiffs. The Court now turns to address each of Defendants' arguments regarding the other Communications that were submitted for *in camera* review.

    A. **Relevancy of the Communications**

Defendants first assert the Communications are not relevant. "While the scope of discovery is broad, it has ultimate and necessary boundaries."[9] According to Defendants, Plaintiffs' request for the Communications "is intended to disclose information pertaining only to Defendants' document collection and investigative efforts"[10] and not anything concerning the issues, claims and defenses in the lawsuit.

In contrast, Plaintiffs assert that the Communications may lead to discoverable evidence and that Plaintiffs cannot determine whether the Communications are relevant until they see them. Plaintiffs then cite to examples of other instances where Pfizer has allegedly failed to produce relevant information.

The Court does not agree *in toto* with either of the parties' arguments. Upon review of the documents the Court finds that some are relevant especially when viewed at this stage of the litigation where pursuant to rule 26(b)(1) of the Federal Rules of Civil Procedure, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

---

[9] *Id.* at p. 4.
[10] *Id.*

defense."[11] Further, the Court finds that many of the Communications may lead to relevant evidence, which may have yet to be produced in this case.

But, BYU's assertion that a party cannot determine relevance until they see documents is overbroad.[12] Such an argument could be made in each case before every Federal Court in the nation and when carried to its logical extension, would create an unworkable system where each party is required to produce millions of documents to the other side so they can determine relevance. Such "fishing expeditions" are not allowed by the rules and should not be undertaken in hopes of finding a "smoking gun."[13] The discovery system inherently requires the good faith efforts of all parties to make some determinations of relevance before producing discovery.

As set forth below the Court concludes that some of the Communications should be produced under the broad "relevancy standard" at this point in the case.[14]

### B. The May 8, 2001 Discovery Cut-Off

Previously, this Court granted Defendants' motion for a protective order regarding post-2001 documents.[15] The Court ordered that "neither party must produce non-damages related documents dated after May 8, 2001."[16] In the same order the Court created exceptions to this cut-off date including: "any relevant responsive documents that Defendants—or entities which

---

[11] Fed.R.Civ.P. 26(b)(1) (2011).

[12] *See e.g., Regan-Touchy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th Cir. 2008) (noting that "'the requirements of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery [to protect] 'a party or person from annoyance, embarrassment, [or] oppression . . . .'") ((quoting *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (quoting Fed.R.Civ.P. 26(b)(1), (c)(1))).

[13] *See Desai v. Panguitch Main Street, Inc.*, 2009 WL 2957959 *2 (D. Utah Sept. 9, 2009) ("Plaintiff may discover information that is relevant to his claim for employment discrimination; he may not, however, conduct a fishing expedition at Defendants' offices in the hopes that he will find the proverbial smoking gun.").

[14] *See e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Gohler v. Wood*, 162 F.R.D. 691, 695 (D.Utah 1995).

[15] Order dated June 23, 2010, docket no. 437.

[16] *Id.* at p. 11.

4

Defendants control—are withholding"[17]; items collected by Pfizer from its Chesterfield, Missouri facility; and pleadings, deposition transcripts, exhibits or other materials from other relevant litigation.

The Court finds that the Communications at issue here fall within one of these exceptions: "any relevant responsive documents that Defendants—or entities which Defendants control—are withholding" because some of the Communications concern the search for relevant documents that at one time may have been, perhaps even unintentionally, withheld or not produced.[18]

Accordingly, the Court disagrees with Defendants and does not find its May 8, 2001 cut-off date applicable to the Communications.

## C. Common Interest Doctrine

Finally, Defendants argue the Communications, which were exchanged primarily between Pfizer and New Monsanto, are protected under the common interest doctrine. As noted by Defendants, "the common interest doctrine operates to shield waiver of the attorney-client privilege when 'disclosure of confidential information is made to a third party who shares a community of interest with the represented party.'"[19]

Plaintiffs disagree, arguing that Pfizer has failed to meet its burden of demonstrating an identical interest between Pfizer and New Monsanto because: 1) the Court has already ruled that the "who, what, where and when questions are factual in nature and are to be answered"[20]; 2) Pfizer has failed to identify any express agreement with New Monsanto to jointly defend this

---

[17] *Id.*

[18] The Court is not finding that Defendants withheld the documents that are the subject of the Communications.

[19] Def.s' stmt in sup. *in camera* submission p. 5.

[20] Order dated July 21, 2009 p. 4, dkt no. 282.

case; 3) Pfizer has failed to submit sworn testimony and declarations describing the basis for its privilege; and 4) New Monsanto is not a party in this case because New Monsanto has separate counsel who has not appeared in this case and New Monsanto has not answered BYU's Complaint.

As a general rule, disclosure of work product confidences to third parties waives work product protection.[21] The common interest doctrine, however, "normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party."[22] "A community of interest exists where different persons or entities 'have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice.... The key consideration is that the nature of the interest *be identical, not similar* and be legal not solely commercial'"[23]

Here, although Pfizer need not make the heightened showing BYU advances,[24] the Court concludes that under these circumstances New Monsanto and Pfizer do not share a community of interest. The key consideration is that the nature of the interest must be identical, not similar. The fact that there is some overlap of a commercial interest concerning the creation of Cox-2 drugs does not establish a legal interest. New Monsanto is not a party to this case, the Communications are not "legal" in nature and there is no evidence of a "coordinated legal

---

[21] *See In re Sealed Case*, 29 F.3d 715, 719 (D.C.Cir.1994).

[22] *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc*., 136 F.3d 695, 705 (10th Cir.1998).

[23] *NL Indus. Inc. v. Commercial Union Ins. Co*., 144 F.R.D. 225, 230-31 (D.N.J.1992) (internal citations omitted) (emphasis added) (quoting *Duplan Corp . Deering Milliken Inc.*, 397 F.Supp. 1146, 1172 (S.D.S.C. 1974) (cited in *Frontier Refining, Inc*., 136 F.3d at 705)).

[24] *See e.g., White v. Graceland College Ctr.*, 586 F.Supp. 2d 1250, 1267-68 (D.Kan. 2008) (setting forth how the party asserting work product immunity or attorney-client privilege can meet the burden of establishing that they apply); *see also Bogosian v. Gulf Oil Corp*. 738 F.2d 587, 595-96 (3rd Cir. 1984) (stating that while extensive *in camera* examination of documents should not be undertaken by district courts, sometimes it is necessary for documents that fall within alleged work product protection).

strategy"[25] between New Monsanto and Pfizer. Further, New Monsanto has never been a party to this case, does not share counsel with Pfizer and does not appear to exercise any type of control over the proceedings in this action.[26]

Accordingly, the Court concludes the community of interest doctrine does not shield the Communications from being discoverable.

## ORDER

Based upon the foregoing the Court GRANTS Plaintiffs' MOTION IN PART and HEREBY ORDERS the following:

1. Defendants are to produce to BYU within 15 days from the date of this order the documents set forth in the privilege log as numbers 1, 2 and 47 if they fit within the confines of this order, or provide these documents to the Court within ten days from the entry of this order for *in camera* review.

2. Defendants are to produce within 15 days from the date of this order to Plaintiffs the remaining Communications numbers 3-46 and 48-81 as set forth in the privilege log except for the following numbers:

   - 25 because the Court finds this is irrelevant
   - 45 which are copies of FedEx labels and irrelevant
   - 73 and 74 which contain personal information that is irrelevant

---

[25] *Shamis v. Ambassador Factors Corp.*, 34 F.Supp.2d 879, 893 (S.D.N.Y. 1999).

[26] *See e.g.*, *North River Ins. Co. v. Columbia Casualty Co.*, 1995 WL 5792 *5 (S.D.N.Y.) (concluding the common interest doctrine did not apply because the parties were not represented by the same counsel, one party did not contribute to the other's legal expenses or exercise control over the litigation and there was no evidence of a coordinated legal strategy).

IT IS SO ORDERED dated this 23 June 2011.

_____
Brooke C. Wells
United States Magistrate Judge