IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, and DR. DANIEL L. SIMMONS,<br><br>      Plaintiff,<br>v.<br><br>PFIZER, INC., et al.,<br>      Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' REQUEST REGARDING BIOLOGICAL MATERIALS AND DEEMING MOOT DEFENDANTS' MOTION TO STRIKE<br><br>Case No. 2:06-cv-890 TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Brooke Wells |

   Before the Court is Plaintiffs' (Brigham Young University and Dr. Daniel Simmons) dispute regarding Defendants (Pfizer, Inc. et al.) production of biological materials.[1] BYU asserts that a "factual dispute remains concerning whether Plaintiffs were given access to all biological samples during the Lancaster biological material collection …."[2]

   Connected to BYU's arguments regarding the collection of biological samples is Defendants' Motion to Strike Plaintiffs' May 16, 2011 Supplemental Memorandum Regarding Biological Materials.[3] Pfizer asserts that BYU failed to follow this Court's order in submitting its Supplemental Memorandum Regarding Biological Materials and therefore the Court should strike the memorandum and not allow further collection of biological samples.

---

[1] *See* Joint Statement to the Court dated May 9, 2011, docket no. 620. BYU did not file a formal motion asking to reopen the sampling of biological materials. But, based upon the filings and BYU's statements during the discovery status conferences before the Court, the Court construes BYU's dispute regarding the production and sampling of biological materials as a discovery motion. *See* docket nos. 605, 620, 627 and 630.

[2] *Id.* at p. 4-5.

[3] Docket no. 634.

As set forth below, the Court finds that BYU failed to follow its order and has failed to make an adequate showing to convince the Court that further biological sampling is necessary. The Court therefore denies Plaintiffs' request and deems moot Defendants' Motion to Strike.[4]

BACKGROUND

In January 2007, BYU requested "biological materials and documentation relating to biological materials."[5] Pfizer originally claimed that the biological materials which were used to sequence Dr. Simmons' clones no longer existed and were discarded because they did not work. In March 2008, the Court ordered Pfizer to produce "all biological materials and reagents used in Defendants screen for COX II selective compounds"[6] and "complete documentation relating to the chain of custody or any other documents related to the loss of all biological materials and reagents provided to Defendants by Dr. Simmons."[7] Following this order, "Pfizer located approximately 300 discrete biological materials and produced a list to BYU."[8]

In June 2008, Defendants provided a Rule 30(b)(6) witness, Dr. Scott Hauser, to specifically address Plaintiffs' questions regarding Defendants' search for and production of biological materials. BYU did not contest Pfizer's list of biological materials following the deposition. Pfizer updated its list as additional samples were found during the course of discovery. In June 2010, Defendants notified Plaintiffs that relevant COX II materials, which were being stored at Pfizer's Chesterfield, facility would be boxed up and shipped to a third-party storage facility.[9] Pfizer provided BYU with the index generated to ship the materials and

---

[4] Docket no. 634.

[5] Mem. re: biological materials p. 3.

[6] Order dated March 26, 2008 p. 4, docket no. 106.

[7] *Id.*

[8] Mem. re: biological materials p. 3.

[9] *See* Sept. 28, 2010 letter from Ms. Owen to Mr. Anderson, attached as ex. 7 to Defs' mtn.

invited BYU "to inspect the biological materials at your convenience, as we have previously offered, if you would prefer to index [the biological] materials …."[10]

In early February 2011, BYU counsel and Dr. Simmons met with Drs. Craig Shimasaki and Brand Cassidy from DNA Solutions to review the samples BYU would collect. On February 8th and 9th, Drs. Shimasaki and Cassidy collected samples at Lancaster Laboratories in Lancaster, Pennsylvania, where Pfizer stored the biological materials collected for this litigation. Dave Thomas was present for BYU and DLA Piper attorney Michael Wigotsky and Lancaster Laboratories personnel were present on behalf of Pfizer. During the sampling a dispute arose regarding the labeling of boxes that contained the biological materials for testing. "[W]hile the description on the boxes generally matched the items on the lists provided by Pfizer, the vials within th[e] boxes contained multiple different types of biological materials with different descriptions which often didn't match."[11] BYU sought to sample all the materials while Pfizer initially sought to limit sampling to the individual vials within the boxes if the label matched with Pfizer's written description of the materials. The parties agreed to keep a running list of the disputed vials and set them aside for a later determination regarding sampling.[12]

Following additional discussion, Pfizer agreed to allow Plaintiffs' experts to take samples of all the biological materials they wished to sample including those materials not listed in the index. Pfizer's representatives also offered to stay as long as needed to complete any additional sampling. During the afternoon of February 9th Plaintiffs' experts indicated that they were close to running out of vials for sample-taking. Lancaster Laboratory personnel offered to provide

---

[10] *Id.*

[11] Mem. re: biological materials p. 5.

[12] Decl. of Michael Wigotsky ¶ 7.

additional materials to prepare more vials. Plaintiffs' experts responded that they would consider the offer and also indicated they did not want to miss their scheduled flight for later that day.[13]

The sampling continued until Plaintiffs' experts informed those present that they had obtained sufficient samples. Upon departure neither Plaintiffs' experts nor Mr. Thomas expressed any dissatisfaction with the access they had been provided to take samples-including sampling of those materials that were not in the original index. In their expert report Drs. Shimasaki and Cassidy lamented the delay in sample collecting due to winter weather problems and flight delays, but there was no mention of any problems with the adequacy of Pfizer's index or the access they were eventually given to the biological materials.

(i) <u>Plaintiffs' Position Following the Sampling</u>

Per the Court's request, on April 4, 2011 the parties filed a Joint Statement regarding all remaining factual discovery disputes.[14] In this statement Plaintiffs "expressed concerns that not all of the relevant COX-related biological materials were made available to Plaintiffs."[15] Plaintiffs contended that "their experts were not given access to samples that were stored in boxes with relevant samples at the Lancaster facility."[16]

On April 7, 2011 the Court held a hearing regarding those issues the parties identified in their Joint Statement including the sampling of biological materials at the Lancaster facility.[17] During the hearing BYU reasserted its position arguing that its experts were denied access to samples at the Lancaster facility.[18] BYU proposed that they be given the opportunity to return to

---

[13] *Id.* at ¶ 11.

[14] Docket no. 587.

[15] Joint Stmt. 4//4/11 p. 10.

[16] *Id.*

[17] Docket no. 605.

[18] *See* transcript of status conference April 7, 2011 p. 36-40.

the Lancaster facility and "look at all the samples that were there."[19]  Defendants disputed Plaintiffs' position arguing BYU was given access to all the biological materials.  The Court ordered Pfizer to file a declaration regarding BYU's access to the biological materials from a Pfizer employee or attorney present during the sampling.[20]  BYU agreed that a declaration would likely resolve the dispute.

Pfizer provided a declaration from Michael Wigotsky, the attorney who was present and representing Pfizer during the collection process.  In the declaration Mr. Wigotsky stated that BYU was given full access to the biological materials.

During the next status conference held before the Court on May 12, 2011 BYU admitted that the testing was done in a very hurried fashion because of a giant snowstorm in the East and because their experts "were in a hurry to catch a plane."[21]  Plaintiffs then requested an opportunity to go back to Lancaster and make sure they had everything.

After considering Plaintiffs' request, the Court asked Plaintiffs whether they could identify those samples they wished to test that were not already tested.  The Court specifically stated it was "unreasonable . . . to start th[e] process all over again."[22]  The Court then ordered Plaintiffs "to submit the list of those particular samples which you would intend to look at and why as to each of them."[23]

On May 16, 2011 Plaintiffs submitted a supplemental memorandum regarding biological materials.[24]  Plaintiffs did not submit a list of particular samples which they wanted to look at as

---

[19] *Id.* at 40.

[20] *See* order dated May 12, 2011 p. 4, docket no. 624.

[21] Transcript of May 12 hearing p. 9.

[22] *Id.* at p. 20.

[23] *Id.* at p. 29.

[24] Docket no. 627.

ordered by the Court. Rather, Plaintiffs for the first time assert that the descriptions of the samples listed in the index Pfizer gave them prior to their visit to the Lancaster facility are flawed. Shortly thereafter, Defendants filed their motion to strike.

## DISCUSSION

BYU asserts that the lists of biological materials Pfizer provided are incomplete. "BYU is concerned the biological materials which it requested in its 18 January 2011 letter may have left out relevant vials of materials which were contained within trays or containers it did not request in reliance on Pfizer's descriptions."[25] Plaintiffs request that Pfizer be ordered to provide a "more complete index of the relevant biological materials in its possession, to include descriptions of individual vials where they are not identical to the box in which they are maintained."[26] Additionally, BYU seeks an opportunity to conduct additional sampling once it has had the opportunity to review the new index.

In opposition, Pfizer assets that BYU once again is attempting to shift the burden "to require Pfizer to prove that it is not at fault for Plaintiffs' failure to collect the materials it now asserts it needs."[27] Further, Plaintiffs waited over two and a half years to begin sampling and did not follow this Court's order in seeking a new index, rather than submitting the specific samples BYU wanted and why such sampling was necessary.

The Court agrees with Pfizer in this instance. The Court specifically ordered BYU "to submit the list of those particular samples which you would intend to look at and why as to each of them."[28] BYU failed to make this required showing. Additionally, Plaintiffs' arguments

---

[25] Mem. re: biological materials p. 8.

[26] *Id.* at p. 11.

[27] Mtn. to strike p. iii.

[28] Transcript of May 12 hearing p 29.

6

concerning the problems with collecting the biological materials has changed. First, Plaintiffs asserted they were not given access to the materials. After an affidavit undermined this theory, Plaintiffs then asserted that weather conditions created problems with the sampling. Finally, Plaintiffs now assert that the index is flawed. The Court is not persuaded by these arguments. There is nothing before the Court indicating Plaintiffs were denied access to the samples. Any "hurriedness" and inadequate sampling is a result of BYU's own efforts and its experts desires to complete the sampling quickly to catch a plane. The record indicates BYU was given the opportunity to verify the index on repeated occasions long before the winter storm had an impact on the sampling. In short, Plaintiffs in this instance have no one to blame but themselves for their sampling efforts. So, there is no need to create a discovery dispute from thin air.

ORDER

As set forth above, the Court DENIES BYU's request for additional sampling. The Court finds BYU has failed to make the required showing to reopen the sampling process.

It is further ordered that the Court deems MOOT Defendants' Motion to Strike.

IT IS SO ORDERED.

DATED this 30 June 2011.

Brooke C. Wells
United States Magistrate Judge