IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, a Utah Non-Profit Education Institution; and Dr. DANIEL L. SIMMONS, an individual , <br><br> Plaintiffs, <br> v. <br><br> PFIZER, INC., a Delaware corporation; G.D. SEARLE & COMPANY, a Delaware corporation; G.D. SEARLE LLC, a Delaware limited liability company; MONSANTO COMPANY, a Delaware corporation; and PHARMACIA CORPORATION, a Delaware corporation, <br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO COMPEL DOCUMENTS SUBMITTED FOR *IN CAMERA* REVIEW <br><br> Case No. 2:06-cv-890 TS <br><br> Chief District Judge Ted Stewart <br><br> Magistrate Judge Brooke Wells |

Before the Court is Defendants' Pfizer, Inc. et al, Motion to Compel Production of Documents and Award of Attorney Fees.[1] This order is a companion order to the Court's prior order granting in part and denying in part Plaintiffs' Motion to Compel Documents Submitted for In Camera Review.[2] As noted in that order, on April 7, 2011, the Court heard argument concerning certain matters including issues surrounding Defendants' motion. At the hearing Defendants and Plaintiffs (Brigham Young University and Dr. Daniel Simmons) each submitted documents they claim are privileged to the Court for *in camera* review. In reference to the instant motion, the parties filed additional briefing,[3] including a supplemental response and

---

[1] Docket no. 522. After carefully reviewing the memorandum of the parties, the court determines that oral argument is unnecessary. *See* DUCivR 7-1(f) (2010).

[2] Docket no. 645.

[3] Docket nos. 590, 596, and 600.

reply,[4] regarding issues surrounding these documents. The Court has reviewed the documents submitted for *in camera* review, the parties' memoranda and relevant case law. Having done so, the Court now enters the following order GRANTING IN PART Defendants' Motion to Compel Production of Documents.[5] Additionally, based upon the facts in this dispute, the Court finds that BYU had legitimate reasons for listing the documents at issue on their privilege log. So, the Court DENIES Defendants' request for attorney fees.

The Court finds it unnecessary to give a detailed background of the dispute between the parties as this has been set forth in many prior orders. Suffice it to say, the parties have a disagreement concerning the creation of Celebrex and other Cox-2 drugs.

The instant dispute centers on the production of certain documents listed on BYU's privilege log.[6] At the outset, the Court addresses Pfizer's arguments regarding waiver that were raised in the supplemental memorandum. Approximately one week after Defendants submitted their Response to BYU's Memorandum Submitting Documents for *in camera* Review,[7] Plaintiffs submitted a declaration from BYU counsel Stephen Craig. This declaration addresses the maintenance and storage of documents, including the Hooper letters at issue in the instant motion, which are housed in the Harold B. Lee Library for preservation. The Craig Declaration also sets forth the efforts undertaken by Mr. Craig to search for responsive documents to Pfizer's discovery requests. Defendants argue that the declaration "conclusively demonstrates that the archived documents are not privileged."[8] Defendants assert that Plaintiffs' storage system does

---

[4] Docket nos. 607, 608, 610, 611, and 626.

[5] The Court notes that previously the parties resolved many issues within Defendants' motion. This order only pertains to those documents submitted for *in camera* review by Defendants following the hearing held in April and Defendants' request for attorney fees.

[6] *See* Pla.s' mem. submitting priv. docs. p. 2, docket no. 590.

[7] Docket no. 590.

[8] Def.s' sup. resp. p. 2.

not protect the documents in an adequate manner. Therefore, when communications are not intended to be confidential, the attorney-client privilege cannot be invoked to protect those communications.[9]

In contrast, BYU argues that the documents are restricted from public use and were not disclosed to third-parties. So there was no waiver of the attorney-client privilege.

The purpose of BYU's Archives-as the collection of documents is called-"is to preserve records that document the history of Brigham Young University."[10] Records included within the archives must meet three criteria: 1) the creator must deem the document as permanent; 2) the record must have value as "evidence for important functions of the university;"[11] and 3) the document must have informational value as it pertains to understanding the actions of BYU. Thus not all records generated at BYU will be included in the Archives.

Access to the records within the Archives is restricted. For example, "[r]ecords of high-level university administrators that are transferred to the University Archives are restricted from public use for a period of 50 years from the retirement of the administrator."[12] And, anyone requesting access to the records within the Archives must receive permission from at least two individuals—the University Archivist and "the incumbent of the office that generated the records."[13]

---

[9] *See* U.S. v. Ryans, 903 F.2d 731, 741 n.13 (10th Cir. 1990) ("The attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party."); *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter.").

[10] Craig Decl. ¶ 4.

[11] *Id.*

[12] *Id.*

[13] *Id.*

BYU's Archives appear to be similar to other institutional record keeping systems for important documents.  There is nothing before the Court indicating that BYU disclosed the records at issue in the Archives to a third-party and the evidence indicates that BYU treats the documents within the Archives as confidential.  The Court, therefore, agrees with BYU's position.  BYU has not waived any privilege by storing documents within the Archives.

The Court now turns to the parties' remaining arguments and to an analysis of the documents themselves.

As set forth by the Tenth Circuit in *Barclaysamerican Corp. v. Kane*,[14] "[t]he party seeking to assert the attorney-client privilege or the work product doctrine as a bar to discovery has the burden of establishing either or both is applicable."[15]  BYU argues the documents are privileged because they were generated as part of BYU's legal investigation.  According to BYU, the General Counsel's office led the investigation, "but other BYU employees and administrators were involved."[16]  In support of its position BYU cites to *Santrade, Ltd. v. General Elec. Co*,[17] and *Williams v. Sprint/United Mgt. Co.*[18]

*Santrade* involved a patent infringement action where the defendant moved for an order compelling the plaintiffs to produce documents withheld from discovery on the basis of the attorney-client privilege.  Similar to the arguments made by Pfizer here, the defendant in *Santrade* argued that certain documents were not protected because the plaintiff "failed to show

---

[14] 746 F.2d 653 (10th Cir. 1984).

[15] *Id.* at 657; *see also In re Grand Jury Proceedings (Dorokee Co.)*, 697 F.2d 277, 279 (10th Cir. 1983) ("The burden of establishing the applicability of a privilege rests on the party seeking to assert it."); *U.S. v. Bump*, 605 F.2d 548, 551 (10th Cir. 1979) (same).

[16] Pla.s' mem. submitting priv. docs. p. 4.

[17] 150 F.R.D. 539 (E.D.N.C. 1993).

[18] 238 F.R.D. 633 (D.Kan. 2006).

that the author, addressee, or copy recipient of the documents was a lawyer."[19] The court rejected the defendant's arguments and noted that the Supreme Court in *Upjohn Co. v. United States*[20] found that the "attorney-client privilege may exist in the corporate setting."[21] The *Santrade* court concluded that:

> A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds. First, in instances where the client is a corporation, documents subject to the privilege may be transmitted between non-attorneys to relay information requested by attorneys. Second, documents subject to the privilege may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately.[22]

Thus the attorney client "'privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'"[23] And, the "privilege includes communications involving corporate officers and agents who possess the information requested by the attorney or who will act on the legal advice."[24]

In *Williams*[25] the Federal District Court in Kansas dealt with a similar issue. The plaintiffs sued their former employer arguing that age was a determining factor in the employer's decision to terminate them. The plaintiffs sought to obtain documents that were part of an "adverse impact analysis." These documents were spreadsheets that analyzed various statistical data such as gender, race, and age of employees targeted for layoff. The plaintiffs argued that these documents were never sent to counsel, rather, they were exchanged exclusively among

---

[19] 150 F.R.D. at 545.

[20] 449 U.S. 383 (1981).

[21] 150 F.R.D. at 545.

[22] *Id.* (citing *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 202-03 (E.D.N.Y. 1988).

[23] *Id.* (quoting *Upjohn*, 449 U.S. at 390).

[24] *Id.*

[25] 238 F.R.D. 633.

5

human resource personnel so there was no attorney-client privilege protecting their discovery. The court rejected this argument stating that the "essential elements of the privilege . . . do not require an attorney to have either authored or received the document at issue in order to maintain the privilege."[26] The *Williams* court then noted the standard a party must meet when attempting to protect corporate documents under the attorney-client privilege: "A party may successfully demonstrate applicability of the privilege to written communication between corporate management employees by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice."[27]

Finally, the *Williams* court cited to a number of cases, including one from this court,[28] that recognize "the attorney-client privilege extends to communications made within a corporation if those communications are made for the purpose of securing legal advice."[29]

Based upon the vast amount of case law, including a case from this Court and a sister court, the Court is persuaded by BYU's general argument that documents may be protected if they were created as part of a legal investigation. This includes documents where neither the creators, senders, nor the recipients are lawyers. In turn, the court rejects Pfizer's argument that "no applicable attorney work product [or attorney-client] protection . . . can attach to a communication between non-lawyers…."[30] But, the protection to corporate documents is not without exception. As noted by the *Santrade* court, documents are not protected if they relate to

---

[26] *Id.* at 638.

[27] *Id.*

[28] *Adams v. Gateway, Inc.*, 2003 WL 23787856 at *11 (D.Utah Dec. 30, 2003).

[29] *Id.   See In re Rivastigmine Patent Lit.*, 237 F.R.D. 69, 80 (S.D.N.Y. 2006); *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D.Pa. 2005) (citing *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539; *Valve Corp. v. Sierra Entertainment Inc.*, 2004 WL 3780346, at *2 (W.D.Wash. Dec. 6, 2004); *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 514 (S.D.Cal.2003).

[30] Def.s' response p. 2.

business agreements with unrelated third parties, or general business or technical matters.[31]  And, as Magistrate Judge Nuffer concluded in *Adams v. Gateway*,[32] corporate documents not created for the purpose of obtaining legal advice are not protected by the privilege.  With these principles in mind the court now turns to the documents themselves.

As noted by Pfizer, Plaintiffs withhold two general categories of documents asserting that they are protected.  These categories are (1) documents prepared by Dr. Simmons or other BYU non-lawyer personnel that were sent to other non-lawyers; and (2) communications between BYU and representatives of The Church of Jesus Christ of Latter Day Saints, a non-party to this litigation and a third party that exerts control over BYU which is often referred to as a "church owned school."

A. **Documents Prepared by Non-lawyer Personnel**

1. Hooper Letters

The Hooper letters are letters written by Dr. Simmons to Dr. Gary Hooper who was the Associate Academic Vice-President at BYU.  The letters are essentially the same as they are rough drafts of a letter eventually sent to Dr. Hooper.  BYU asserts that they are protected because they were generated as part of the legal investigation.  As set forth above documents prepared by non-lawyers can be protected from discovery by a claim of privilege.  But, after reviewing the letters the Court finds they are discoverable in this instance.  The letters relate to general business matters such as the state of funding for Dr. Simmons' lab.[33]  The letter from Dr. Simmons to Professor Earl Woolly, the Chairman of the Chemistry Department, is also

---

[31] *See Santrade*, 150 F.R.D. at 544.

[32] 2003 WL 23787856 at *8.

[33] *See Santrade*, 150 F.R.D. at 544.

discoverable because it was not prepared in anticipation of litigation.[34] Rather, it is in essence a business proposal. As such, the Hooper letters are ordered disclosed.

2. Email to Dr. Simmons from Tammy Gustin

Tammy Gustin is a paralegal with the BYU General Counsel's office. The email sent from her to Dr. Simmons is factual in nature and contains information and instructions for Dr. Simmons so he can participate in a conference call. This information is not protected.

The copy of the email given to the Court also contains handwritten notes by Dr. Simmons concerning the litigation. These notes fit within the protections outlined above for documents created in the corporate environment during an investigation or during the process of litigation. Therefore, BYU is ordered to produce a redacted version of this email that contains none of the written notes located either above or below the email.

3. Dr. Woolley's June 4, 2007 Memo to Dr. Simmons

The Court agrees with BYU's argument that the memo reflects part of BYU's litigation strategy. This memo is protected by privilege and need not be produced.

4. Email between Dr. Simmons and Sir John Vane

BYU already produced a redacted version of this email to Pfizer that omits certain items dealing with COX-3 related research. The Court finds this is sufficient. The omitted information is irrelevant to the instant litigation[35] and contains corporate information that is properly deemed confidential. BYU need not produce the entire email.

5. Email from Lynn Astle to Earl Woolley

---

[34] *See Adams*, 2003 WL 23787856 at *8.

[35] The Court notes that although relevancy is a different consideration than assertions of privilege, it is nonetheless still a barrier to discovering information under the Federal Rules. *See* Fed. R. Civ. P. 26.

As noted by BYU, this email concerns an analysis of COX-3 licensing negotiations. Like the redacted portions of the email between Dr. Simmons and Sir John Vane, it concerns information that is confidential and irrelevant. As such, it is protected and is ordered not produced.

6. Drafts of Dr. Simmons May 10, 1992 Letter to Dr. Needleman

These letters are drafts of a letter written by Dr. Simmons to Dr. Needleman and in large part address concerns raised by Dr. Needleman. The drafts also contain handwritten notes that the Court finds do fit within the protections outlined above as they memorialize legal advice from BYU's General Counsel's office obtained by Dr. Simmons concerning the letters. The drafts of the letters themselves, however, do not contain legal advice and they were not prepared in anticipation of litigation. Therefore BYU is ordered to produce redacted versions of these letters omitting all handwritten notes except for the editorial notes found on the first page suggesting a change to the date and on the second page suggesting a change and omitting the phrase "whomever I want."

7. Dr. Simmons' December 14, 1992 Letter to Carol Hardman

This letter concerns a potential agreement between Abbott Laboratories and BYU. The Court agrees with BYU that it reflects legal advice given to Dr. Simmons concerning the potential agreement and therefore it is ordered not produced.

8. Dr. Simmons' April 15, 1999 Memorandum

These documents were prepared by Dr. Simmons and the Court finds they are protected by the attorney-client privilege as they were prepared to help BYU's attorneys give sound legal advice.[36] BYU need not produce them.

---

[36] *See Santrade*, 150 F.R.D. at 545 (quoting *Upjohn*, 449 U.S. at 390).

### B. Communications Between BYU and The Church of Jesus Christ of Latter Day Saints

This series of documents are communications between BYU, its representatives, and representatives of The Church of Jesus Christ of Latter Day Saints (LDS Church). Many of them are board minutes from meetings of the LDS Church where matters concerning BYU were discussed. Pfizer asserts that the disclosure of privileged information to third parties terminates any privilege.[37] Therefore since the LDS Church is a third party, any privilege BYU may have had in the documents is lost. The Court disagrees.

The relationship between the LDS Church and BYU is not the third party relationship found in the case law where privilege is lost. Rather, the LDS Church, although a separate corporate entity, is essentially a parent corporate entity that dictates in large part BYU's policies and actions. The Court concludes that documents shared between corporate entities that are closely related, as is the case here, are protected by the attorney-client privilege just like documents that are protected within a single corporation. The same principles set forth by many courts, including the Supreme Court in *Upjohn*, governing the discoverability of documents in a single corporation apply equally to closely related corporate entities. If it were otherwise, much of the modern day corporate structure and governance would be undermined by the threat of having to disclose corporate secrets and confidential information. BYU need not therefore produce any of these documents because they are protected.

---

[37] *See* U.S. v. Ryans, 903 F.2d 731, 741 n.13 (10th Cir. 1990) ("The attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party."); *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter.").

## ORDER

Based upon the foregoing the Court GRANTS Defendants' MOTION IN PART and HEREBY ORDERS BYU to produce those documents to Pfizer as set forth above within thirty days from the date of this order.

IT IS SO ORDERED dated this 12 July 2011.

*Brooke C. Wells*
Brooke C. Wells
United States Magistrate Judge