IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, a Utah Non-Profit Education Institution;  DR. DANIEL L. SIMMONS, an individual,<br><br>Plaintiffs,<br>v.<br><br>PPFIZER, INC., a Delaware Corporation, G.D. SEARLE & COMPANY, a Delaware Corporation, G.D. SEARLE LLC, a Delaware Limited Liability Company, MONSANTO COMPANY, a Delaware Corporation, and PHARMACIA CORPORATION, a Delaware Corporation,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PERMISSION TO PROVIDE CERTAIN DOCUMENTS LABELED AS CONFIDENTIAL UNDER THE PROTECTIVE ORDER<br><br>Case No. 2:06-cv-890 TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Brooke Wells |

Before the Court is Plaintiffs Brigham Young University and Dr. Daniel Simmons (collectively BYU) Motion For Permission to Provide Certain Documents Labeled as Confidential Under the Protective Order.[1] On February 28, 2012 the matter came before the Court in an expedited manner for oral argument.  BYU was represented by James Jardine, Mark Bettilyon and Dave Thomas.  Defendants Pfizer, Inc. et al. (collectively Pfizer) were represented by Brent Hatch and Phillip Russell.  As set forth below, the Court finds BYU has failed to demonstrate good cause to modify the protective order.  As such, the Court DENIES BYU's motion.

---

[1] Docket no. 855.

## BACKGROUND

Plaintiffs move this Court for permission to provide certain documents that Pfizer has labeled as confidential or highly confidential to Teva Pharmaceuticals, a third-party who is not involved in this litigation. These documents include "copies of 22 motions, including responses, accompanying exhibits, and orders resolving the same, along with the expert reports exchanged in this case"[2] (Designated Documents). Because the Designated Documents are labeled as confidential or highly confidential, BYU is prohibited from sharing them with Teva under the terms of the blanket Protective Order entered into by BYU and Pfizer.

Teva is a generic drug manufacturer and a competitor with Pfizer. Teva was previously involved in COX-2 litigation with Pfizer, but did not prevail on its claims at trial or on appeal.[3] Teva learned about the instant litigation involving BYU's co-ownership claims of various COX-2 related patents and seeks to "review the Designated Documents as part of its due diligence in deciding whether to enter into an option agreement with BYU, pending the outcome of the inventorship claims in this litigation."[4] To this end, Teva contacted BYU and expressed an interest in obtaining a license from BYU to utilize the co-inverntorship rights, if they are eventually obtained in this suit. "Teva has also expressed a willingness to make a substantial upfront payment to BYU that is not dependent upon the outcome of the litigation."[5] But, before doing so, Teva would like to review the Designated Documents.

Thus, the question before the Court is whether it should amend the stipulated, blanket protective order to allow the disclosure of protected confidential documents so that a party can

---

[2] Mem. in supp. p. 1.

[3] *See Pfizer Inc. v. Teva Pharms. USA, Inc.*, 482 F.Supp.2d 390 (D.N.J. 2007); *Pfizer, Inc. v. Teva Pharms. USA, Inc.* 86 U.S.P.Q.2d 1001 (C.A.Fed. 2008).

[4] Mem. in supp. p. 1.

[5] *Id.* at 2.

enter into a business transaction? This is not the more common question that has come before courts concerning whether or not confidential documents can be used in another court for separate litigation.[6] Or, even the rare question concerning the establishment of a library to house "pleadings, discovery material, rulings of the court, briefs, requested instructions, the entire transcript, and all exhibits [from trial]"[7] that has arisen previously. Rather, the instant matter comes down to the desire of one party to share confidential documents with a third-party, so that it can receive a "substantial upfront payment" and enter into a licensing agreement with that third-party. This precise issue has not been addressed by the Tenth Circuit. And, as represented by counsel for BYU during oral argument, there is no case allowing it, but there has been no case disallowing it either.[8]

## DISCUSSION

Courts have the inherent power to modify protective orders, including protective orders arising from a stipulation by the parties.[9] The Protective Order in this case provides a procedure for modification. Paragraph 25 of the Protective Order states:

> Nothing in this Protective Order shall prejudice the right of any party, or any third party, to seek relief form the Court, upon good cause shown, from any of the restrictions provided above or to impose additional restriction on the disclosure of any information or material.[10]

---

[6] *See e.g., Wilk v. American Medical Ass'n*, 635 F.2d 1295 (7th Cir. 1980); *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470 (9th Cir. 1992); *United Nuclear Corp v. Cranford Ins. Co.*, 905 F.2d 1424 (10th Cir. 1990); *SmithKline Beecham Corp. v. Synthon Pharmaceusticals LTD.*, 210 F.R.D. 163 (M.D.N.C. 2002); *Jochims v. Isuzu Motors, Ltd.*, 151 F.R.D. 338 (S.D.Iowa 1993); *Grundberg v. Upjohn Co.*, 140 F.R.D. 459 (D.Utah 1991).

[7] *Wyeth Lab. v. United States District Court*, 851 F.2d 321, 323 (10th Cir. 1988).

[8] *See* Tr. p. 41 (Tr. represents the transcript of proceedings held on Plaintiffs' motion before the Court on February 28, 2012); *see also*, docket no. 883.

[9] *See United Nuclear*, 905 F.2d at 1427, *cert. denied sub nom, American Special Risk Ins. Co. v. Rohm & Haas Co.*, 498 U.S. 1073; *Jochims* , 148 F.R.D. at 630 (collecting cases), *modified by*, 151 F.R.D. 338 (S.D.Iowa 1993).

[10] Protective Order p. 18, docket no. 43.

Courts have applied a number of factors in deciding whether to modify a protective order. Such factors include: "the reason and purpose for a modification, whether a party has alternative means available to acquire the information, the type of protective order which is at issue, and the type of materials or documents which are sought."[11]

The party seeking to modify a protective order bears the burden of showing good cause for the modification.[12] Some courts require a showing of a compelling need or extraordinary circumstance.[13] The Tenth Circuit, however, requires the showing of a reasonable need.[14] Courts have found the reasonable need showing met when a party needs discovery from another litigation to avoid the efforts of duplicative discovery.[15] The efficiency considerations of "saving time and effort in the collateral case by avoiding duplicative discovery"[16] are to be balanced against the countervailing current that is created by modifying a protective order. Allowing modification of protective orders for the benefit of third-parties undermines the effectiveness of that order—and conceivably other orders using similar language—in creating a more efficient discovery process.[17]

---

[11] *SmithKline*, 210 F.R.D. at 166.

[12] *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir.2001); *Jochims*, 151 F.R.D. at 342; *Grundberg*, 140 F.R.D. at 465-66.

[13] *S.E.C.*, 273 F.3d at 229; *compare, with Beckman Industries,* 966 F.2d at 476 (adopting a reasonable need standard).

[14] *United Nuclear*, 905 F.2d at 1426 (adopting reasonable need test but noting wide variety of tests that have been employed).

[15] *Beckman Industries*, 966 F.2d 470; *United Nuclear*, 905 F.2d 1424; *Jochims*, 148 F.R.D. 624, *as modified*, 151 F.R.D. 338.

[16] *United Nuclear*, 905 F.2d at 1428.

[17] *See id.*

As set forth by the Tenth Circuit, a court should refrain from issuing discovery orders applicable to collateral litigation.[18] Otherwise, a court may be involved in litigating issues not before it creating unnecessary additional burdens on both the court and the parties.[19]

Modifying protective orders can also have the negative effect of creating distrust for such orders. Stipulated protective orders have become standard practice in complex cases and are valuable in creating a reliable dependable discovery process.[20] Such orders allow the parties to make full disclosure in discovery without fear of unauthorized access to sensitive information and they reduce the expense and delay of endless discovery disputes.[21] "Reliance on protective orders and the diligence of counsel in observing them is fundamental to litigation between competitors."[22] In short, they help promote the overriding goal of the Federal Rules of Civil Procedure to "secure the just, speedy, and inexpensive determination of every action and proceeding."[23]

In addition the type of protective order sought to be modified has an impact on the decision to modify. Great care must be exercised before modifying a protective order entered pursuant to Rule 26(c).[24] In contrast, a blanket protective order, like the one in the instant dispute, is a Rule 29 stipulation between the parties and is not treated with as much deference.[25] Therefore, a party's "claimed reliance on such orders to protect confidentiality is, consequently,

---

[18] *United Nuclear*, 905 F.2d at 1428, *Grundberg*, 140 F.R.D. at 463.

[19] *Longman v. Food Lion, Inc.*, 186 F.R.D. 331, 334 (M.D.N.C.1999) (modification for ulterior purpose); *Jochims*, 151 F.R.D. at 343 (allowing modification but setting cut-off date for continued litigation).

[20] *See Manual for Complex Litigation*, *Third*, § 21.43 (1995)

[21] *United Nuclear*, 905 F.2d at 1427.

[22] *Systemic Formulas, Inc. v. Kim*, 2011 WL 9509 *2 (D.Utah Jan. 3, 2011).

[23] Fed. R. Civ. P. 1 (2011).

[24] Fed. R. Civ. P. 26(c) (providing a procedure for parties to seek a protective order from the court that prevents or limits discovery).

[25] *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 121 F.R.D. 264, 268 (M.D.N.C.1988).

less than if the party had to make an actual or particular showing of confidentiality in order to obtain the protective order."[26]

The type of materials or documents sought also impacts a court's decision regarding modification. Courts have drawn a distinction between documents submitted under seal during discovery and those submitted under seal that are then used in court proceedings. The presumption in favor of public access to materials submitted as evidence does not "apply to materials properly submitted to the court under seal."[27] When these documents are used in court proceedings, however, and become what is termed "judicial documents," then any presumptions in favor of confidentiality must be balanced against the presumption in favor of public access. In essence a line can be drawn between these two categories where a parties' right of access "does not extend to information collected through discovery which is not a matter of public record."[28]

The exact timing of when a sealed document becomes a judicial document is not entirely clear in this circuit. If such a document is used during a public trial, then it would be safe to presume that the document is a judicial document. On the other hand, however, the mere fact that the court has entered a protective order does not convert all documents produced at discovery into judicial documents.[29] In between these two extremes remain questions as to exactly when, or what is necessary to change sealed document into a judicial document. For example, does attaching a document to a motion to compel or to a summary judgment motion make a document a judicial document even if the court does not cite to it in a decision?

---

[26] *SmithKline*, 210 F.R.D. at 167; *see also Beckman Industries*, 966 F.2d at 476.

[27] *U.S. v. Corbitt*, 879 F.2d 224, 228 (&th Cir. 1989); *see also Grundberg*, 140 F.R.D. at 465-66.

[28] *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355 (11th Cir. 1987).

[29] *S.E.C.*, 273 F.3d at 233.

The Second Circuit recently held that contested documents "by virtue of having been submitted to the court as supporting material in connection with a motion for summary judgment"[30] are judicial documents under the common law and there is also a "qualified First Amendment right of access to documents submitted to the court in connection with a summary judgment motion."[31] The weight of authority in other circuits supports the Second Circuit's holdings.[32]

Yet, even with such presumptions of public access, judicial documents may still be kept under seal if there are weightier countervailing factors in the common law or "higher values" in the First Amendment framework.[33] Thus, even with judicial documents, a court must "balance the confidentiality concerns of law enforcement, the private interests of innocent third-parties, and the parties themselves."[34]

With these guiding principles in mind the Court now turns to the matter at hand—can a party modify a protective order to release information to a third-party to enter into a business transaction?

---

[30] *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2nd Cir. 2006).

[31] *Id.* at 124.

[32] *See FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir. 1987) (stating "relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies"); *Rushford v. New Yorker Magazine, INc.*, 846 F.2d 249, 252-53 (4th Cir. 1988) (concluding that a presumption of access attaches to "documents filed in connection with a summary judgment motion in a civil case."); *San Jose Mercury News, Inc. v. U.S. District Court*, 187 F.3d 1096, 1102 (9th Cir. 1999) ("the unbroken string of authorities ... leaves little doubt" that "the federal common law right of public access extends to materials submitted in connection with motions for summary judgment in civil cases prior to judgment"); *In re Agent Orange Product Liability Litig.*, 98 F.R.D. 539, 545 (E.D.N.Y. 1983) ("Clearly, then, documents attached to and referred to in the parties' papers on the summary judgment motions are part of the court record and are entitled to the presumption of public access.").

[33] *Lugosch*, 435 F.3d at 124.

[34] *SmithKline*, 210 F.R.D. at 167 (citing to *S.E.C.*, 273 F.3d at 232).

### A. BYU Fails to Show Good Cause

The Protective Order here is a blanket stipulated protective order that does allow for modification upon a showing of good cause. The party seeking to modify a protective order bears the burden of showing good cause for the modification.[35] BYU only need make a showing of a reasonable need.[36] Because this is a blanket stipulated protective order there is an increased preference for modification versus a protective order obtained under Rule 26(c). But, BYU's stated purpose for modification weighs against modifying even the blanket stipulated protective order in this case.

Here BYU seeks to disclose Pfizer's confidential materials to Teva, a competitor, who has agreed to make a substantial upfront payment to BYU.[37] Teva also wishes to perform due diligence on the Designated Documents to decide whether to enter into an option agreement with BYU to license its co-ownership claims of various COX-2 related patents. Based upon BYU's representations, it is possible that Teva could review the Designated Documents and then still decide to not enter into the option agreement. Such a "sneak-peak" into a competitor's confidential information could be harmful to Pfizer. Many of the Designated Documents were previously disclosed to Teva in its prior litigation with Pfizer, but the Court is still concerned about the type of modification BYU seeks in this case. This is not the typical case where efficiency considerations weigh in favor of modification. The stated benefit in this type of

---

[35] *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir.2001); *Jochims*, 151 F.R.D. at 342; *Grundberg*, 140 F.R.D. at 465-66.

[36] *United Nuclear*, 905 F.2d at 1426 (adopting reasonable need test but noting wide variety of tests that have been employed).

[37] During oral argument counsel for Pfizer asserted that such a payment was champerty and unlawful under Utah law. Black's Law Dictionary defines champerty as "a bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds; it is one type of "maintenance," the more general term which refers to maintaining, supporting, or promoting another person's litigation." Black's Law Dict. 6d p. 231. The substantial upfront payment that BYU represents would help with the expenses of this litigation might appear to fall within a type of maintenance. The Court, however, finds it unnecessary to address this issue.

modification is a large upfront payment to a party with the possibility of a lucrative license agreement coming at the expense of disclosing another party's confidential information.

In addition, the precedent this type of modification would create is troublesome to the Court. Stipulated protective orders, such as the one in this case, have become a valuable tool in helping resolve disputes in a timely manner. Allowing a modification for a business purpose at the expense of one's adversary would likely create distrust of such orders and an increased reluctance to provide confidential discovery in a forthright manner. This in turn would lead to additional disputes before courts that would place heavier burdens on already limited court resources. Such a modification could also open the floodgates to requests from other business entities such as institutional investors, hedge funds and private equity firms seeking information that they could use to their advantage. It is no secret that court decisions often impact the trading prices of stocks, and gaining any insight into how a court may rule by reviewing confidential materials before they become part of the public record would undermine the principles upon which the securities markets are based.

For these reasons, BYU's purpose for seeking modification weighs against modifying the protective order.

Next, BYU asserts that the type of documents requested here are judicial documents so there is a strong presumption in favor of access. In support BYU cites to *Lugosch* where the court held that documents attached to summary judgment are judicial documents under the common law and have a qualified First Amendment right of access.[38] The Court agrees with the principles set forth in *Lugosch* but finds they are not directly applicable to the current context. *Lugosch* and the cases supporting it are based upon both common law and First Amendment

---

[38] *Lugosch*, 435 F.3d 110, 123 (2nd Cir. 2006).

rights to access information submitted under seal. Here, however, the purpose for modification is not for a more general public benefit like the requests brought by newspapers, but for a specific business purpose. Such a purpose does not create a compelling reason for disclosure and acts as a countervailing factor weighing against disclosure. The *Lugosch* court specifically noted that notwithstanding the "presumption of access under both the common law and First Amendment" there are times when it is appropriate to keep documents under seal. In short, the Court finds this case distinguishable from *Lugosch* because it does not involve the same type of First Amendment and common law access concerns, and even if it did, a countervailing factor of disclosure of confidential documents for a business purpose weighs against modifying the protective order. Thus, the Court finds it unnecessary to determine whether the Designated Documents are judicial documents as of the date of this decision, because even if the Court construes them as such, any presumption of public access is outweighed by countervailing factors.

Finally, the Court notes that in its papers and during oral argument BYU sought to modify its initial requests seeking now only to share confidential information that was "less harmful" to Pfizer. BYU is commended for its efforts. But, such efforts do not outweigh the potential pitfalls of modifying the Protective Order as set forth by the Court previously.

In summation, after weighing the factors before the Court, the Court finds BYU has failed to show good cause to modify the protective order. Based upon this finding, the Court finds it unnecessary to engage in a detailed analysis about the harm Pfizer would suffer from such a disclosure.[39]

---

[39] The Court notes that the stipulated Protective Order sets forth a presumption of harm but it appears to only apply to unauthorized disclosures. It states "The parties agree that the producing party will suffer irreparable harm from the unauthorized disclosure or use of its PROTECTED INFORMATION."

**ORDER**

For the reasons set forth above, the Court DENIES Plaintiffs' Motion For Permission to Provide Certain Documents Labeled as Confidential Under the Protective Order.[40]

DATED this 9 March 2012.

_Brooke C. Wells_
Brooke C. Wells
United States Magistrate Judge

---

[40] Docket no. 855.