IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, and DR. DANIEL L. SIMMONS, <br><br> Plaintiffs, <br><br><br><br> vs. <br><br><br><br> PFIZER, INC., et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 6 <br><br><br><br><br><br> Case No. 2:06-CV-890 TS |

This matter is before the Court on Pfizer's Motion for Partial Summary Judgment on Plaintiffs' Claim that Defendants Have Misappropriated "Project" and "Compilation" Trade Secrets (Count VIII of the First Amended Complaint).[1]

## I.  BACKGROUND

The facts of this case are fully set out in the Court's Order dated March 13, 2012,[2] and need not be recited here.

---

[1]Docket No. 736.

[2]Docket No. 896.

## II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine

issue of material fact and it is entitled to judgment as a matter of law.[3]  The party seeking

summary judgment bears the initial burden of demonstrating an absence of a genuine issue of

material fact.[4]  "Once the moving party has properly supported its motion for summary judgment,

the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts

showing that there is a genuine issue for trial."[5]  "An issue is genuine 'if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party.'"[6]

## III.  DISCUSSION

BYU has alleged that Pfizer misappropriated BYU's "project" and "compilation" trade

secrets from BYU.  Pfizer contends that BYU's trade secret claims fail for four reasons: (1) BYU

has failed to identify what these trade secrets are with the requisite particularity; (2) BYU has not

alleged that each element of the trade secret was misappropriated as is required; (3) BYU did not

make reasonable efforts to maintain secrecy; and (4) Pfizer obtained a license to the disputed

material through paragraph 3.2 of the Research Agreement, which gives Pfizer a license to any

project output that is not patented.  In its response, BYU does not differentiate between a project

and a compilation trade secret and the Court will address them in the same manner.

---

[3]*See* Fed.R.Civ.P. 56(a).

[4]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[5]*Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

[6]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A.      FAILURE TO IDENTIFY TRADE SECRET WITH PARTICULARITY

Both Utah and Missouri have adopted the Uniform Trade Secrets Act ("UTSA").  The

UTSA expressly provides that it "shall be applied and construed to effectuate its general purpose

to make uniform the law with respect to the subject of the chapter among the states enacting it."[7]

Under the UTSA, a trade secret is

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>           (a) derives independent economic value, actual or potential, from
>           not being generally known to, and not being readily ascertainable
>           by proper means by, other persons who can obtain economic value
>           from its disclosure or use; and
>           (b) is the subject of efforts that are reasonable under the
>           circumstances to maintain its secrecy.[8]

The UTSA thus recognizes that a trade secret can be a "compilation" of several elements.

A compilation can be made up of known elements, if the combination itself is outside the general

knowledge and not readily ascertainable by proper means.[9]  In making this showing of

uniqueness, a plaintiff must be specific.[10]  Simply pointing to a large amount of information and

---

[7]Mo. Rev. Stat. § 417.465; Utah Code Ann. § 13-24-9.

[8]Utah Code. Ann. § 13-24-2.

[9]*Rivendell Forest Prods., LTD. v. Georgia-Pacific Corp*, 28 F.3d 1042, 1046 (10th Cir. 1994) ("A trade secret can include a system where the elements are in the public domain, but there has been accomplished an effective, successful and valuable integration of the public domain elements and the trade secret gave the claimant a competitive advantage which is protected from misappropriation.").

[10]*VFD Consulting, Inc. v. 21st Services*, 425 F. Supp. 2d 1037, 1049 (N.D. Cal. 2006) (denying trade secret protection because "Plaintiff has not identified, with any particularity, how Dolan organized or combined the materials in a manner that rises to the level of a legally protectable trade secret").

claiming it is secret will not do.[11]  Rather, the plaintiff must explain how the combination of

elements is sufficiently different, or special, to merit protection.

1.  SPECIFICITY

     Pfizer contends that BYU's trade secret claim fails because it is not specific enough.

Two types of particularity, according to Pfizer, are missing from BYU's compilation trade secret

claims—particularity about what the trade secret is and particularity about how the compilation

trade secret is unique.  In reality, these requirements seem to be two sides of the same coin—in

order to show uniqueness with particularity, one must be particular about what is involved in the

compilation.

     At the March 9, 2012 hearing, BYU was asked to identify when its alleged compilation

was complete and unique and what elements made up the secret at that time.  BYU presented a

handout that purported to identify several compilations, including their contents and the date they

were completed.[12]  Each successive compilation incorporates the contents of the prior.  To avoid

prejudice to Pfizer, the Court will not now allow BYU to allege distinct compilation trade secrets

that it did not clearly identify to Pfizer in the past.  Rather, the Court will analyze the description

of the trade secret(s) timely provided by BYU, if any, and focus on the latest compilation alleged

---

[11]*See Utah Med. Prods., Inc. v. Clinical Innovation Assocs. Inc.*, 79 F. Supp. 2d 1290, 1313 (D. Utah 1999) ("Simply identifying documents and claiming that they contain trade secret information is not enough."); *Jostens, Inc. v. Nat'l Computer Sys., Inc.*, 318 N.W.2d 691, 699 (Minn. 1982) ("Simply to assert a trade secret resides in some combination of otherwise known data is not sufficient, as the combination itself must be delineated with some particularity in establishing its trade secret status.").

[12]Docket No. 905, Ex. 3.

by BYU that was adequately disclosed.  The Court will then proceed to consider the parties'

arguments on that compilation.

BYU provided a detailed break down of 42 trade secrets in a document entitled

"Substance and Identity of BYU's Trade Secrets" drafted by Keith Ricker, which was marked as

an exhibit in Mr. Ricker's deposition.[13]  This deposition was taken on June 2, 2011.[14]  Mr. Ricker

states that the 42 elements were communicated prior to termination of the Research Agreement,

that the elements are trade secrets, and that elements can be combined, even if disclosed

individually, to form a compilation. The final trade secret that Mr. Ricker identified was

> A research project and plan for the selection, testing, and modifying of
> nonsteroidal anti-inflammatory drugs for COX-2 selectivity by establishing the
> existence of functionally separate COX isozymes, ruling out steroids as treatment
> compounds, developing polyclonal and ultimately monoclonal antibodies,
> sequencing and cloning human COX-1 and COX-2 DNA, and using cell based
> and recombinant enzyme assays to test for selective COX-2 inhibition.[15]

The last compilation BYU alleges before the Research Agreement was terminated is

dated March 20, 1992, when Simmons sent Pfizer a progress report.  That compilation included

the following elements, which are the contents of BYU's first claimed compilation:

> (1) a vision/project to find a COX-2 selective NSAID; (2) knowledge that a
> second COX gene existed, plus the COX-1 and COX-2 clones; (3) expression data
> for COX-1 and COX-2, which tied the inducible COX to COX-2; (4) antibodies
> to chicken COX-2; and (5) restriction maps for Dr. Simmons's mouse COX-1 and
> COX-2 clones and instructions for their use.[16]

---

[13]Docket No. 824 Ex. 190, at 10-11.

[14]*Id.* Ex. 192.

[15]*Id.* Ex. 190, at 11.

[16]Docket No. 905 Ex. C, at 1.

From there, BYU essentially alleges that each progressive increase in Simmons's knowledge that was communicated to Pfizer created a new compilation trade secret.  Because Mr. Ricker listed all developments in the Project up until termination and noted that those elements could be combined into a compilation trade secret, and specifically noted that Dr. Simmons's vision and accompanying tools were part of the trade secrets, the Court is satisfied that BYU has communicated to Pfizer that it would claim a compilation trade secret, complete as of March 20, 1992, that is based on Simmons's vision to find a COX-2 selective NSAID and accompanied by the tools that Simmons had developed up to that point.  Therefore, the Court will reject Pfizer's argument on this point.  The Court will next consider whether that trade secret has been shown to be unique and therefore worthy of trade secret protection.[17]

---

[17]Pfizer cites a barrage of cases to support its contention that BYU has not been specific enough about what its compilation is comprised of.  BYU's responds in kind.  The Court finds that all the cases cited by both parties stand for a simple rule: a party claiming a trade secret must make a showing, with particularity, that the combination of elements is unique—neither pointing to a mass of information and claiming that somewhere within is a secret, nor simply alleging that a combination is secret without showing how, will do. *See e.g.*, *VFD Consulting, Inc.*, 425 F. Supp. at 1049 (denying a compilation trade secret claim because plaintiff had failed to show "with any particularity, how [plaintiff] organized or combined the materials in a manner that rises to the level of a legally protectable trade secret"); *Jostens, Inc.*, 318 N.W.2d at 699 ("Simply to assert a trade secret resides in some combination of otherwise known data is not sufficient, as the combination itself must be delineated with some particularity in establishing its trade secret status.").

If the cases mention a requirement of specificity in the definition of the compilation, the requirement is only imposed to the extent a lack of specificity of definition would prevent a showing of specific uniqueness.  Having found that BYU did identify a compilation trade secret to Pfizer, the Court must simply consider whether BYU has proffered facts supporting uniqueness, and will therefore not engage in a laborious analysis of each case cited by the parties here.

2.  UNIQUENESS

The Court understands the compilation trade secret to essentially be a plan or vision to find a COX-2 selective NSAID as well as the information and materials in existence by March 20, 1992, that provide tools to accomplish that goal.  The Court finds that this vision *could* be a compilation trade secret, and that the parties dispute the facts that are essential for making the determination.  Accordingly, the Court will deny summary judgment.

In so holding, the Court follows the Utah Supreme Court's reasoning in *USA Power, LLC v. PacifiCorp.*[18]  In that case, USA Power was in the business of laying groundwork for the development of power plants, including the acquisition of land, permits, water rights and other necessaries.  USA Power would then sell its work to an entity that would develop and operate the plant.  USA Power had been working on a power plant plan in Utah.  During negotiations with a potential buyer, the company provided three binders full of information about the plan.  The binders contained copies of permits, zoning information, and other public documents. Defendants argued that, because they could have sought out all the documents from various sources and cobbled them together, the binders could not be a compilation trade secret.  The court disagreed, noting that a compilation can be a trade secret even if its individual contents were not secret.[19]  The court then held that a vision could be a trade secret, without launching

_____

[18]235 P.3d 749 (Utah 2010).

[19]*Id.* at 759.

into a detailed analysis of what specific elements were in the binder, or whether those elements were clearly defined.[20]

The Court finds that Dr. Simmons's case is essentially the same: he had a vision, he did work to facilitate that vision, and communicated his vision and work to Pfizer.  His vision *could* therefore be a compilation trade secret.  Pfizer has tried to distinguish the case because the potential trade secret vision in *USA Power* was concrete (i.e. confined to three binders, with a last page, and therefore a defined limit), whereas Dr. Simmons's compilation is "amorphous."  Pfizer's complaint is that, given this lack of specificity, it is impossible to tell whether the secret was unique or misappropriated.  But the *USA Power* court did not undertake an analysis of the contents of the binder in order to determine if the vision was clearly defined.  Rather, the court simply stated that a vision to develop something could be a compilation trade secret if the vision itself was outside of the general knowledge.  The Supreme Court declined to undertake an analysis of whether USA Power's vision was outside the general knowledge because  "to determine whether the product, design, or vision constitutes a trade secret is an intensely factual inquiry to be conducted by the trial court."[21]  At the trial court level, however, if there is a dispute of material fact, the issue is commended to the jury.

A vision is protectable if it is not "generally known or readily ascertainable."[22]  The "generally known or readily ascertainable" standard "cannot be viewed as whether the

---

[20]*Id.* at 760.

[21]*Id.* at 760.

[22]*Id.*

information is generally known and readily ascertainable to the general public, but, based on the defendant['s] knowledge and experience, whether the information was known or ascertainable to [the defendant]."[23] The *USA Power* court set out the following factors from the Restatement as guidelines to follow in the "generally known" analysis:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in its business; (3) the extent of measures taken by the business to guard the secrecy of its information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.[24]

BYU has presented testimony that during the time BYU was sharing information and materials with Pfizer "'no other research group, either academic or industrial, had access to the unique combination of Dr. Simmons['s] clones, antibodies, research data, expert advice and project.'"[25] Dr. Steven Prescott, a BYU expert, testified that he was not aware of "earlier documents describing a plan to find a COX-2 selective NSAID" before Simmons provided his materials to Pfizer.[26] Dr. Randy Bell, another BYU expert, testified that, to his knowledge "no one anywhere prior to March of 1992 had laid out [] a plan for finding COX-2 selective NSAIDs. . . . No other company had this set in 1991, and only Merck had much of it by mid-1993."[27] This

---

[23]*Id.* at 759.

[24]*Id.* at 760.

[25]Docket No. 796, at 18 (quoting expert report).

[26]*Id.* at xxxi.

[27]*Id.* at xxvi.

evidence produces a dispute of material fact as to several of the guidelines the *USA Power* court identified.  It would therefore be inappropriate for the Court to undertake such an analysis on summary judgment.

B.        FAILURE TO ALLEGE THAT EACH ELEMENT WAS MISAPPROPRIATED

Pfizer next contends that even if Simmons's vision could be a trade secret, a plaintiff must show that every element of a claimed trade secret was misappropriated, and BYU has failed to do so.

*USA Power* again dictates a different result.  The court therein held that "a jury can infer misappropriation under the Utah Trade Secrets Act if presented with circumstantial evidence that shows access to information similar to the trade secret at issue."[28]  Accordingly, if circumstantial evidence is presented that shows Pfizer had access to the allegedly secret compilation here, then there is a dispute of fact as to whether Pfizer misappropriated the secret.

In *USA Power*, plaintiffs cited to evidence showing that a rival company had access to their plans for a power plant, and had built a power plant similar to plaintiffs'.  The lower court granted summary judgment in favor of defendants on the issue of misappropriation because plaintiffs had "not provided any evidence, direct or circumstantial, that specifically identifies any trade secrets that were used or misappropriated by [defendants]."[29]  The Utah Supreme Court

---

[28]*USA Power*, 235 P.3d at 761.

[29]*Id.*

reversed, finding that, based on the circumstantial evidence presented, a reasonable juror could infer that the alleged trade secret had been misappropriated.[30]

In the instant case, as Pfizer notes, BYU did not end up developing its own drug based on the trade secrets it alleges. Thus, the Court does not have two finished products to compare as the *PacifiCorp* court did. However, the vision portrayed in Dr. Simmons's work is the discovery of a COX-2 selective NSAID using the methods purportedly discovered by Dr. Simmons. BYU has presented facts showing that Pfizer did not have an active COX-2 NSAID program before the relationship with BYU. It is undisputed that Pfizer had access to the materials and information that comprised the alleged trade secret. Pfizer eventually ended up with a COX-2 selective product, allegedly obtained by using, in part, Dr. Simmons's materials. A reasonable juror could infer that Pfizer achieved its COX-2 success by using the alleged compilation trade secret.[31] The Court therefore finds that, based on the circumstantial evidence presented, there is a dispute of fact as to whether Pfizer misappropriated the alleged compilation trade secret.

C.      REASONABLE EFFORTS TO MAINTAIN SECRECY

Pfizer has also contended that BYU did not take reasonable steps to keep the compilation secret because, by the time the secret was fully communicated, the Agreement no longer protected the secrecy of any information. This argument is based on testimony from Dr. Simmons, who stated that the compilation trade secret was not fully communicated to Pfizer until

---

[30]*Id.* at 761-62.

[31]*See Rivendell*, 28 F.3d at 1046 (finding that when an employee left a company and goes to a competitor, the competitor's subsequent ability to quickly develop technology that only the original company had was sufficient to show a dispute of fact on misappropriation).

after the Research Agreement had terminated.  In his deposition,  in response to the question

"what was the last piece necessary for that compilation to be complete?" Simmons responds:

"Well, as I said, the compilation is everything in the collaboration.  And I continued to provide

them information prior to providing anyone else that information in July."[32]  Simmons goes on to

specify that he refers to July of 1992, which is after the Agreement had terminated.  Even if the

Court were to accept Simmons's characterization, the only effect would be that additions to the

compilation after the termination were not protected.  As the Court has noted above, BYU has

identified a compilation trade secret that was complete prior to the termination of the Research

Agreement.  Accordingly, this argument does not change the analysis.

D.      PFIZER'S LICENSE CLAIM

        Finally, Pfizer contends that there was no trade secret misappropriation because, under

the terms of paragraph 3.2 of the Research Agreement, Pfizer had an irrevocable license to all of

the information contained in the alleged trade secret that was not patented.  BYU responds that

the only reason the materials involved remained unpatented is because Pfizer breached its

obligations under 3.3.  If Pfizer did breach paragraph 3.3, then Pfizer should not be rewarded for

its breach with an irrevocable license.  However, if no breach occurred, then Pfizer is correct that

it had a license on the materials and cannot be held liable for its use.  Because there are disputed

issues of material fact concerning BYU's breach of 3.3 claim,[33] the Court cannot now determine

---

[32]Docket No. 769 Ex. 50, at 192:25-193:5.

[33]*See* Docket No. 896.

3.2's effect on the trade secret analysis.  Accordingly, the Court cannot grant summary judgment based on 3.2.

### III.  CONCLUSION

In the light of the foregoing, it is

ORDERED that Pfizer's Motion for Partial Summary Judgment on Plaintiffs' Claim that Defendants Have Misappropriated "Project" and "Compilation" Trade Secrets (Count VIII of the First Amended Complaint) (Docket No. 736) is DENIED.

DATED   March 20, 2012

BY THE COURT:

_____

TED STEWART
United States District Judge