IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, and DR. DANIEL L. SIMMONS,<br><br>Plaintiffs,<br><br>vs.<br><br>PFIZER, INC., et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 4<br><br><br><br>Case No. 2:06-CV-890 TS |

      This matter is before the Court on Pfizer's Motion For Partial Summary Judgment That Plaintiffs' Hypothetical Patent Claims 12-26 May Not Be Relied Upon In Support Of Any Claim For Relief.[1]

I.  BACKGROUND

      The facts of this case are fully set out in the Court's Order dated March 13, 2012,[2] and need not be recited here.

---

[1]Docket No. 728.

[2]Docket No. 896.

## II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[3]  The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.[4]  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."[5]  "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[6]

## III.  DISCUSSION

BYU has submitted a list of hypothetical patent claims that it contends would have been filed for BYU had Pfizer not breached its duty to inform BYU of patentability.  Pfizer's moves the Court to hold that certain of BYU's hypothetical patent claims are improper as a matter of law and thus should not be included in any calculation of alleged damages.

Pfizer targets those patent claims that invoke DuP-697 as the lead compound for COX-2 inhibition.  Pfizer contends that even if it had breached paragraph 3.3 of the Research Agreement, Simmons still would not have ended up with hypothetical patent claims 12-26 because (1) Dr. Simmons never actually conceived of DuP-697 as the lead compound, and thus

---

[3]*See* Fed.R.Civ.P. 56(a).

[4]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[5]*Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

[6]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

cannot have conceived of the inventions claimed in those patents and (2) even if he had, Simmons never indicated this to Pfizer.  This second point sets off a string of inferences related to causation: if BYU never told Pfizer that DuP-697 was a COX-2 inhibitor, then Pfizer could never have informed BYU that claims 12-26 were patentable, Pfizer would not have filed an application based on claims 12-26, and thus Pfizer cannot have caused BYU to fail to patent claims 12-26.  These arguments will be dealt with in turn.

A.     CONCEPTION

"Conception of an invention is a necessary . . . condition to being name as an inventor."[7] "Conception is 'the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'"[8]  "Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation."[9]  "A conception is not complete if the subsequent course of experimentation, especially experimental failures, reveals uncertainty that so undermines the specificity of the inventor's idea that it is not yet a definite and permanent reflection of the complete invention as it will be used in practice."[10]

---

[7]*In re Bd. of Trs. of Fla. State Univ. v. Am. Bioscience Inc.*, 33 F.3d 1330, 1340 (Fed. Cir. 2003).

[8]*Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed Cir. 1994) (quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986)).

[9]*Id.* (citing *Sewall v. Walters*, 21 F.3d 411, 415 (Fed Cir. 1994)).

[10]*Id.* at 1229.

As to the first issue, Dr. Simmons has testified that he knew at the Keystone Conference that DuP-697 was a viable lead compound.[11] BYU's patent expert Vern Norviel further testified that Simmons had all the information a competent patent attorney would need to draft a patent application once Simmons became aware of DuP-697's role as lead compound.[12] While Simmons's and Norviel's assertions speak to the legal issue—whether conception was achieved—it also proffers facts—i.e. that Simmons understood both DuP-697's role and all other pieces necessary to pursue hypothetical patent claims 12-26. These facts are offered in contravention to Pfizer's proposed facts—that Simmons did not have a clear idea of the content of claims 12-26. Furthermore, the Court notes that Pfizer's ability to quickly reduce to practice Simmons's alleged inventions after the Keystone conference creates a reasonable inference that Simmons, if armed with the same knowledge as Pfizer after Keystone, had reached conception.[13] Accordingly, the Court finds that there is a dispute of fact over whether Simmons reached conception on the hypothetical claims.[14]

---

[11] Docket No. 824 Ex. 4, at 108:12-13 ("[I] knew at Keystone that DuP-697 could be a lead compound.").

[12] Docket No. 804, at 12-13.

[13] Simmons has testified that the only reason he didn't actually synthesize DuP-697 was because he thought doing so would infringe on DuPont's patent on that compound. *Id.* at xxv.

[14] The parties dispute whether the patent claims are properly described as method of treatment or compound claims. Pfizer notes that when a compound is claimed, conception requires "knowledge of both the specific chemical structure of the compound and an operative method of making it." *Burroughs Wellcome Co.*, 40 F.3d at 1229. The Court finds that, even if all the claims are compound claims, a reasonable juror could infer from these same facts that Simmons had a sufficient understanding of the operative method for making the compounds.

B.  NOTICE

Pfizer next argues that even if Simmons did conceive of the disputed patent claims, summary judgment is nevertheless proper because Simmons failed to inform Pfizer that he had done so.  However, the Court finds that BYU has proffered sufficient evidence to show a dispute of fact over whether Pfizer ever received notice.

Dr. Simmons stated in a deposition that he had "discussed DuP-697 . . . with Karen Seibert."[15]  Pfizer complains that this statement is too vague to create a dispute of fact, and that one would expect, if Simmons had truly discussed the matter with Dr. Seibert in the way BYU suggests, BYU would have submitted a further declaration from Dr. Simmons to that effect.  However, the Court notes that the same could be said for Dr. Seibert—one suspects that if she hadn't had the conversation that Simmons suggests, Pfizer would have come forward with a declaration.  Thus, the Court will not consider the lack of further clarification significant on either side.  Rather, the Court notes that Dr. Simmons has testified that notice was given to a Pfizer representative, and thus a dispute of fact has been shown.

A dispute of fact is further established by the testimony of other BYU witnesses.  Dr. Ed Lentz stated that Dr. Simmons had discussions with Pfizer about DuP-697.[16]  Dr. Randy Bell further stated that Dr. Simmons had conversations with Dr. Seibert about DuP-697 being a COX-2 selective compound and that Dr. Simmons had told Dr. Lentz that the conversation took

---

[15] Docket No. 824 Ex. 4, at 108:14-18.

[16] *Id.* Ex. 228, at 234:5-17.

place.[17] In light of this evidence, the Court finds that there is a dispute of fact as to whether Simmons notified Pfizer that DuP-697 was a lead compound.

C.      ALLEGED BREACHES OF THE RESEARCH AGREEMENT

As an independent ground for denying summary judgment, the Court notes that there are several portions of the Research Agreement—which are surrounded by disputes of fact—that could have required Pfizer to pass along information about DuP-697 to BYU. Accordingly, the hypothetical patent claims could reasonably be damages for those breaches if they occurred, even if Simmons failed to achieve conception and/or failed to notify Pfizer about DuP-697.

First, BYU notes that Pfizer has argued that it had no duty to inform BYU about DuP-697. BYU incorporates its arguments on paragraph 3.3 in response. The Court finds that even if Simmons hadn't notified Pfizer about DuP-697, there is some question as to whether Pfizer should have notified BYU about DuP-697 under paragraph 3.3.[18] For example, if Pfizer was in possession of every piece of what would be a patentable Project result except DuP-697, and then became aware that DuP-697 was the final piece, Pfizer may have breached the covenant of good faith implied by 3.3 if it kept that information from BYU.

The Court further notes that its Order dated March 15, 2012, found that Pfizer was not allowed to use confidential information for purposes other than the cooperative development of a COX-2 selective NSAID with BYU.[19] Thus, if Pfizer used confidential information provided by

---

[17]*Id.* Ex. 138, at 177.

[18]*See* Docket No. 896, at 9.

[19]Docket No. 899, at 5-6.

BYU together with DuP-697 to create its own drug, that use could constitute a breach of the Research Agreement.  The hypothetical patent claims involving DuP-697 could therefore be viewed as a claim for damages for breach of 4.1.  In other words, if—assuming a scenario in which Pfizer used confidential information incorrectly—Pfizer had collaborated with BYU in its use of confidential information as required, then Simmons would have been informed that he could use DuP-697[20] and thus would have (1) fully conceived of the claimed inventions and (2) Pfizer would have notice that the hypothetical patents involving DuP-697 were invented.

Finally, the Court notes that under paragraph 1.6, Pfizer could have been required to provide DuP-697 to BYU.[21]  Because there are disputes of fact surrounding these three provisions, the Court finds that they could provide an independent basis for denying Pfizer's Motion.

## VIII.  CONCLUSION

In light of the foregoing, it is therefore

ORDERED that Pfizer's Motion For Partial Summary Judgment That Plaintiffs' Hypothetical Patent Claims 12-26 May Not Be Relied Upon In Support Of Any Claim For Relief (Docket No. 728) is DENIED.

---

[20]As stated, Simmons has testified that the only reason he didn't actually synthesize DuP-697 was because he thought doing so would infringe on DuPont's patent on that compound. Docket No. 804, at xxv.

[21]Docket No. 896, at 11-12.

DATED   March 20, 2012

                          BY THE COURT:

                          _____
                          TED STEWART
                          United States District Judge