IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, and DR. DANIEL L. SIMMONS,<br><br>Plaintiffs,<br><br>vs.<br><br>PFIZER, INC., et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 5<br><br><br><br>Case No. 2:06-CV-890 TS |

This matter is before the Court on Pfizer's Motion For Summary Judgment On Plaintiffs' Claim for Correction of Inventorship (Count IV of the First Amended Complaint).[1]

I. BACKGROUND

The facts of this case are fully set out in the Court's Order dated March 13, 2012,[2] and need not be recited here.

---

[1]Docket No. 734.

[2]Docket No. 896.

1

## II. STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[3] The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.[4] "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."[5] "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[6]

## III. DISCUSSION

Pfizer moves the Court to dispense with BYU's claim that several of Pfizer's patents on COX-2 related materials should be amended to include Dr. Simmons as a joint inventor. BYU initially requested amendment of more than eighty patents held by Pfizer. However, BYU subsequently indicated that it would restrict its claims to three patents.[7] The Court will now determine whether summary judgment for Pfizer is appropriate on those three patents.

---

[3] *See* Fed.R.Civ.P. 56(a).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[5] *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7] Docket No. 884.

As a threshold issue, the parties have disputed whether the Court is required to construe the claims of the disputed patents before determining joint inventorship. The Court will first address that question.

A.     CLAIM CONSTRUCTION

At the March 9, 2012, hearing, the Court invited the parties to submit supplemental briefing on whether two Federal Circuit cases—*Trovan, Ltd. v. Sokymat SA, Iroro*[8] and *Falana v. Kent State University*[9]—require the Court to construe the disputed patents' claims before determining whether BYU has contributed to them.

In its supplemental brief, BYU argues (1) that at least one element of each accused patent included celocoxib, a COX-2 inhibitor; (2) that Pfizer does not dispute the presence of celocoxib in the accused patents; and (3) that beause the presence of celocoxib is undisputed, claim construction is not necessary. In response, Pfizer does not dispute that the disputed patent claims incorporate a COX-2 inhibitor. Rather, Pfizer devotes its energy to contending that both *Trovan* and *Falana* clearly require claim construction.

In *Trovan*, the Federal Circuit stated that "an inventorship analysis, like an infringement or invalidity analysis, begins as a first step with a construction of each asserted claim to determine the subject matter encompassed thereby."[10] In reviewing the lower court's conclusions on joint inventorship, the Federal Circuit went on to criticize the lower court for making "broad

---

[8]299 F.3d 1292, 1302 (Fed. Cir. 2002).

[9]2012 WL 171550 (Fed. Cir. Jan. 23, 2012)

[10]299 F.3d at 1301.

statements as to the scope of the coverage of [the entire patent] which were not directed at any particular claims" instead of conducting an "independent claim construction analysis, which is the first step in determining inventorship."[11] The Court then stated "[w]ithout a direct construction of [the claims in dispute] the meaning and scope of the claims and the extent to which [plaintiff] may have contributed to the invention recited in those claims cannot be determined."[12]

Though this language clearly requires a court to conduct claim construction in the joint inventorship context, the Court would note that this requirement is imposed when there is a need to "determine the subject matter encompassed" of a disputed claim. However, when the subject matter of a claim is undisputed, as it is here, claim construction is redundant.

> The *Markman* decisions do not hold that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court. Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.[13]

BYU's argument is that Pfizer relied on Simmons's work to create the COX-2 inhibitors involved in the disputed patents. Pfizer has previously admitted that the patents at issue include COX-2 inhibitors, and has not disputed this fact in its supplemental brief.[14] There is therefore no

---

[11]*Id.* at 1305.

[12]*Id.* at 1306.

[13]*See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)

[14]*See* Docket No. 897, at vi-ix. Pfizer objects to BYU's reference to Pfizer's past statements about the contents of the disputed patent because they are, according to Pfizer, offered for the first time in Plaintiffs' supplemental brief. BYU responds that its factual statement is

dispute as to the inclusion of COX-2 inhibitors in at least one claim in each patent. The Court therefore agrees with BYU that claim construction is unnecessary.

*Falana* further supports this conclusion. Though the trial court in that case engaged in claim construction, it did so because the parties disputed whether two claims in a contested patent contained a specific limitation.[15] The district court thus construed the claims, found that the limitation was not present, and then, after a bench trial, went on to find that the plaintiff was a joint inventor. Here, however, Pfizer has not contended that the disputed claims do not include COX-2 inhibitors. There is therefore no reason to construe the claims to determine if they do.[16]

In sum, the Court finds that it is undisputed that a COX-2 inhibitor is incorporated by at least one claim of each accused patent. It follows that the accused patents contain elements that may incorporate Simmons's alleged contribution, and claim construction is not necessary. Accordingly, the Court rejects Pfizer's argument that BYU's joint inventor claims fail because claim construction has not been performed.

---

simply a concentration of information contained in the existing record. The Court notes that, though Pfizer may have a legitimate complaint on this point, Pfizer's own admission that the patents contain a COX-2 inhibitor is nevertheless inescapable. Accordingly, the Court will proceed on that premise.

[15]*Falana*, 2012 WL 171550, at *4.

[16]*See also Falana v. Kent State Univ.*, 2010 WL 5178838, at *12 (N.D. Ohio Dec. 15, 2010) ("The inventorship analysis, like an infringement or invalidity analysis, starts with a construction of each disputed claim to determine the subject matter encompassed thereby. . . . However, if neither party has requested the Court to construe any of the terms in the claim at issue, or ever offered a construction of the claim at issue, then the right to request construction of the claim is waived and the parties have implicitly conceded that the meaning of the terms of the claim are clear and not in need of construction.") (citing *Eli Lilly & Co. v. Aradigm Corp.* 376 F.3d 1352, 160 (Fed. Cir. 2004) (internal quotation marks and citations omitted)).

B.     SIMMONS'S CONTRIBUTION

The Court now turns to a consideration of whether Simmons qualifies as a joint inventor.

> A joint invention is the product of a collaboration between two or more persons working together to solve the problem addressed. People may be joint inventors even though they do not physically work on the invention together or at the same time, and even though each does not make the same type or amount of contribution.
>     Thus, the critical question for joint conception is who conceived, as that term is used in the patent law, the subject matter of the claims at issue. A contribution to one claim is enough. The statute does not set forth the minimum quality or quantity of contribution required for joint inventorship. Each joint inventor, however, must contribute in some significant manner to the conception of the invention. Conception of a chemical compound requires knowledge of both the specific chemical structure of the compound and an operative method of making it.[17]

Simmons claims that Pfizer relied on his method for discovering a COX-2 inhibitor when developing the COX-2 inhibitors that are contained in the disputed patents. If this is the case, then the disputed patents may incorporate a significant contribution from Dr. Simmons and would thus be subject to amendment of inventorship. The facts of *Falana* are instructive here.

Dr. Falana was hired by a company—KDI—to assist in synthesizing compounds. The goal was to develop a temperature independent, high helical twisting power chiral additive—a compound that KDI wanted to aid in the development of LCD technology. While still employed by KDI, Falana "developed a synthesis protocol for making a novel class, or genus, of chemical compounds: naphthyl substituted TADDOLs."[18] Falana then synthesized a compound within the novel class, which was denoted "Compound 7." Compound 7 achieved a degree of temperature

---

[17]*Falana*, 2012 WL 171550, at *6 (internal quotation marks and citations omitted).

[18]*Id.* at *2.

independence. However, KDI determined that while Compound 7 represented "significant progress," it did not "completely satisfy the goals of the project" because it did not obtain the requisite level of temperature independence.[19]

About a year later, another researcher working on the same project used Falana's synthesis protocol to make Compound 9. Compound 9 obtained the requisite temperature independence and therefore satisfied the goals of the project. KDI then applied for a patent. Falana was not named as an inventor and Falana subsequently sued for correction of inventorship.

On appeal, defendants argued that Falana could not be a joint inventor because, *inter alia*, the patent covered "chemical compositions and not methods."[20] According to defendant, Falana's supposed contribution of a method was "legally irrelevant" to whether he was a joint inventor on a patent that did not claim any method of making its compounds. The court then proceeded to determine "whether a putative inventor who envisioned the structure of a novel chemical compound and contributed to the method of making that compound is a joint inventor of a claim covering that compound."[21]

The court held:

> [T]he conception of a chemical compound necessarily requires knowledge of a method for making that compound. In some circumstances, the method of making a compound will require nothing more than the use of ordinary skill in the art. In those circumstances, the contribution of that method would simply be "[t]he basic

---

[19] *Id.*

[20] *Id.* at *7.

[21] *Id.*

> exercise of the normal skill expected of one skilled in the art" and would not normally be a sufficient contribution to amount to an act of joint inventorship.
>
> Where the method requires more than the exercise of ordinary skill, however, the discovery of that method is as much a contribution to the compound as the discovery of the compound itself. This case is simply the application of the well-known principle that conception of a compound requires knowledge of both the chemical structure of the compound and an operative method of making it. Accordingly, this court holds that a putative inventor who envisioned the structure of a novel genus of chemical compounds and contributes the method of making that genus contributes to the conception of that genus.[22]

This language makes clear that a patent claiming compounds need not claim a method for making those compounds in order for the inventor of such a method to be a joint inventor. Rather, the Court takes *Falana* to mean that an inventor of a method may be entitled to joint inventorship on a patent that discloses only compounds if (1) the plaintiff conceived of a method; (2) that is outside the exercise of ordinary skill; and (3) is in fact used to create the compounds in the patent.

The Court finds that BYU has put forward evidence (1) that Simmons discovered COX-2 and conceived of a method for determining whether a compound was COX-2 selective[23]; (2) that Simmons's contribution was greater than the exercise of ordinary skill[24]; and (3) that Pfizer used

---

[22]*Id.* at *8.

[23]Docket No. 800, at iv-v, xii-xv. Pfizer characterizes Simmons's contribution as a method for testing existent compounds for COX-2 selectivity rather than a method for synthesizing a compound, and argues that this makes Simmons's would-be contribution materially distinct from Falana's. The Court disagrees. Regardless of whether Simmons synthesized a new compound that could inhibit COX-2, or simply discovered that COX-2 existed and that an existent compound could inhibit it, his contribution would have the same effect in the end: providing the capability to develop COX-2 selective NSAIDs. Accordingly, the Court rejects this argument.

[24]*See* Docket No. 908, at 9 (noting that "BYU has presented testimony that during the time BYU was sharing information and materials with Pfizer no other research group, either

8

Simmons's method in developing its own COX-2 inhibitor.[25]  The Court therefore finds that there are disputed issues of material fact and will therefore deny summary judgment on the issue of joint inventorship.

Pfizer further contends that there was not sufficient collaboration between Simmons and the named inventors of the patent to warrant joint inventorship.  "Joint inventorship arises only 'when collaboration or concerted effort occurs—that is, when the inventors have some open line of communication during or in temporal proximity to their inventive efforts.'"[26] However, "[p]eople may be joint inventors even though they do not physically work on the invention together or at the same time, and even though each does not make the same type or amount of contribution."[27]  Pfizer suggests that BYU has presented no facts that show that "an alleged 'significant contribution' from Dr. Simmons was ever shared with a Pfizer representative other than Drs. Seibert and Masferrer."[28]  In response, BYU cites to evidence showing that (1) before the collaboration with BYU, Pfizer was not pursuing a COX-2 selective NSAID and Simmons's COX-2 information was not available anywhere else; (2) Simmons gave COX-2 research

---

academic or industrial, had access to the unique combination of Dr. Simmons['s] clones, antibodies, research data, expert advice and project") (internal quotation marks and footnote omitted)).

[25]*See* Docket No. 899, at 7 (noting that "BYU has put forth extensive evidence—based on expert testimony, deposition testimony from Pfizer scientists, and inter-Pfizer communications—that Pfizer used confidential information" in its independent pursuit of a COX-2 selective NSAID).

[26]*Falana*, 2012 WL 171550, at *8 (quoting *Eli Lilly & Co.*, 376 F.3d at 1359).

[27]*Id.* at *6.

[28]Docket No. 851, at 9.

material to Pfizer; and (3) Pfizer developed a COX-2 selective NSAID and its scientists were given awards for their work on COX-2. The Court finds that a reasonable juror could infer from this information that the inventors of the disputed patents built off Simmons's work and will therefore reject Pfizer's argument on this point.

Finally, Pfizer has argued that Simmons's contribution was prior art and thus could not qualify Simmons for joint inventorship. The Court noted at the March 9, 2012, hearing that it found this argument unpersuasive, and will here reject it. As noted above, the question before the Court is whether Simmons's method was outside the exercise of ordinary skill, and not whether Simmons's alleged contribution was prior art under 35 U.S.C. § 102. This is illustrated by the statement in *Falana* that "[o]nce the method of making the novel genus of compounds *becomes public knowledge*, it is *then* assimilated into the storehouse of knowledge that comprises ordinary skill in the art."[29] However, before the time that the method becomes public, if it "requires more than the exercise of ordinary skill," the method can be grounds for joint inventorship.[30] Accordingly, the Court will reject this argument.

## IV.  CONCLUSION

In light of the foregoing, it is therefore

ORDERED that Pfizer's Motion For Summary Judgment On Plaintiffs' Claim for Correction of Inventorship (Count IV of the First Amended Complaint) (Docket No. 734) is DENIED.

---

[29] 2012 WL 171550 at *8 (emphasis added).

[30] *Id.*

DATED   March 22, 2012

                                              BY THE COURT:

                                              _____

                                              TED STEWART
                                              United States District Judge

11