IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, and DR. DANIEL L. SIMMONS,<br><br>Plaintiffs,<br><br><br><br>vs.<br><br>PFIZER, INC., et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON PFIZER'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 13<br><br><br><br><br><br>Case No. 2:06-CV-890 TS |

This matter is before the Court on Pfizer's Motion for Partial Summary Judgment No. 13.[1]

## I.  BACKGROUND

The facts of this case are fully set out in the Court's Order dated March 13, 2012,[2] and need not be recited here.

_____

[1]Docket No. 755.

[2]Docket No. 896.

## II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[3]  The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.[4]  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."[5]  "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[6]

## III.  DISCUSSION

Pfizer moves the Court to grant summary judgment on BYU's unjust enrichment, fraud, negligent misrepresentation, fiduciary duty and good faith and fair dealing claims.  Pfizer proposes several bases for rejecting the claims: (1) that the unjust enrichment, fraud, negligent misrepresentation, and fiduciary duty claims are preempted by the Uniform Trade Secrets Act ("UTSA"); (2) that the unjust enrichment and good faith and fair dealing claims are barred because an express agreement existed between the parties; and (3) that the fraud and fiduciary duty claims are barred by the economic loss rule.

---

[3]*See* Fed.R.Civ.P. 56(a).

[4]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[5]*Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

[6]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court notes at the outset that it has granted Pfizer's motion for summary judgment on BYU's fiduciary claim[7]—with the exception of the joint venture claim, which Pfizer does not address here—and thus need not consider Pfizer's argument on those fiduciary claims in this Order.

A.     TRADE SECRET PREEMPTION

Recently, the Utah Court of Appeals issued an opinion in *CDC Restoration & Construction, LC v. Tradesmen Contractors, LLC*.[8]  The court therein held that "the UTSA preempts claims based on the unauthorized use of information, irrespective of whether that information meets the statutory definition of a trade secret."[9]  The court further held that the preemptive effect of the UTSA extends to claims

> based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information.  Under this standard, if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective o[f] whatever surplus elements of proof were necessary to establish it.  However, to whatever extent that a claim is based upon wrongful conduct independent of the misappropriation of trade secrets or otherwise confidential information, it is not preempted.[10]

Accordingly, the Court must decide whether BYU's unjust enrichment and fraud claims are based on facts that would support a claim for misappropriation of trade secrets or confidential

---

[7]Docket No. 900.

[8]2012 WL 876745 (Utah Ct. App. Feb. 24, 2012).

[9]*Id.* at *12.

[10]*Id.* (alteration in original).

3

information.  If the facts offered by BYU support such a claim, it is irrelevant if other facts that have no bearing on misappropriation are also essential to the claim.[11]

As set out below, the Court finds that BYU's unjust enrichment, fraud, and negligent misrepresentation claims are premised on the contention that Pfizer wrongfully acquired and used BYU's confidential information, and that those claims are therefore preempted by the UTSA.  Accordingly, the Court will grant summary judgment on BYU's unjust enrichment, fraud, and negligent misrepresentation claims.

1.  UNJUST ENRICHMENT

The basis for BYU's unjust enrichment claim is that "BYU conferred a great benefit upon Monsanto by, among other things, providing Monsanto with the research, knowledge, and actual biological material from which Monsanto learned of the existence of COX-2 and the ability to develop a testing system that would lead to the discovery of COX-2 selective NSAIDs."[12] Pfizer's retention of those benefits was unjust because Pfizer "reaped billions of dollars in revenue as a result," and BYU was not invited to share in the profits.[13]  This claim is clearly predicated on facts showing a purported misuse of confidential information and is therefore preempted by the UTSA.  Accordingly, the Court will grant summary judgment on this claim.

---

[11]*See id.* at *14 (holding that an intentional interference with economic relations claim was preempted, even though there was evidence that defendants had engaged in "deceptive and deceitful acts," because defendants' actions were ultimately undertaken in order to get and use plaintiff's confidential information).

[12]Docket No. 445, at 95.

[13]*Id.*

4

2.  FRAUD AND NEGLIGENT MISREPRESENTATION

At the March 9, 2012, hearing, BYU stated that the individual misrepresentations it identified in its Complaint were, in reality, merely indications of an overarching fraudulent scheme perpetrated by Pfizer.  The Complaint, for example, claims that Pfizer made misrepresentations in order to "deceive [BYU] and Dr. Simmons, terminate the relationship with [BYU], deny [BYU] and Dr. Simmons of their rightful professional and economic expectancies, and thwart their reasonable and diligent actions to uncover the truth."[14]  This behavior, in turn, was part of a "whole fraud beginning in April of 1991 in which they led us down a path. We provided them all the help to get their secret drug project going, and then they continued to conceal from us what they were doing."[15]

Based on these representations, the Court understands BYU's fraud claim to be an allegation that Pfizer used deceptive techniques (1) to induce BYU into signing the Research Agreement, which allowed Pfizer access to confidential information; (2) to use the information outside of the scope of the Agreement; and (3) to prevent BYU from finding out.

The Court finds that BYU's fraud claim is thus based on facts that would support a claim alleging misapprorpiation of a trade secret or confidential information and is therefore preempted by the UTSA.[16]

_____

[14]*Id.* at 99-100.

[15]March 9, 2012 Hearing Tr. at 143.

[16]The Court further notes that, whether taken together as part of an overarching fraudulent scheme or individually as independent bases for fraud claims, BYU's fraud allegations would be subject to the same analysis: the baseline claim is that Pfizer made misrepresentations before, during, and after the Agreement with the purpose of wrongfully taking, using, and eventually

BYU has indicated that its negligent misrepresentation claims are supported by the same evidence as its fraud claims.  Accordingly, the negligent representation claims are subject to the same analysis as above.

## 3.  BYU'S ADMISSION

Finally, the Court would note that, at the March 9 hearing, BYU stated that *CDC* would bar its fiduciary duty claims to the extent that those claims allege that Pfizer breached its fiduciary duty to BYU by wrongfully using BYU's confidential information.[17]  Thus, BYU conceded that its claim that Pfizer breached its fiduciary duty by "wrongfully and deceitfully taking the Project and Confidential Information, using it for Monsanto's economic benefit, and generating billions of dollars in revenue"[18] was preempted by the UTSA.[19]  However, BYU went on to argue that not all its claims were preempted under *CDC* because there were some predicated on wrongful conduct not associated with the misuse of confidential information, and then cited to its claim that Pfizer breached its fiduciary duty by failing to review BYU's Project output for patentability.[20]

Regardless of whether a fiduciary claim predicated on a breach of the duty to review would evade preemption, BYU's admission that its confidential information based fiduciary

---

deriving profit from BYU's confidential information.

[17]March 9, 2012 Hearing Tr. at 145-46.

[18]Docket No. 445, at 92.

[19]March 9, 2012 Hearing Tr. at 145-46.

[20]*Id.* at 146.

claim is barred arguably extends to the fraud and unjust enrichment claims as well.  Like the fiduciary claim BYU concedes, the fraud claim is premised on BYU's contention that Pfizer wrongfully acquired and used BYU's confidential information for its own gain.  Similarly, the unjust enrichment claim is based on BYU's claim that Pfizer wrongfully retained BYU's confidential information, used the information for its own gain, and never shared the spoils with BYU.  Because the basis for the fiduciary claim is nearly identical to the basis for the fraud and unjust enrichment claims, BYU's admission on the fiduciary claim is equally applicable to the other claims.

B.      GOOD FAITH

Pfizer also moves the Court to deny BYU's good faith and fair dealing claims across the board.  As BYU notes, the good faith claims are better dealt with in the individual context in which they arise.  The Court will therefore deny Pfizer's Motion on this point and will consider any good faith claims along with the contractual provisions to which they are linked.

IV.  CONCLUSION

Having reached these conclusions, the Court need not consider Pfizer's other arguments. It is therefore

ORDERED that Pfizer's Motion for Partial Summary Judgment No. 13 (Docket No. 755) is GRANTED IN PART AND DENIED IN PART.

DATED  March 22, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge