IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, and DR. DANIEL L. SIMMONS, <br><br> Plaintiffs, <br><br><br> vs. <br><br><br> PFIZER, INC., et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTIONS NO. 8 AND 9 <br><br><br><br><br><br> Case No. 2:06-CV-890 TS |

This matter is before the Court on Pfizer's Motion to Dismiss for Lack of Standing[1] and Motion for Partial Summary Judgment Re: Ownership of the COX-2 Materials.[2]

I.  BACKGROUND

The facts of this case are fully set out in the Court's Order dated March 13, 2012,[3] and need not be recited here.

---

[1]Docket No. 740.

[2]Docket No. 744.

[3]Docket No. 896.

1

## II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[4]  The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.[5]  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."[6]  "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

## III.  DISCUSSION

In two separate motions, Pfizer has challenged Dr. Simmons's standing to assert breach of contract, fraud, unjust enrichment, fiduciary and trade secret infringement claims.  The Court will address each in turn.

A.   BREACH, FRAUD, UNJUST ENRICHMENT (PFIZER PSJ # 9)

In this Motion, Pfizer asserts that Dr. Simmons does not have standing to pursue (1) claims under the contract; (2) fraud or negligent misrepresentation claims; or (3) an unjust enrichment claim.  The Court notes at the outset that it has granted summary judgment in favor of Pfizer on BYU's fraud, negligent misrepresentation, and unjust enrichment claims, and thus

---

[4]*See* Fed.R.Civ.P. 56(a).

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6]*Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

need not consider those claims in this motion.[7]  Therefore, the Court will limit its discussion to the breach of contract claims.

Pfizer contends that Dr. Simmons cannot raise breach of contract claims against Pfizer because he was not an intended beneficiary of the Research Agreement.  BYU responds that Pfizer was aware that the contract benefitted Dr. Simmons because he is mentioned throughout the Agreement and because Appendix A comprises a description of his research work.

Under Missouri law

> [c]ontracts are made for the direct benefit of the contracting parties.  Other parties frequently derive some incidental benefit from the performance of the contract, but this gives them no right to enforce it.  Moreover, the contract terms must clearly express that the contracting parties intended the third party to be the beneficiary of performance of the contract and have the right to maintain an action on the contract.  Though a third-party beneficiary need not be named in the contract, the terms of the contract must directly and clearly express an intent to benefit the specific party or an identifiable class of which the party asserting rights as a third-party beneficiary is a member.  A strong presumption arises that the parties were not contracting for third persons.  Thus, the implication to overcome the presumption must be so strong as to amount to an express declaration.[8]

These principles make clear that it is not enough for Pfizer to know that Dr. Simmons's research would be furthered as an incident to Pfizer's contract with BYU.  Nor is it sufficient that the Research Agreement notes that Dr. Simmons will be director of the project at BYU.  Rather,

---

[7]Docket No. 912.  Pfizer has also contended that each claim is improperly pled with respect to Simmons because only BYU is identified as the victim in each cause of action.  BYU responds that the Complaint is clear that the term BYU includes Simmons where appropriate.  Because the claims all fail for lack of standing even if properly plead, the Court need not address this argument.

[8]*Roskowske v. Iron Mountain Forge Corp.*, 897 S.W.2d 67, 72 (Mo. Ct. App. 1995) (citations omitted).

what must be clear from the contract is that both Pfizer and BYU intended Dr. Simmons to "be the beneficiary of the performance" of the Research Agreement.

The Agreement does not identify Dr. Simmons as a party to the contract: "This agreement . . . is by and between Brigham Young University . . . and Monsanto Company."[9] Furthermore, the document clearly states the purposes of the Agreement, with no reference to any benefit specifically intended to accrue to Dr. Simmons: "Whereas, MONSANTO and UNIVERSITY wish to promote the increase of useful knowledge relating to biological applications; and Whereas MONSANTO wishes to fund certain biological research at UNIVERSITY; now, therefore, the parties mutually agree and provide as follows . . . ."[10] This language, in addition to the presumption that parties do not contract for third parties unless expressly indicated, makes a strong case for denying standing to Dr. Simmons. While Simmons's "knowledge relating to biological applications" had the potential to increase due to the Research Agreement, the same could be said for any staff worker on the Project, or any person who reviewed the results of Pfizer and BYU's relationship. Though these recipients of knowledge would thereby benefit, that benefit is properly described as "incidental."

BYU notes that Dr. Simmons, by a separate agreement with BYU, may be entitled to as much as 45% of whatever profits come from the relationship with Pfizer. However, BYU has

---

[9] Docket No. 757 Ex. 2, at 1.

[10] *Id.*

presented no evidence that Pfizer was aware of this arrangement such that Pfizer could have intended Simmons to receive that benefit from the Research Agreement.[11]

Because Simmons has not shown in the Research Agreement an express declaration, or an implication so strong it equates to an express declaration, of intent to benefit him, the Court finds that he does not have standing to sue under the contract—either for breach of contract or breach of the implied duty of good faith and fair dealing.

B.     TRADE SECRET MISAPPROPRIATION (PFIZER PSJ #10)

In this Motion, Pfizer argues that Simmons has no standing to assert a trade secret misappropriation claim with respect to COX-2 because he did not own it.[12]  For the same reasons as discussed above, the Court will grant the Motion.  There is ample authority for the proposition that one must own a trade secret to sue for its misappropriation.[13]  Simmons developed his COX-

---

[11]In fact, it appears undisputed that this policy was not put in place until after the Research Agreement was signed, and BYU has offered no evidence of a prior arrangement that entitled Simmons to similar compensation.

[12]Pfizer notes that its claim could be styled as either (1) a claim that Simmons cannot make out an essential element of a trade secret claim or (2) a claim that Simmons has no standing to assert the claim because he doesn't own the secret.  The Court will analyze the claim as a standing argument.

[13]*E.g., Woodfords Family Servs., Inc. v. Casey*, 2011 WL 6218101, at *10 n.10 (D. Me. 2011) ("[I]n order to prevail on its claim for misappropriation of trade secrets, [plaintiff] must establish that it owns that which it is striving to keep secret."); *Cytodyn, Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 ("Under the UTSA, a prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret . . . .") (internal quotation marks and citation omitted).  BYU has argued that *DTM Research v. AT&T Corp.*, a Fourth Circuit case, holds that trade secret ownership is not required for a misappropriation suit.  Without stating whether BYU's interpretation of that case is correct, the Court notes that the decision is not binding, and, to the extent that the case would mean that Simmons had a claim for trade secret misappropriation, the Court will not follow it.

2 materials as an employee of BYU, and BYU owned any intellectual property developed by its employees.[14] Accordingly, any misappropriation of the materials is at BYU's and not Simmons's expense.

Pfizer also alleges in this Motion that Simmons cannot assert a fiduciary duty claim, based on the same reasoning. The Court notes that it has rejected BYU's fiduciary claims with the exception of the joint venture claim. BYU has not argued that Simmons, in his individual capacity, was a partner in the joint venture. Accordingly, the Court will grant summary judgment on this point.

## IV.  CONCLUSION

In light of the foregoing, the Court will dismiss Simmons's contract, unjust enrichment, fraud, trade secret, and fiduciary claims for lack of standing. It is therefore

ORDERED that Pfizer's Motion to Dismiss for Lack of Standing (Docket No. 740) is GRANTED. It is further

ORDERED that Pfizer's Motion for Partial Summary Judgment Re: Ownership of the COX-2 Materials (Docket No. 744) is GRANTED.

---

[14]*See* Docket No. 802, at viii ("Dr. Simmons . . . testified as follows 'Q: BYU owns your work; correct? A: Yes; my intellectual property' . . . ). In its submissions, Pfizer provided a wealth of similar statements from Simmons and other BYU employees. BYU's statement of facts, while it emphasizes strenuously that Simmons retained some sort of financial interest in the materials, does not dispute that BYU owned them. Furthermore, in the argument section of BYU's opposition, BYU does not suggest that BYU did not own the materials. Accordingly, the Court will proceed on the premise that BYU owned the materials.

DATED   March 26, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge