IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, and DR. DANIEL L. SIMMONS, <br><br> Plaintiffs, <br><br><br> vs. <br><br><br> PFIZER, INC., et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT NOS. 1 AND 12 <br><br><br><br><br> Case No. 2:06-CV-890 TS |

This matter is before the Court on Pfizer's Motion for Partial Summary Judgment Dismissing Plaintiffs' Claims for Breach of Paragraphs 1.3, 3.4, 3.5 and 3.7 of the Research Agreement[1] and Motion for Partial Summary Judgment Dismissing Plaintiffs' Claims for Breach of Paragraph 3.1 of the Research Agreement.[2]

---

[1]Docket No. 722.

[2]Docket No. 749.

I.  BACKGROUND

The facts of this case are fully set out in the Court's Order dated March 13, 2012,[3] and need not be recited here.

II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[4]  The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.[5]  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."[6]  "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

III.  DISCUSSION

In these Motions, Pfizer moves the Court for summary judgment on various of BYU's breach of contract claims.  Each claim will be dealt with in turn.

A.      PARAGRAPH 1.3

Paragraph 1.3 of the Research Agreement requires that "the PROJECT and all work assigned shall be carried out under the direction of Dr. Daniel L. Simmons (hereinafter referred

---

[3]Docket No. 896.

[4]*See* Fed.R.Civ.P. 56(a).

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6]*Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

to as 'Project Director'), and by others (e.g., employee, technician, graduate students, post doctoral fellow, or faculty member, hereinafter collectively referred to as 'Personnel'), as assigned by Project Director."[7]

BYU has argued that by taking Project information from BYU and using it at its own laboratories, Pfizer breached 1.3 because it was engaged in work that fell within the scope of the Project outside of the direction of Dr. Simmons.  Pfizer responds that the Court's Order dated October 4, 2011, (the "October Order") held that the Project was conducted solely at BYU, and therefore Pfizer's independent use of information could not have been part of the Project.

The Court agrees with Pfizer.  The work conducted at Pfizer's labs was not within the "geographical limits" of the Project.  Even though Pfizer's work may have fallen within the "subject-matter limits" of the Project,  Paragraph 4.1 clearly contemplates that Pfizer was entitled to work independently towards the goal of the cooperative effort using BYU's confidential information.  Therefore Simmons's supervision was not required over Pfizer's work, and the parties' intent that the Project only be conducted at BYU was not violated by Pfizer's independent work.  In sum, work conducted at Pfizer was not the Project, and therefore not subject to 1.3.

However, the Court would note that this finding does not equate to a blank check for Pfizer.  Even though Pfizer's independent work was not governed by the Project provisions of the Research Agreement, the Court's previous Order dated March 15, 2012, makes clear that Pfizer was not permitted to use confidential information received from BYU for a purpose other

---

[7]Docket No. 757 Ex. 2, at 1-2.

than the goal of the cooperative effort—finding a COX-2 selective NSAID.[8] Thus, to the extent Pfizer used confidential information for some other purposes, Pfizer may have breached paragraph 4.1, but not paragraph 1.3.

B.   PARAGRAPHS 3.4, 3.5, 3.7

These paragraphs set forth the role of both parties in the event that BYU pursued a patent on Project output. Each paragraph will be considered in turn.

At the outset, the Court notes that it has found that there are disputed issues of fact as to whether paragraph 3.3 was breached and that paragraphs 3.4, 3.5, and 3.7 cannot have been breached if 3.3 was not. It is undisputed that no patent application was ever filed by BYU on Project materials, and therefore, unless the failure to so file was caused by Pfizer's breach of 3.3, BYU cannot maintain a claim that the provisions governing the relationship between the parties during the patent process were violated.

1.  PARAGRAPH 3.4

Paragraph 3.4 reads in pertinent part:

> UNIVERSITY agrees to negotiate in good faith with MONSANTO the terms and conditions of a royalty-bearing license agreement with a right to sublicense with respect to patented inventions developed in the Project. . . . In the event UNIVERSITY and MONSANTO are unable to agree upon the terms and conditions of a mutually satisfactory license agreement, the UNIVERSITY will not reach a license agreement with any third party on terms and conditions more favorable to the third party than those offered by UNIVERSITY to MONSANTO.[9]

---

[8] *See* Docket No. 899, at 6.

[9] Docket No. 757 Ex. 2, at 3-4.

In its Complaint, BYU alleges that Pfizer breached Paragraph 3.4 of the Research Agreement by failing to negotiate with BYU for a license on patented material. Although there is no dispute that BYU did not patent any Project output, BYU argues that if Pfizer had upheld its obligations under the contract, BYU would have ended up with patents. Thus, by using Project output without negotiating for a license, BYU contends Pfizer breached 3.4.

Pfizer argues that paragraph 3.4 only imposes a duty to negotiate on BYU, and thus Pfizer could not have breach 3.4 by failing to negotiate with BYU. The language of the contract supports Pfizer's argument. The contract states that "UNIVERSITY agrees to negotiate in good faith with MONSANTO."[10] This language imposes an obligation to negotiate on BYU. Were it the intent of the parties to impose a duty to negotiate on both parties, one would expect the language to be: "UNIVERSITY and MONSANTO agree to negotiate with each other in good faith." Thus, Pfizer would not be obligated to enter into negotiations even if something from the Project had been patented.

This interpretation is strengthened by the language of 3.3, which requires Pfizer, upon determining that Project output is patentable, to "indicate to UNIVERSITY its interest in a license under such prospective patents."[11] By requiring that Pfizer indicate its interest in a license, the Agreement contemplates that Pfizer may have had no interest. Accordingly, it would have been permissible under the contract for Pfizer to have notified BYU that something from

---

[10] *Id.* at 3.

[11] *Id.*

the Project was patentable, but taken no steps towards negotiation due to a lack of interest. The Court therefore finds that 3.4 imposes no duty to negotiate on Pfizer.

2. PARAGRAPHS 3.5 AND 3.7

    Paragraph 3.5 states:

> With regard to the prospective patent rights referred to in paragraph 3.3, UNIVERSITY shall have the right to designate, at its sole option, either MONSANTO'S Patent Department or a patent attorney in private practice to prepare, file and prosecute patent applications. In the event UNIVERSITY shall choose MONSANTO, MONSANTO shall promptly cause its patent attorneys to file and prosecute in good faith a United States patent application on such invention.[12]

In its Complaint, BYU contends that Pfizer breached this paragraph by failing to provide BYU with the option to choose patent counsel. Pfizer responds with this Motion, wherein it contends that because it never made a patentability determination under 3.3, it was neither able nor required to provide a patent counsel option "with respect to the prospective patent rights referred to in paragraph 3.3." BYU responds that if Pfizer had not breached 3.3, then BYU would have made a patentability determination.

    Paragraph 3.7 allows BYU to review "patent applications and proposed responses to Patent Office actions thereon and issuance and maintenance of patents and to consult with MONSANTO'S patent attorneys before MONSANTO takes action thereof."[13] In its Complaint, BYU alleges that in order to exercise its rights under 3.7, it had to be informed of potentially

---

[12]*Id.* at 4.

[13]*Id.* at 5.

patentable materials. By failing to notify as required by 3.3, BYU claims that Pfizer breached the "implications" of 3.7.

The Court takes BYU's argument to be that (1) it should have been informed by Pfizer about the patentability of its inventions; (2) if it had been informed, then Pfizer would have been filing patent applications on Project materials on BYU's, rather than its own, behalf; and (3) Pfizer's filing of patent applications that did not include BYU in the process was therefore a violation of 3.5 and 3.7.[14]

The Court has previously found that there are disputed issues of fact as to whether Pfizer breached paragraph 3.3. Accordingly, the Court cannot now determine whether the patents that Pfizer obtained should have been patents BYU obtained on Project output. It follows that the Court cannot determine whether Pfizer breached paragraphs 3.5 and 3.7 at this time. Summary judgment on these paragraphs will therefore be denied.

C.   PARAGRAPH 3.1

In this motion, Pfizer asks for summary judgment on paragraph 3.1 of the Research Agreement. Paragraph 3.1 reads:

---

[14]In its reply memorandum, Pfizer suggests that these are "new" arguments because, originally, BYU alleged a breach of these claims based on its theory that the Project included work done at both BYU and Pfizer. Now, Pfizer suggests, BYU is arguing that Pfizer breached 3.5 and 3.7 by breaching 3.3. Pfizer therefore asks the Court to disregard the claims as argued by BYU in its opposition. The Court disagrees. BYU is not arguing here that a breach of 3.3 equates to a breach of 3.5 and 3.7. Rather, BYU argues that, if Pfizer had complied with paragraph 3.3, BYU would have filed for some of the patents that Pfizer obtained. Because Pfizer did not so comply, Pfizer ended up with patents that BYU should have had. In other words, BYU is still arguing that Pfizer expressly breached provisions 3.5 and 3.7 because the Pfizer patents are Project patents. Accordingly, the Court finds that, despite the Court's finding that the Project only occurred, BYU's argument on these paragraphs is essentially the same.

> Title to all discoveries and inventions, whether or not patentable or patented shall be as follows. If one or more UNIVERSITY personnel only are inventors, title shall belong to UNIVERSITY; if one or more MONSANTO personnel only are inventors, title shall belong to MONSANTO; and, if one or more personnel of UNIVERSITY and MONSANTO are joint inventors, title shall belong jointly to UNIVERSITY and MONSANTO.[15]

BYU contends that Pfizer breached paragraph 3.1 by (1) failing to provide notice that title to certain inventions arising out of the Project belonged, either wholly or in part, to BYU and (2) failing to respect BYU's rights of ownership in allegedly joint inventions.

In a previous Order, the Court made the following statement about paragraph 3.1:

> [U]nder 3.1, if either party used the other's confidential information to develop a COX-2 selective NSAID, the parties must share title to that invention. Conversely, if Pfizer had developed a COX-2 NSAID completely independent of any of the materials or knowledge that BYU shared with Pfizer, then Pfizer would not be using confidential information, 4.1 would not apply, and 3.1 would clearly confer title to that invention on Pfizer.[16]

Pfizer asks the Court to dismiss BYU's claim that notice was required under 3.1 because, according to Pfizer, the paragraph does not impose any affirmative duties on either party. Rather, it simply clarifies who owns what. BYU responds that while the language does not explicitly impose a duty to notify, that duty is implied by the covenant of good faith and fair dealing. In other words, if Pfizer was aware that something was likely a joint invention, and did not disclose that to BYU, that failure to disclose would "defeat the purposes of" paragraph 3.1 and thus violate the covenant of good faith.

---

[15]Docket No. 757 Ex. 2, at 3.

[16]Docket No. 899, at 7.

To the extent that Pfizer invented something that built off of BYU's confidential information, that invention belongs to both parties under 3.1. If BYU has proffered facts showing that Pfizer knew that BYU was not aware that a joint invention had occurred and still did not disclose to BYU its knowledge, then there is evidence that Pfizer violated the duty of good faith.[17] "That duty prevents one party to the contract to exercise a judgment conferred by the express terms of agreement in such a manner as to evade the spirit of the transaction or so as to deny the other party the expected benefit of the contract."[18] By failing to notify BYU, Pfizer would effectively frustrate the apparent intent of the parties as expressed by 3.1—that each party would acquire what it justly deserved.

As noted in a previous Order, the parties dispute how and to what degree Pfizer used confidential information. The Court therefore finds that there is a material dispute of fact as to whether Pfizer (1) knew of the existence of a joint invention (2) knew BYU was not aware and

---

[17]Pfizer contends that BYU has confused the respective legal rules governing the covenant of good faith and the imposition of implied duties. Regardless, the Court finds it is clear that BYU has alleged a breach of good faith in its Complaint that is applicable to paragraph 3.1:

> Monsanto breached its duty of the duty of good faith and fair dealing when it, among other things: 1) acted to deny Brigham Young University the expected benefit of the agreement; 2) used subterfuge and evasions to deceive Brigham Young University; [and] 3) interpreted the Agreement in a manner inconsistent with the parties' intent and Monsanto's representations for the purpose of depriving Brigham Young University of its benefits under the Agreement.

Docket No. 445, at 91. Accordingly, the Court will conduct a good faith analysis.

[18]*Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 349 (Mo. Ct. App. 2009).

(3) failed to inform BYU. Accordingly, the Court will deny summary judgment on paragraph 3.1.

Pfizer has further argued that the Complaint only contests Pfizer's failure to notify BYU of "its title to patentable discoveries resulting from the Project,"[19] while BYU's summary judgment opposition appears to defend its 3.1 claim with respect to both patentable and unpatentable inventions that arose both in and out of the Project. Pfizer contends that the Court should not allow the jury to consider BYU's new claims as they would unfairly prejudice Pfizer. The Court disagrees.

Pfizer has been aware from the start that BYU considered work done at Pfizer to be part of the Project. Though the Court recently rejected this understanding, Pfizer certainly could not say that it has been kept in the dark about BYU's intentions to argue that inventions developed by Pfizer could be subject to paragraph 3.1. Accordingly, the Court finds that Pfizer will not be "unfairly surprised" if the Court allows BYU to argue that Pfizer's actions outside of the Project breached 3.1. Furthermore, the parties hotly dispute what materials, if any, were patentable. Accordingly, Pfizer had to be prepared to defend against 3.1 accusations predicated on materials that it considered unpatentable. To the extent Pfizer relied on BYU's list of patentable Project output in preparing its defense, the Court finds that claims that non-patentable materials arising out of the relationship between the parties are so closely related to the other claims in this case that both parties are likely quite familiar with them and any claim that could be predicated upon

---

[19]Docket No. 445, at 86.

them. The Court will therefore exercise its discretion and allow BYU to pursue a breach of 3.1 claim on both patentable and unpatentable materials.

## IV. CONCLUSION

It is therefore

ORDERED that Pfizer's Motion for Partial Summary Judgment Dismissing Plaintiffs' Claims for Breach of Paragraphs 1.3, 3.4, 3.5 and 3.7 of the Research Agreement (Docket No. 722) is GRANTED IN PART AND DENIED IN PART. It is further

ORDERED that Pfizer's Motion for Partial Summary Judgment Dismissing Plaintiffs' Claims for Breach of Paragraph 3.1 of the Research Agreement (Docket No. 749) is DENIED. It is further

ORDERED that the parties submit the remaining claims in this matter to a settlement conference.

DATED   March 29, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge