IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, a Utah Non-Profit Education Institution; and Dr. DANIEL L. SIMMONS, an individual,, <br><br>                   Plaintiffs, <br><br>v. <br><br>PFIZER, INC., a Delaware corporation; G.D. SEARLE & COMPANY, a Delaware corporation; G.D. SEARLE LLC, a Delaware limited liability company; MONSANTO COMPANY, a Delaware corporation; and PHARMACIA CORPORATION, a Delaware corporation,, <br><br>                   Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS (FURTHER DISCOVERY SANCTIONS) <br><br>Case No. 2:06-cv-890 TS <br><br>District Judge Ted Stewart <br><br>Magistrate Judge Brooke Wells |

      This matter is before the Court on Brigham Young University's and Dr. Daniel Simmons'

(collectively BYU) Motion for Sanctions (Further Discovery Sanctions).[1]  This Court has held

numerous hearings regarding discovery in this case and is very familiar with the arguments made

by the parties and the circumstances and background giving rise to the discovery disputes.  Given

the Court's familiarity with the case and pursuant to Local Rule 7-1(f) of the Rules of Practice

for the United States District Court for the District of Utah, the Court concludes that oral

argument would not be materially helpful and is not necessary.  Accordingly, the Court will

determine the motion on the basis of the written memoranda.[2]  The Court has carefully

considered the memoranda along with hundreds of pages of attachments.  Having reviewed the

---

[1] Docket no. 762.

[2] *See* DUCivR 7-1(f) (2011).

materials from the parties as well as relevant case law the Court finds the sanctions sought by Plaintiffs in this motion are not warranted and therefore DENIES the motion as set forth below.

## I. BACKGROUND

The facts of this case are set forth fully in the Court's prior discovery sanctions order dated October 28, 2009.[3]  Additionally, Chief Judge Ted Stewart has recently aptly summarized the facts of this case in an order dated March 13, 2012,[4] so the Court need not repeat those facts here.  The additional facts mentioned below are pertinent to the instant matter.

On October 28, 2009, the Court entered an order granting in part and denying in part BYU's initial request for sanctions.[5]  In that order the Court considered the factors set forth by the Tenth Circuit in *Ehrenhaus v. Reynolds*,[6] and found that Pfizer's conduct as of that time rose to a level justifying the entry of monetary sanctions in the amount of $852,315.80.  The Court noted that Pfizer's conduct had not risen to a level of willful and intentional disobedience, but "Pfizer's production [had] been negligent to the point that it closely approach[ed] a finding of bad faith."[7]  Notwithstanding Pfizer's conduct, which the Court concluded had come about as close as a party could to a finding of bad faith, the Court declined BYU's request to enter more severe sanctions.[8]  Instead, the Court adopted the approach set forth in *Ehrenhaus* trying the efficacy of lessor sanctions before proceeding, if warranted, to more severe sanctions.

---

[3] Docket no. 303.

[4] Docket no. 896.

[5] *See* Order dated October 28, 2009, docket no. 303.

[6] 965 F.2d 916, 921 (10th Cir. 1992).

[7] October 28, 2009 order p. 14.

[8] *See id.*  p. 14-18.

In March of 2010, BYU filed a second motion for sanctions arguing that there had been further misconduct by Pfizer during the discovery process.[9]  Approximately two months later, the Court denied that motion without prejudice noting the length of the memorandum in support of the motion and BYU's failure to more narrowly tailor the issues regarding Pfizer's compliance with discovery.[10]

BYU filed a third Motion for Dispositive Sanctions in July 2010.  BYU asked the Court to "strike Pfizer's answer, find Pfizer liable to BYU, and limit trial in this case to damages,"[11] or in the alternative, "allow the jury to presume that missing information would have been detrimental to Pfizer."[12]  The Court denied without prejudice this third motion for discovery sanctions.  In its order the Court cited to the numerous discovery disputes in this case and the need to conserve the resources of both the parties and the Court.  Seeking to avoid "piecemeal litigation" of repeated motions for sanctions, the Court determined it best to allow the case to proceed to the conclusion of discovery and then if appropriate BYU could file a motion for dispositive sanctions.

BYU filed the instant Motion for Sanctions (Further Discovery Sanctions) in November 2011 following the close of discovery.[13]  In support of its Motion for Further Discovery Sanctions BYU filed a memorandum consisting of approximately 132 pages along with hundreds of pages of exhibits.[14]  The Court denied BYU's request to file this over length memorandum and required BYU to file a new memorandum shorter in length with a "Statement of Facts of not

---

[9] Docket no. 351.

[10] *See* Order dated May 4, 2010 p. 2.

[11] Mtn. p. 2, docket no. 453.

[12] *Id.*

[13] Docket no. 762.

[14] Docket nos. 763 and 764.

more than 60 pages with the remaining sections complying with the rules."[15]  BYU complied

with the Court's order.[16]  Defendants Pfizer Inc. et al filed an opposition to BYU's motion on

January 24, 2012.[17]  BYU filed its reply on February 24, 2012.[18]

## II. STANDARD OF REVIEW

Rule 37 of the Federal Rules of Civil Procedure permits a court to impose a number of

sanctions for a party's failure to comply with a court's discovery orders.  Such sanctions include,

but are not limited to:

(i)  directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
(ii)  prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii)  striking pleadings in whole or in part;
(iv)  staying further proceedings until the order is obeyed;
(v)  dismissing the action or proceeding in whole or in part;
(vi)  rendering a default judgment against the disobedient party; or
(vii)  treating as contempt of court, the failure to obey any order except an order to submit to a physical or mental examination.[19]

The Court has discretion to impose any such sanction that is "just and related to the

particular claim which was at issue in the order to provide discovery."[20]  But, the Court's

discretion "'is limited in that the chosen sanction must be both just and related to the particular

claim which was at issue in the order to provide discovery.'"[21]

In general, before imposing severe sanctions such as striking a parties' answer, courts

should consider the *Ehrenhaus* factors.  The Tenth Circuit set forth these factors in affirming a

---

[15] Order dated November 28, 2011, docket no. 785.

[16] Docket no. 786.

[17] Docket no. 853.

[18] Docket no. 878.

[19] Fed. R. Civ. P. 37(b)(2)(A) (2009).

[20] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

[21] *Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005) (quoting *Ehrenhaus*, 965 F.2d at 920).

district court's decision to dismiss a complaint with prejudice as a sanction for violating a discovery order. While not establishing a "rigid test,"[22] the following factors should be considered and applied: (1) the degree of actual prejudice to the other party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[23] These factors are not exhaustive, nor are the factors necessarily of equal weight.[24] "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction."[25] Because of this strong preference, the Tenth Circuit has held that a "dismissal or default sanctions order should be predicated on '"willfulness, bad faith, or [some] fault"' rather than just a simple '"inability to comply."'"[26]

### III. DISCUSSION

As noted by the Tenth Circuit in *Ehrenhaus*, it is proper for a court to attempt the efficacy of lesser sanctions before entering severe sanctions like those sought by BYU. Thus, the question before the Court is, does Pfizer's conduct following the entry of monetary sanctions in the amount of $852,315.80 rise to a level warranting dispositive sanctions and the other sanctions sought by BYU?

---

[22] *Ehrenhaus*, 965 F.2d at 921.

[23] *See id.*; *see also Procter & Gamble Co.*, 427 F.3d at 738; *Gripe v. City of Enid*, 312 F.3d 1184, 1187 (10th Cir. 2002).

[24] *See Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005).

[25] *Ehrenhaus*, 965 F.2d at 921 (internal quotation marks omitted) (emphasis added).

[26] *Lee v. Max International, LLC.*, 638 F.2d 1318, 1321 (10th Cir. 2011) (alteration in original) (quoting *Archibeque v. Atchison Topeka & Santa Fe Ry.*, 70 F.3d 1172, 1174 (10th Cir. 1995) (quoting *Nat'l Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 640 (1976)).

In its motion, BYU seeks an order from the Court striking Pfizer's answer and limiting this case to a trial regarding damages.[27]   In the alternative, BYU seeks the following relief:

- An order precluding Pfizer from arguing or presenting evidence at trial that BYU's COX-2 clones and antibodies did not work or did not express protein;

- An order allowing BYU to put on evidence at trial regarding Pfizer's discovery failures;

- An order in the nature of a spoliation instruction or adverse inference instruction;

- An order precluding Pfizer or its damage expert from using estimated data to argue that BYU has understated Pfizer's costs in BYU's damage calculations.[28]

In support of these sanctions BYU argues Pfizer lost or destroyed critical documents when it had a duty to preserve them.  BYU next asserts that Pfizer's records' management practices are unreasonable and have made relevant documents practically inaccessible.  In addition, Pfizer has repeatedly disregarded this Court's discovery orders.  Next, BYU argues "Applying the *Ehrenhaus* factors to the totality of Pfizer's discovery abuse justifies further serious sanctions."[29]  And finally, BYU argues that Pfizer's conduct has not changed from the Court's entry of its prior sanctions order and this justifies serious sanctions including dismissal.  Thus, BYU argues that this Court should look at the totality of the case in determining sanctions and also Pfizer's conduct since its October 2009 order.  BYU primarily cites to *Lee v. Max International, LLC.*[30] and *Phillip M. Adams & Assoc. v. Dell, Inc.*[31]

---

[27] Mem. in sup. p. 81.

[28] *Id.*

[29] Reply p. 24.

[30] 638 F.3d 1318.

[31] 621 F.Supp.2d 1173 (D. Utah 2009).

In *Lee*, the Tenth Circuit upheld the undersigned's recommendation to the district court that it grant the defendant's motion to dismiss as a sanction for the plaintiffs' misconduct.[32]  The plaintiffs in *Lee* were given three opportunities to produce requested relevant discoverable materials.  Yet, they failed to comply.[33]  This included repeated failures after twice being ordered to comply by this Court.  To further aggravate the situation, the plaintiffs filed a misleading affidavit stating that they had complied, but then produced missing records after filing the affidavit.  In short, the plaintiffs conduct in *Lee* was a blatant and willful disregard for the Court's authority and a stark failure to comply with a party's discovery obligations under the Federal Rules.[34]  Tellingly, the materials plaintiffs failed to produce were also unquestionably under their control.

While helpful to the current analysis the Court finds this case is not analogous to *Lee*.  Unlike in *Lee*, here there are questions about who controlled certain alleged missing discovery materials.  "Discovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered."[35]  Parties can turn the control of documents into a shell game by hiding certain materials in subsidiaries or sister corporations.  But, the Court is not convinced by BYU's arguments that this has occurred in the instant matter.  Rather, changes in control of certain materials were the natural result of business transactions.  Further, the Court finds that while Pfizer's conduct during discovery has not always been commendable, it does not rise to the level

---

[32] *See Lee*, 638 F.3d at 1319.

[33] *See id.*

[34] *See id.* at 1321.

[35] *Id.* at 1322.

7

of plaintiffs' misconduct in *Lee*.  Thus, the analysis in *Lee* is helpful, but my decision in that case is not controlling of the current matter.

In *Adams & Assoc.*,[36] Judge Nuffer of this Court held that the defendant company had a duty to preserve evidence which it failed to do.  This failure resulted in spoliation of evidence that warranted the entry of sanctions.  A determination of the exact sanctions, however, was left until after the close of discovery when the parties were directed to provide the court with additional information regarding the evidence that was missing.[37]

 BYU asserts that just like in *Adams* Pfizer had a duty to preserve documents and it failed to do so.  BYU urges this Court to adopt a preservation date of April 1992, which according to BYU was the date by which Monsanto, Pfizer's predecessor in interest, anticipated litigation regarding termination of the Research Agreement.  The facts do not support BYU's argument for designation of this date.  A party's duty to preserve evidence arises when the party "knew, or should have known, that litigation was imminent."[38]  Here, the Court is not convinced that Monsanto knew or should have known in April 1992 that litigation was imminent.  The Research Agreement was signed by "July 8, 1991"[39] and on March 27,1992, BYU sent a letter "acknowledging the termination of the Research Agreement"[40] pursuant to mutual agreement.

In addition, an aggrieved party seeking an adverse inference—such as BYU—must also prove bad faith.  "Mere negligence in losing or destroying records is not enough because it does

---

[36] 621 F.Supp.2d 1173.

[37] *See* 621 F.Supp.2d at 1195.

[38] *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009).

[39] Amended Compl. ¶ 77.

[40] *Id.* at ¶ 121.  BYU alleges in its Complaint that Monsanto inappropriately terminated the agreement after successfully testing for COX-2 selectivity.  Such contentions, however, are not material to the Court's instant decision.

not support an inference of consciousness of a weak case."[41]   BYU takes issue with Pfizer's records' management practices and specifically attacks its record keeping facility, the PRSC, arguing that Pfizer has used it to spoliate or hide documents.  BYU, however, has failed to show that Pfizer's record management practices rise to a level more than mere negligence.  Moreover, according to Pfizer, BYU has declined opportunities to search the PRSC facility.  Thus the Court finds BYU has failed to prove bad faith.

Finally, BYU seeks to expand Pfizer's duty to preserve, asserting that Pfizer's duty arises not only from an awareness of this action, but rather from other sources such as Monsanto's document retention policies, Pfizer's document retention policies and its obligations to the Federal Government as well as Pfizer's litigation with other parties.  As noted by the Tenth Circuit, this line of argument conflates two very different things.  "When you violate a corporate policy you may well be in trouble with your boss, but that doesn't necessarily mean you have committed a tort."[42]   A violation of private corporate policy does not always equate to a violation of the law and BYU fails to establish a connection between the duty Monsanto or Pfizer had to itself and the duty Pfizer has to BYU to provide discovery in this litigation.

In similar fashion, the Court cannot see how a duty owed to the Federal Government, which was allegedly violated, translates into sanctionable conduct toward BYU.  Any recourse for such misconduct would belong to the Government and not a private third party.  Likewise, any duty Pfizer owed parties in other litigation would belong to that party and not BYU.  BYU asserts that "The duty to preserve runs to the legal system generally."[43]   The Court disagrees.  While litigation can help "sensitize" a defendant to issues that may arise in other lawsuits and

---

[41] *Abramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997).

[42] *Johnson v. Liberty Mut. Fire Ins. Co.*, 648 F.3d 1162, 1165 (10th Cir. 2011).

[43] Reply p. 3.

trigger a need to preserve in certain instances, BYU's suggested duty is simply too broad.  It is difficult for the Court to imagine how a party could ever dispose of information under such a broad duty because of the potential for some distantly related litigation that may arise years into the future.  Thus, the Court finds this case is distinguishable from *Adams*.

Admittedly, the conduct of Defendants and even Plaintiffs[44] has not been perfect since the entry of its prior order regarding discovery sanctions.  For example, following a motion to compel by BYU the Court found it necessary to order Pfizer to produce an index of all scientific notebooks that may be relevant to the issues in this case.[45]  Later, the Court again found it necessary to order Pfizer to submit an affidavit about whether BYU was denied access to any biological samples at the Lancaster facility.[46]  Nonetheless, the Court finds that overall, the conduct of Pfizer following the Court's entry of its prior sanctions order, has improved.  Indeed, there have been times when an actual spirit of cooperation existed among the parties and counsel.

Additionally, as noted by the Court in its prior sanctions order,[47] the problems with discovery in this case cannot be viewed in a vacuum.  One cannot simply overlook the important fact that the majority of documents and facts giving rise to this dispute come from events in the early 1990s.  The passage of time can have an impact on any case—memories fade, documents become worn or lost and they can change hands through business transactions such as mergers. Witnesses may forget whether they did certain things—such as whether they kept or checked in a laboratory notebook.  Evidence may simply be discarded as a result of good faith business procedures.  Clearly there is a duty on a party to preserve evidence when it is anticipating

---

[44] For example the Court entered sanctions against BYU due to a questionable motion it brought to disqualify Pfizer's entire team of lawyers that unreasonably multiplied the proceedings in this case.  *See* docket no. 580.  *See also* 28 U.S.C. § 1927.

[45] *See* Order Granting in Part Motion to Compel, docket no. 499.

[46] *See* Order from April 7, 2011 status conference, docket no. 624.

[47] *See* October 28, 2009 order p. 14.

litigation,[48] yet such a duty cannot prevent the inadvertent destruction or misplacement of evidence that can occur before such a duty arises.  Nor can it prevent the fading of human memories.

The Court finds many of BYU's complaints concern documents that likely fall within such categories.  Evidence changed hands and was discarded before a duty to preserve was in place.  The "Federal Rules protect from sanctions those who lack control over the requested materials or who have discarded them as a result of good faith business procedures."[49]

Other materials were eventually produced in a time frame unacceptable to BYU.  While not always commendable, a "rolling production" is not unexpected in a very large case such as this.  Each case should be examined in the context of the claims made and the discovery sought.  Given certain circumstances it may be impractical to think that a party should be expected to produce the entire galaxy of relevant documents in one or two weeks or even after one or two requests for production.  The Court does not seek to minimalize the seriousness of the discovery issues in this case and the sanctions it entered against Pfizer, but discovery is a process of give and take between the parties in litigation.  It is expected that a party requests certain items, reviews those items and then makes further requests.  It is also expected that a party in good faith comply with discovery requests and only when necessary seek Court guidance about the production of items.

The Court has given much time and consideration to BYU's arguments and has carefully reviewed the documents submitted in support of its motion.  The Court has also once again reviewed the history of this case.  After doing so, the Court finds Pfizer's conduct following the entry of the Court's order of monetary sanctions has not risen to a level warranting the sanctions

---

[48] *See Adams & Assocs.*, 621 F.Supp.2d at 1190-91.

[49] *Lee*, 638 F.3d at 1321.

now sought be BYU.  Instead, the Court finds that lessor sanctions have proven fruitful to the judicial system's strong predisposition toward resolving a case on its merits.[50]  The Court now turns to BYU's specific requests in its motion.

Dismissal of an action as a sanction for discovery violations represents an extreme sanction and is appropriate only in cases of willful misconduct.[51]  Here, after viewing the totality of the circumstances in this case, the Court finds Pfizer has not acted willfully or in bad faith. Thus, it is improper to essentially declare BYU the prevailing party and strike Pfizer's answer. The Court, therefore, declines to do so.

Next, the Court finds BYU has failed to establish an entitlement to an order precluding Pfizer from arguing or presenting evidence at trial that BYU's COX-2 clones and antibodies did not work.  BYU's support for this requested relief is filled with speculation and arguments implying that because Pfizer failed to produce any evidence showing the COX-2 clones and antibodies did work, then Pfizer must have destroyed or hidden such evidence.  Such arguments are based upon BYU's alleged theory of the case and are presumably to be argued at trial subject to further trial court rulings.

The Court also declines BYU's invitation to enter a spoliation instruction or adverse inference instruction.  As stated previously, an aggrieved party must prove bad faith "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case."[52]  BYU has failed to establish bad faith since the imposition of the Court's prior sanctions order and BYU's arguments for this requested relief are once again based in part on the premise that missing evidence regarding its COX-2 clones establishes the

---

[50] *See Ehrenhaus*, 965 F.2d at 921.

[51] *See id.* at 920.

[52] *Abramburu*, 112 F.3d at 1407.

fact that Pfizer destroyed or hid such evidence.  Such arguments are better left for presentation at trial to be judged by the discerning eyes of a jury and subject to district court rulings.  While the discovery process has been far from perfect, there is nothing before the Court indicating a willful or blatant attempt by Pfizer to hide or destroy evidence after the entry of the October 2009 sanctions order.

In similar fashion the Court is not persuaded that it should enter an order precluding Pfizer or its damage expert from using estimated data to argue that BYU has understated Pfizer's costs in BYU's damage calculations.  Evidence of damage calculations should be presented to the jury when appropriate.

Finally, the Court notes that denying BYU's motion does not equate to a ruling on a motion in limine preventing BYU from introducing evidence regarding Pfizer's conduct during trial.  Nor, does this Court's decision fatally impact BYU's desire to obtain certain jury instructions regarding spoliation.  Those issues, in the Court's view, are better left for a determination at trial as the evidence is presented by both sides before the critical eyes of a jury.

IV. CONCLUSION

Based upon the Court's discretion in resolving discovery disputes[53] and after a thorough review of both the entire history of this case and Pfizer's conduct following the Court's prior sanctions order entered in October 2009, it is

ORDERED that BYU's Motion for Sanctions (Further Discovery Sanctions) is DENIED.


DATED this 16 April 2012.


Brooke C. Wells
United States Magistrate Judge

---

[53] *See Ehrenhaus*, 965 F.2d at 920 ("Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make.").