Brent O. Hatch (5715)
  bhatch@hjdlaw.com
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

William F. Lee (*pro hac vice*)
  william.lee@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Richard T. Mulloy (*pro hac vice*)
  richard.mulloy@dlapiper.com
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California  92101-4297
Telephone:  (619) 699-4787
Facsimile:  (619) 764-6787

*Attorneys for Defendants Pfizer Inc., G.D. Searle LLC, and Pharmacia Corporation*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, a Utah non-profit educational institution; and DANIEL L. SIMMONS, an individual,<br><br>      Plaintiffs,<br><br>vs.<br><br>PFIZER INC., a Delaware corporation, G.D. SEARLE & COMPANY, a Delaware corporation, G.D. SEARLE LLC, a Delaware limited liability company, MONSANTO COMPANY, a Delaware corporation; and PHARMACIA CORPORATION, a Delaware corporation,<br><br>      Defendants. | **DEFENDANTS' PROPOSED JURY INSTRUCTIONS AND VERDICT FORM**<br><br>Case No. 2:06CV00890<br><br>Judge: Ted Stewart<br><br>Magistrate Judge: Brooke C. Wells |

Defendants Pfizer, Inc., G.D. Searle LLC (improperly captioned in the Complaint by the

addition of named Defendant "G.D. Searle & Company"), and Pharmacia Corporation f/k/a

Monsanto Company (improperly captioned in the First Amended Complaint by the addition of

named Defendant "Monsanto Company") (collectively referred to herein as "Defendants")[1]

hereby submit their proposed jury instructions and verdict form. Defendants have included the

Court's standard general instructions at the beginning of the document and their proposed

substantive instructions and verdict form[2] thereafter.  Consistent with the Court's April 23, 2012

Trial Order, where Defendants have relied upon a specific form instruction, they have identified

the exact nature of any modifications to such form instruction.

---

[1]  An entity then known as the Monsanto Company was the original party to the Research
Agreement at issue in this case.  At the time of the Research Agreement, Monsanto Company
included its subsidiary pharmaceutical company, G.D. Searle & Co.  In connection with a merger
effective in 2000, the former Monsanto Company changed its name to Pharmacia Corporation,
which, through a subsequent transaction, became a wholly owned subsidiary of Pfizer, Inc. in
2003.  In this Memorandum, "Monsanto" will refer to the Monsanto Company that was the
original party to the Research Agreement in 1991 (which included G.D. Searle & Co.), although
that company is now actually Pharmacia Corporation.  Although a separate company called
"Monsanto Company" exists today, it is not a party to this lawsuit.

[2] Defendants note that they prepared their proposed verdict form in response to a last-minute
request for an exchange of verdict forms made the same day as this submission.  Accordingly,
the proposed verdict form is a working draft, and Defendants reserve all rights to supplement or
amend the proposed verdict form as appropriate.

**OPENING INSTRUCTIONS**

**STANDARD GENERAL INSTRUCTION NO. 1**

It will be your duty to find from the evidence what the facts are.  You, and you alone, are the judges of the facts.  You will then have to apply to those facts the law as the Court will give it to you.  You must follow that law whether you agree with it or not.

Nothing the Court may say or do during the course of the trial is intended to indicate nor should be taken by you as indicating what your verdict should be.

Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors; and to arrive at a verdict by applying the same rules of law, as given in the instructions of the Court.

**STANDARD GENERAL INSTRUCTION NO. 2**

The evidence from which you will find the facts will consist of the testimony of witnesses, documents and other things received into the record as exhibits, and any facts the lawyers agree or stipulate to, or that the Court may instruct you to find.

Certain things are not evidence and must not be considered by you.  I will list them for you now:

1.  Statements, arguments and questions by lawyers are not evidence.

2.  Objections to questions are not evidence.  Lawyers have an obligation to their clients to make an objection when they believe evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the Court's ruling on it.  If the objection is sustained, ignore the question.  If it is overruled, treat the answer like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3.  Testimony that the Court has excluded or told you to disregard is not evidence and must not be considered.

4.  Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

**STANDARD GENERAL INSTRUCTION NO. 3**

This is a civil case. Plaintiffs has the burden of proving their case by what is called the preponderance of the evidence. That means Plaintiffs has to produce evidence which, considered in the light of all the facts, leads you to believe that what Plaintiffs claims is more likely true than not. To put it differently, if you were to put Plaintiffs' and Defendant's evidence on opposite sides of the scales, Plaintiff would have to make the scales tip somewhat on their side. If Plaintiff fails to meet this burden, the verdict must be for Defendant.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case and you should therefore put it out of your mind.

**STANDARD GENERAL INSTRUCTION NO. 4**

The Jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony.  You should take into consideration their demeanor upon the witness stand, their apparent intelligence or lack of intelligence, their means of knowledge of the facts testified to, the interest, if any, which any witness may have in the outcome of this trial, the prejudice or motives, or feelings of revenge, if any, which have been shown by the evidence.  In so doing, you may take into consideration all of the facts and circumstances in the case and give such weight as you think the same are entitled to, in light of your experience and knowledge of human affairs.

**STANDARD GENERAL INSTRUCTION NO. 5**

During the trial it may be necessary for me to talk with the lawyers out of your hearing, either by having a bench conference here while you are present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence, and to avoid confusion and error. We will, of course, do what we can to keep the number and length of these conferences to a minimum.

**STANDARD GENERAL INSTRUCTION NO. 6**

Next, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone, including fellow jurors, or permit anyone to discuss it with you.  Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case.

Second, do not read or listen to anything touching on this case in any way.  Do not watch or listen to any news reports concerning this trial on television or on radio, and do not read any news accounts of this trial in a newspaper or on the internet.  If anyone should try to talk to you about it, bring it to the Court's attention promptly.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

**STANDARD GENERAL INSTRUCTION NO. 7**

At the end of trial, you must make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

**STANDARD GENERAL INSTRUCTION NO. 8**

The trial will now begin.  First, each side may make an opening statement.  An opening statement is neither evidence nor argument; it is an outline of what that party intends to prove, offered to help you follow the evidence.

Next, Plaintiffs will present their witnesses and defendant may cross-examine them.  Then Defendant will present its witnesses and Plaintiffs may cross-examine them.

After that, the Court will give you instructions on the law.  Then the attorneys will make their closing arguments to summarize and interpret the evidence for you.

You will then retire to deliberate on your verdict.

**CLOSING INSTRUCTIONS**

**STANDARD GENERAL INSTRUCTION NO. 9**

MEMBERS OF THE JURY:

Now that you have heard the evidence, it becomes my duty to give you the instructions of the Court as to the law applicable to this case.

It is your duty as jurors to follow the law as stated in the instructions of the Court, and to apply the rules of law to the facts as you find them from the evidence in the case.

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.

Neither are you to be concerned with the wisdom of any rule of law stated by the Court. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the Court; just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence of the case.

You are to disregard any evidence offered at trial and rejected by the Court. You are not to consider questions of counsel as evidence. You are not to consider the opening statements and the arguments of counsel as evidence. Their purpose is merely to assist you in analyzing and considering the evidence presented at trial.

The Court did not by any words uttered during the trial or in these instructions give or intimate, or wish to be understood by you as giving or intimating, any opinions as to what has or has not been proven in this case or as to what are or are not the facts of the case.

**STANDARD GENERAL INSTRUCTION NO. 10**

Plaintiffs Brigham Young University and Dr. Daniel Simmons have the burden of proving their claims by a preponderance of the evidence. To prove by a preponderance of the evidence means to prove something is more likely so than not so. It does not mean the greater number of witnesses or exhibits. It means the evidence that has the more convincing force when taken on the whole compared to the evidence opposed to it. It means the evidence that leads you the jury to find that the existence of the disputed fact is more likely true than not true.

Any finding of fact you make must be based on probabilities, not possibilities. A finding of fact must not be based on speculation or conjecture.

When I say in these instructions that a party has the burden of proof on any proposition, or use the expression "if you find" or "if you determine," I mean that you must be persuaded, considering all the evidence in the case, that the proposition is more probably true than not true.

In determining whether any disputed fact has been proven by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits.

If a party fails to meet its burden of proof, or if the evidence weighs so evenly that you are unable to say that there is a preponderance on either side, you must resolve the question against the party who has the burden of proof on that issue and in favor of the opposing party.

**STANDARD GENERAL INSTRUCTION NO. 11**

You have been chosen and sworn as jurors in this case to try the issues of fact presented by the allegations of the complaint of Plaintiff, and the answer thereto of Defendant. You are to perform this duty without bias or prejudice as to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences.

**STANDARD GENERAL INSTRUCTION NO. 12**

Unless you are otherwise instructed, the evidence in this case consists of the sworn testimony of the witnesses, regardless of who may have called them; and all exhibits received in evidence regardless of who may have produced them; and all facts which may have been admitted or stipulated; and all facts and events which may have been judicially noticed.

Any evidence as to which an objection was sustained by the Court, and any evidence ordered stricken by the Court, must be entirely disregarded.

Unless you are otherwise instructed, anything you may have seen or heard outside the courtroom is not evidence, and must be entirely disregarded.

**STANDARD GENERAL INSTRUCTION NO. 13**

There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case. One is direct evidence -- such as the testimony of an eyewitness. The other is indirect or circumstantial evidence -- the proof of a chain of circumstances pointing to the existence or nonexistence of certain facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the Jury find the facts in accordance with the preponderance of all evidence in the case, both direct and circumstantial.

**STANDARD GENERAL INSTRUCTION NO. 14**

In determining the weight to be given to an opinion expressed by any witness who did not testify as an expert witness, you should consider his or her credibility, the extent of his or her opportunity to perceive the matters upon which his or her opinion is based and the reasons, if any, given for it. You are not required to accept such an opinion but should give it the weight to which you find it entitled.

**STANDARD GENERAL INSTRUCTION NO. 15**

During the trial of this case, certain testimony has been presented to you by way of a deposition, consisting of sworn recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case.  The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented in writing under oath or on a video recording played on a television set.  Such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighed, and otherwise considered by the jury, in so far as possible, in the same way as if the witness had been present, and had testified from the witness stand.

**STANDARD GENERAL INSTRUCTION NO. 16**

You, as jurors, are the sole judges of the credibility of witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of the witnesses, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence to the contrary of the testimony given.

You should carefully scrutinize all of the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief.  Consider each witness's intelligence, motive and state of mind, and demeanor and manner while on the stand.  Consider the witness's ability to observe the matters as to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony.  Two or more persons witnessing an incident or a transaction may simply see or hear it differently and innocent misrecollection, like failure of recollection, is not an uncommon experience.  In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.

**STANDARD GENERAL INSTRUCTION NO. 17**

It is the duty of the attorney on each side of the case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible.  You should not show prejudice against any attorney or his or her client because the attorney has made objection.

Upon allowing testimony or other evidence to be introduced over the objection of any attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of any such evidence.  As stated before, the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have said if he or she had been permitted to answer any question.

**STANDARD GENERAL INSTRUCTION NO. 18**

During the course of the trial, I may have occasionally asked questions of a witness, in order to bring out facts not then fully covered in the testimony.  Do not assume that I hold any opinion on the matters to which my questions may have related.

**STANDARD GENERAL INSTRUCTION NO. 19**

Upon retiring to the jury room you must elect one of your members to act as your foreperson.  The foreperson will preside over your deliberations and will be your spokesperson here in court.

The verdict must represent the collective judgment of the jury.  In order to return a verdict, it is necessary that each juror agree to it.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors for the mere purpose of returning a unanimous verdict.

Remember at all times, you are not partisans.  You are judges - judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

Your verdict must be based solely upon the evidence received in the case.  Nothing you have seen or read outside of court may be considered.  Nothing that I have said or done during the course of this trial is intended in any way to somehow suggest to you what I think your verdict should be.  Nothing said in these instructions and nothing in any form of verdict prepared for your convenience is to suggest or convey to you in any way or manner any intimation as to what verdict I think you should return.  What the verdict shall be is the exclusive duty and responsibility of the jury.  As I have told you many times, you are the sole judges of the facts.

The Court has prepared a verdict form for your convenience.  You are instructed that your answers to the interrogatories on the verdict form must be consistent with the instructions I

have given you and with each other.

When you have reached a unanimous agreement as to your verdict, your foreperson will fill in, date and sign the verdict form upon which you have unanimously agreed.  When you have reached unanimous agreement as to your verdict, the foreperson shall inform the bailiff and you shall return to the courtroom.

If it becomes necessary during your deliberations to communicate with the Court, you may send a note by the bailiff.  But bear in mind that you are not to reveal to the Court or to any person how the jury stands, numerically or otherwise, on the question before you, until after you have reached a unanimous agreement.

**STANDARD GENERAL INSTRUCTION NO. 20**

The attitude and conduct of jurors at the outset of their deliberations are matters of considerable importance.  It is rarely productive or good for a juror, upon entering the jury room, to make an emphatic expression of his or her opinion on the case or to announce a determination to stand for a certain verdict.  When one does that at the outset, his or her sense of pride may be aroused, and he or she may hesitate to recede from an announced position if shown that it is wrong.

**STANDARD GENERAL INSTRUCTION NO. 21**

During your deliberations, you are able as a group to set your own schedule for deliberations.  You may deliberate as late as you wish or recess at an appropriate time set by yourselves.  You may set your own schedule for lunch and dinner breaks.

However, I do ask that you notify the court by a note when you plan to recess for the evening.

## INSTRUCTIONS FOR SPECIFIC ISSUES AND CLAIMS

**PFIZER PROPOSED INSTRUCTION NO. 1 – Breach of Contract; Introduction**

BYU has alleged that Defendant breached the Research Agreement between the parties. A breach of a contract occurs when a party to the contract fails, without legal excuse, to comply with the terms of the contract – that is when a party to the contract fails to do something it agreed to do or does something that the party agreed not to do when a party to the contract.  Your verdict must be for BYU only if you ~~believe~~ find that it has proved each of the following four elements below by a preponderance of the evidence:

First, that BYU and Defendant entered into a valid and binding agreement;

Second, BYU performed its obligations under the agreement;

Third, Defendant did not perform its obligations under the agreement; and

Fourth, BYU was damaged as a result of Defendant's failure to perform.

In this case, the parties agree that the August 1, 1991 Research Agreement ("Research Agreement") was a valid and binding agreement and you should take that as a given in your deliberations.  However, if you find that BYU has failed to prove any of the remaining elements by a preponderance of the evidence, you must find for Defendant.


Source:  MAI 26.06

- 25 -

**PFIZER PROPOSED INSTRUCTION NO. 2 – Breach of Contract; BYU's Performance of their Contractual Obligation**

In order to prevail on its breach of contract claim, BYU must prove by a preponderance of the evidence that it either performed all its obligations under the contract or was excused from doing so. To meet its burden as to this element, BYU must demonstrate that it did everything required of it under the Research Agreement.

For example, Defendant alleges that BYU did not perform all of its obligations under ¶ 2.1 of the Research Agreement. BYU must prove by a preponderance of the evidence that it performed all of their obligations under ¶ 2.1 of the Research Agreement. If you find that BYU has not proven that they performed all of its obligations under ¶ 2.1 of the Research Agreement by a preponderance of the evidence, then you must find for Defendant.

Source:   Restatement (Second) of Contracts § 237; McKnight v. Midwest Eye Inst. of Kansas City, Inc., 799 S.W.2d 909, 915 (Mo. Ct. App. 1990).

**PFIZER PROPOSED INSTRUCTION NO. 3 – Good Faith and Fair Dealing**

In every contract or agreement, there is an implied promise of good faith and fair dealing. The implied covenant exists to prevent one party from using express contract terms in such a way as to evade the spirit of the transaction or to deny a party an expected contract benefit. Accordingly, a party acts in good faith if the party's conduct is faithful to the common purpose of the contract and is consistent with the justified expectations of the other party of the contract.

The implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract. To prove its claim, BYU must prove the existence and breach of an implied promise separate from the express terms of the contract.

Your verdict must be for BYU only if you find that the preponderance of evidence establishes that:

1.     BYU had the right to receive certain benefits under the contract;

2.     Defendant took actions to deny BYU's right to receive those benefits; and

3.     Defendant acted in bad faith in taking those actions.

If you find that BYU has failed to prove any of these elements by a preponderance of the evidence, you must find for Defendant.

For example, if you find that BYU has failed to prove by a preponderance of the evidence that Defendant acted in bad faith, you must find for Defendant. In a contract action such as this, "bad faith" means that one party abuses its rights under the contract with the sole intention of harming the other party, *i.e.*, engaged in subterfuge and evasion. It is "bad faith" for a party who has agreed to perform certain obligations under a contract to refuse to do so unless the other party pays money or gives up property rights the other party is not required to pay or give up under the contract. It is not "bad faith" for a person to insist that the other party do what the contract requires or to refuse to make additional concessions that would make it easier for the

other side to perform its obligations under the contract.

Source:  Restatement (Second) of Contracts § 305; <u>Missouri Consol. Health Care Plan v. Cmty.</u> <u>Health Plan</u>, 81 S.W.3d 34, 45-49 (Mo. Ct. App. 2002); <u>Koger v. Hartford Life Ins.</u>, 28 S.W.3d 405, 412 (Mo. Ct. App. 2000).

**PFIZER PROPOSED INSTRUCTION NO. 4 – Uniform Trade Secrets Act**

BYU alleges that Defendant misappropriated BYU's trade secrets.

To establish a violation of the Uniform Trade Secrets Act, BYU must prove by a preponderance of the evidence that:  (1) BYU possessed trade secret(s); (2) BYU communicated the trade secret(s) to Defendant under an express or implied agreement limiting disclosure of the trade secret(s); and (3) Defendant misappropriated BYU's trade secrets.

If you find that BYU has failed to prove any of these elements by a preponderance of the evidence, you should find for Defendant.

Source:  Utah Code Ann. § 13-24-9; D.I. 908 at 3; Water & Energy Sys. Tech., Inc. v. Keil, 974 P.2d 821, 822 (Utah 1999); Mo. Rev. Stat. § 417.465;

**PFIZER PROPOSED INSTRUCTION NO. 5 – Uniform Trade Secrets Act / Definition of a Trade Secret**

You must first decide whether the preponderance of evidence establishes that the information that BYU contends is a trade secret meets the definition of a trade secret under the Uniform Trade Secrets Act.

The Uniform Trade Secrets Act defines a "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that derives independent economic value, actual or potential, from not being generally known to or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  A compilation of information may constitute a trade secret.  However, the trade secret must be concrete and specific and cannot consist of a broad area of technology. Simply identifying documents and claiming that they contain trade secret information is not enough.

In other words, for information to be a trade secret under the Uniform Trade Secrets Act, BYU must identify with specificity exactly what trade secrets were allegedly used by Defendant and prove that the information:  (1) has independent economic value; (2) derives that value from not being generally known or readily ascertainable to people in the industry; and (3) was subject to reasonable efforts under the circumstances to maintain its secrecy.

If you find that BYU has failed to prove that it possessed a trade secret by a preponderance of the evidence, you must find for Defendant.

To determine whether the alleged trade secret was "generally known or readily ascertainable," you should consider:

1.      The extent to which the information was known by researchers, academics, and professionals in the pharmaceutical and drug development industry;

2.      The extent of measure taken by BYU to guard the secrecy of the alleged trade secret;

3.      The value of the alleged trade secret to BYU and others in the pharmaceutical and drug development industry;

4.      The amount of effort or money expended by BYU in developing the alleged trade secret; and

5.      The ease or difficulty with which the information could be properly acquired or duplicated by others.

If the alleged trade secret was "generally known or readily ascertainable," then the alleged trade secret cannot be claimed a trade secret, and your verdict must be for Defendant. For example, your verdict must be for Defendant if you believe that the alleged trade secret was already known by others in the industry and/or BYU did not take reasonable steps to maintain the secrecy of the alleged trade secret.

I have already decided that the following are not trade secrets:  (1) mouse COX-1 DNA and amino acid sequences; and (2) a restriction map for the mouse COX-1 DNA sequence.

Source:  Utah Code Ann. § 13-24-2(4); D.I. 908 at 3; USA Power, LLC v. PacifiCorp., 235 P.3d 749, 760 (Utah 2010); Utah Med. Prodcs., Inc. v. Clinical Innovations Assocs., 79 F. Supp. 2d 1290, 1313 (D. Utah 1999); Mo. Rev. Stat. § 417.453(4).

**PFIZER PROPOSED INSTRUCTION NO. 6  – Uniform Trade Secrets Act /
Misappropriation of a Trade Secret**

If you determine that the preponderance of evidence establishes that the information

BYU contends is a trade secret meets the requirements of the Uniform Trade Secret Act, you

must then determine whether Defendant misappropriated BYU's trade secrets.

Under the Uniform Trade Secrets Act, misappropriation includes:

1.     acquisition of a trade secret of another by a person who knows or has reason to
       know that the trade secret was acquired by improper means; or

2.     disclosure or use of a trade secret of another without express or implied consent
       by a person who:

3.     used improper means to acquire knowledge of the trade secret; or

4.     at the time of disclosure or use, knew or had reason to know that his knowledge of
       the trade secret was derived from or through a person who had utilized improper
       means to acquire it; or acquired under circumstances giving rise to a duty to
       maintain its secrecy or limit its use; or

5.     before a material change of his position, knew or had reason to know that it was a
       trade secret and that knowledge of it had been acquired by accident or mistake.

Under the Uniform Trade Secrets Act, "improper means" include breach of a duty—

either by written contract, verbal promise, or otherwise—to maintain secrecy.

If you find that BYU has failed to prove that its alleged trade secrets were

misappropriated by a preponderance of the evidence, then you must find for Defendant.

In addition, your verdict must be for Defendant if you believe that Defendant did not use

improper means to disclose or use the alleged trade secret.  For example, you may find that

Defendant had a right to disclose or use the information under ¶ 3.2 of the Research Agreement.

You may also find that Defendant had a right to disclose or use the information because BYU

made it available to the public.

Source:  Utah Code Ann. § 13-24-9; D.I. 908 at 3; Mo. Rev. Stat. § 417.465.

**\*\*SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL\*\***

**PFIZER PROPOSED INSTRUCTION NO. 7 – Breach of Contract Based On Hypothetical Patents; Introduction**

BYU alleges that Defendant breached the Research Agreement by failing to comply with ¶ 3.3, which BYU alleges required Defendant to notify BYU in the event that Defendant determined that research results obtained from the PROJECT are patentable.

Specifically, BYU alleges that Defendant breached ¶ 3.3 of the Research Agreement because Dr. Simmons made one or more inventions that Defendant determined were patentable PROJECT research results. BYU contends that if Defendant had not breached ¶ 3.3, that certain "hypothetical patents" would have been granted by the U.S. Patent & Trademark Office ("PTO"). BYU alleges that these hypothetical patents—which were never actually filed, but were prepared for purposes of this lawsuit—should have been filed at various points in 1992 with Dr. Simmons named as the sole inventor. BYU contends that it has suffered damages as a result of the fact that the hypothetical patents were not filed and issued by the PTO as valid (*i.e.*, actual) U.S. patents.

To prove its claim regarding ¶ 3.3 of the Research Agreement, BYU must prove by a preponderance of the evidence that:

1. ¶ 3.3 required Defendant to analyze the PROJECT research results and advise BYU whether such PROJECT research results were patentable; and

2. Dr. Simmons conceived of and was the sole inventor of each of the hypothetical patent claims in each of the hypothetical patents; and

3. Each of the hypothetical patent claims in each of the hypothetical patents was a patentable PROJECT research result; and

4. Defendant determined that such inventions were patentable and failed to so advise BYU; and

5.      The PTO would have "issued" each of the hypothetical patent claims in each of the hypothetical patents with all of the claims intact and without any modifications (*i.e.*, "valid"); and

6.      Defendant would have infringed one or more of the hypothetical patent claims after they would have issued; and

7.      Defendant would have negotiated a license for permission to practice the hypothetical claim.

Later in these instructions, I will explain in detail the requirements for proving that the PTO would have "issued" the hypothetical patents (#5 above) as "valid" patents.  In general, however, BYU must prove by a preponderance of the evidence that the PTO would have found each and every one of the hypothetical patent claims:  (i) not "anticipated" by prior art; (ii) not "obvious" in view of the prior art;  (iii) satisfied the "written description" requirement; and (iv) satisfied the "enablement" requirement.

Infringement (#6 above) must be assessed on a claim-by-claim basis.  Later in these instructions, I will explain in detail the requirements for proving infringement.

If you find that BYU has proved each and every one of these elements by a preponderance of evidence, then you may award to BYU money damages (#7 above).  I will instruct you a little later on the way in which you may assess whether BYU has proven the damages it claims to have sustained with "reasonable certainty."[3]

If you find that BYU has failed to prove any of these elements by a preponderance of the evidence, then you must find for Defendant.

To make your findings regarding the hypothetical patents, you will need to be familiar with certain principles of patent law.  I will instruct you on those principles now.

_____

[3] Pfizer will add additional damages instructions after the Court rules on the pending *Daubert* motions.

Source:  The Federal Circuit Bar Association, Model Patent Jury Instructions, § A.4; MAI 26.06;

**\*\*SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL\*\***

**PFIZER PROPOSED INSTRUCTION NO. 8 – Alleged Hypothetical Patents / What A Patent Is And How One Is Obtained**

~~This case involves a dispute relating to a United State patent.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.~~

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  The process of obtaining a patent is called patent prosecution.  A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission.  A violation of the patent owner's rights is called infringement.  The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO.  The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to us it so others skilled in the field will know how to make or use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification

adequately describes the invention claimed.  In examining a patent application, the patent

examiner reviews records available to the PTO for what is referred to as "prior art."  The

examiner also will review prior art if it is submitted to the PTO by the applicant.  Prior art is

defined by law, and I will give you at a later time specific instructions as to what constitutes

prior art.  However, in general, prior art includes things that existed before the claimed invention,

that were publicly known, or used in a publicly accessible way in this country, or that were

patented or described in a publication in any country.  The examiner considers, among other

things, whether each claim defines an invention that is new, useful, and not obvious in view of

the prior art.  A patent lists the prior art that the examiner considered; this list is called the "cited

references."

　　　　After the prior art search and examination of the application, the patent examiner then

informs the applicant in writing what the examiner has found and whether any claim is

patentable, and thus will be "allowed."  This writing from the patent examiner is called an

"office action."  If the examiner rejects the claims, the applicant then responds and sometimes

changes the claims or submits new claims.  This process, which takes place only between the

examiner and the patent applicant, may go back and forth for some time until the examiner is

satisfied that the application and claims meet the requirements for a patent.  The papers

generated during this time of communicating back and forth between the patent examiner and the

applicant make up what is called the "prosecution history."  All of this material becomes

available to the public no later than the date when the patent issues.

　　　　~~The fact that the PTO grants a patent does not necessarily mean that any invention~~

~~claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not~~

~~have had available to it all the information that will be presented to you. A person accused of~~

~~infringement has the right to argue here in federal court that a claimed invention in the patent is~~

~~invalid because it does not meet the requirements for a patent.~~

Source:  N.D. Cal. Model Patent Jury Instructions, A.1.

**\*\*SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL\*\***

**PFIZER PROPOSED INSTRUCTION NO. 9 – Alleged Hypothetical Patents / Patent Claims**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The claims of a patent are the numbered paragraphs at the end of a patent. ~~The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims cover.~~ The claims of a patent mark the boundaries of the invention claimed to have been made. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. The patent claims must define the particular thing claimed to have been invented, so that the public will know what that thing is, and so be able to avoid infringing.

Source:  The Federal Circuit Bar Association, Model Patent Jury Instructions, § 2.1; 35 U.S.C. § 112, ¶ 2.

**SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL**

**PFIZER PROPOSED INSTRUCTION NO. 10 – Alleged Hypothetical Patents / How A Claim Defines What It Covers**

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will

be asked to decide, such as infringement and invalidity.

Source:  The Federal Circuit Bar Association, Model Patent Jury Instructions, § 2.2

**SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL**

**PFIZER PROPOSED INSTRUCTION NO. 11 – Alleged Hypothetical Patents / Patent Claims**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

The remainder of the claims in the patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

Source: The Federal Circuit Bar Association, Model Patent Jury Instructions, § 2.2(a)

**\*\*SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL\*\***

**PFIZER PROPOSED INSTRUCTION NO. 12 – Alleged Hypothetical Patents / Inventorship of Hypothetical Patents**

You must first determine whether Dr. Simmons conceived of and was the sole inventor of the hypothetical patent claims. I will instruct you on conception and inventorship now.

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work.

An idea is sufficiently definite for conception when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea encompassed by his hypothetical patent claims.

In this case, the alleged claimed inventions are chemical compounds and methods of using chemical compounds. To prove that Dr. Simmons conceived of these patent claims, Plaintiffs must establish by a preponderance of the evidence that: (1) Dr. Simmons conceived the specific compound being claimed, with all of its component substituents, and (2) Dr. Simmons described how to obtain the compound.

Source: Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co., Inc., 973 F.2d 911, 916 (Fed. Cir. 1992); Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1358 (Fed. Cir. 2004); Univ. of Pittsburgh v. Hedrick, 573 F.3d 1290, 1297-98 (Fed. Cir. 2009); Creative Compounds, LLC v. Starmark Laboratories, 651 F.3d 1303, 1312 (Fed. Cir. 2011); Burroughs Wellcome Co. Barr Labs., Inc., 40 F.3d 1223, 1229 (Fed. Cir. 1994); The Federal Circuit Bar Association, Model Patent Jury Instructions, § 4.3(a)

**SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL**

**PFIZER PROPOSED INSTRUCTION NO. 13 – Alleged Hypothetical Patents / Prior Art**

Some of these instructions will refer to "prior art."  Prior art means technology and information that was publicly available before the date of the alleged invention.  In considering prior art, you should consider prior art that is relevant to the particular problem the inventor faced.

Prior art includes:  (1) patents issued more than one year before the filing date of the patent or before the date of the alleged invention; (2) publications having a date more than one year before the filing date of the patent or before the date of the alleged invention; (3) U.S. patents that have a filing date prior to the date of the alleged invention of the subject matter in the patent; (4) any process or apparatus in public use or on sale in the United States more than one year before the filing date of the patent in issue; (5) any process or apparatus that was publicly known or used by others in the country before the date of the alleged invention of the claimed subject matter in the patent; (6) subject matter that was not invented by the alleged inventor; and (7) subject matter that was made in this country by another person before the date of the alleged invention of the claimed subject matter in the patent and not abandoned, suppressed, or controlled.

**\*\*SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL\*\***

**PFIZER PROPOSED INSTRUCTION NO. 14 – Alleged Hypothetical Patents / Scope and Content of the Prior Art**

To qualify as prior art relevant to the patent, prior art references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.  Remember that prior art is not limited to patents and published materials, but also includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

Source:  N.D. Cal. Model Patent Jury Instructions, 4.3(b)

**\*\*SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL\*\***

**PFIZER PROPOSED INSTRUCTION NO. 15 – Alleged Hypothetical Patents / Differences Over the Prior Art**

In reaching your conclusion about whether or not any claims would have been obvious at the time the claimed invention was made, you should consider any difference or differences between the claimed invention and the prior art.

Source:  N.D. Cal. Model Patent Jury Instructions, 4.3(b)

**\*\*SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL\*\***

**PFIZER PROPOSED INSTRUCTION NO. 16 – Alleged Hypothetical Patents / Anticipation**

To determine whether the PTO would have issued the hypothetical patents without modification, BYU must prove by a preponderance of the evidence that the hypothetical patent claims would not have been "anticipated" by the prior art.  I will now explain to you what this means.

A patent is invalid if ~~the claimed invention is not new~~ someone else has already made the same invention.  In other words, the invention must be new.  For a claim to be invalid because it is not new, all of its requirements must have existed in a single product or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, this previous product, method, publication or patent is called a "prior art reference."  If an invention is not new, we say it is "anticipated" by a prior art reference.

The disclosure in the prior art reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use at least one embodiment of the claimed invention.

Here is a list of the ways that the PTO can determine that a patent claim was not new.  To prove their claim that Dr. Simmons would have been named an inventor on hypothetical patents had Defendants performed under the Research Agreement, Plaintiffs must prove that the PTO would have found that none of the following examples applies to the hypothetical patent claims:

1.     That the claimed invention was already publicly known or publicly used by others in the United States before [insert date of conception];

- 47 -

2. That the claimed invention was already patented or described in a printed publication anywhere in the world before XX;

3. That the subject matter of the claimed invention was already made by someone else in the United States before XX;

4. That the claimed invention was already described in another U.S. patent or published U.S. patent application that was based on a patent application filed before XX;

5. That Dr. Simmons did not invent the claimed subject matter but instead learned of the claimed subject matter from someone else.

If the hypothetical patent claim is not new as explained above, you must find that claim invalid.

Source:  N.D. Cal. Model Patent Jury Instructions (4.3a1); 35 U.S.C. § 102; Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1377 (Fed. Cir. 2003)

**SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL**

**PFIZER PROPOSED INSTRUCTION NO. 17  – Alleged Hypothetical Patents /
Obviousness**

Next, to determine whether the PTO would have issued the hypothetical patents without

modification, BYU must prove by a preponderance of the evidence that the hypothetical patent

claims would not have been "obvious" in view of the prior art.  I will now explain to you what

this means.

Not all innovations are patentable.  A patent claim is invalid if the claimed invention

would have been obvious to a person of ordinary skill in the field of the invention.  This means

that even if all the requirements of the claim cannot be found in a single prior art reference that

would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in

the field of the invention who knew about all of the prior art would have come up with the

claimed invention.

But a patent claim composed of several requirements is not proved obvious merely by

demonstrating that each of its requirements was independently known in the prior art.  Although

common sense directs one to look with care at a patent application that claims as innovation the

combination of known requirements according to their established functions to produce a

predictable result, it can be important to identify a reason that would have prompted a person of

ordinary skill in the relevant field to combine the requirements in the way the claimed new

invention does.  This is so because inventions in most, if not all, instances rely upon building

blocks long since uncovered, and claimed discoveries almost of necessity will be combinations

of what, in some sense, is already known.  Accordingly, you may evaluate whether there was

some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the

claimed invention, although proof of this is not a requirement to prove obviousness.  Teachings, suggestions, and motivations may be found in written references including the prior art itself.

However, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ.  Additionally, teachings, suggestions, and motivations may be found in the nature of the problem solved by the claimed invention, or any need or problem known in the field of the invention at the time of and addressed by the invention.

To prove their claim that Dr. Simmons would have been named a joint inventor on hypothetical patents had Defendants performed under the Research Agreement, Plaintiffs must prove that it is highly probable that the PTO would not have found the hypothetical patent claims obvious.

Therefore, in evaluating whether such a claim would have been obvious, you should consider a variety of factors:

1.     Whether the PTO would have identified a reason that would have prompted a person of ordinary skill in the field of the invention to combine the requirements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.

2.     Whether the claimed invention applies a known technique that had been used to improve a similar device or method in a similar way.

3.     Whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

You must be careful not to determine obviousness using hindsight; many true inventions can seem obvious after the fact.  You should put yourself in the position of a person of ordinary

skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

The ultimate conclusion of whether a claim a claim is obvious should be based on your determination of several factual issues:

First, you must decide the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.

Second, you must decide the scope and content of the prior art.  In determining the scope and content of the prior art, you must decide whether a reference is pertinent, or analogous, to the claimed invention.  Pertinent, or analogous, prior art is defined by the nature of the problem solved by the invention.  It includes prior art in the same field of endeavor as the claimed invention, regardless of the problem addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned.  Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

Plaintiff must prove that it is highly probable that the hypothetical patent claims would not have been found obvious by the PTO.

Source:  N.D. Cal. Model Patent Jury Instructions (4.3 – alternative 2); The Federal Circuit Bar Association, Model Patent Jury Instructions, § 4.3(c); 35 U.S.C. § 103; KSR Int'l Co v. Teleflex, Inc., 550 U.S. 398, 407 (2007); Graham v. John Deere Co., 383 U.S. 1 (1966).

**SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL**

**PFIZER PROPOSED INSTRUCTION NO. 18 – Alleged Hypothetical Patents / Written Description Requirement**

The patent law contains certain requirements for the part of the patent called the specification. BYU must prove by a preponderance of the evidence that the specifications of the hypothetical patents contain an adequate written description of the invention. [Alleged infringer] contends that claim(s) [ ] of [patent holder]'s [ ] patent [is/are] invalid because the specification of the [ ] patent does not contain an adequate written description of the invention. To succeed, [alleged infringer] must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention. In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued. An applicant may amend the claims or add new claims. These changes may narrow or broaden the scope of the claims. The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words,

structures, figures, diagrams, formulas, etc., contained in the patent application.  The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.

Source:  The Federal Circuit Bar Association, Model Patent Jury Instructions, § 4.2a; 35 U.S.C. § 112, ¶ 1; Ariad Pharms., Inc. v. Eli Lilly & Co., 598 F.3d 1336 (Fed. Cir. 2010) (en banc).

**SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL**

**PFIZER PROPOSED INSTRUCTION NO. 19 – Alleged Hypothetical Patents / Enablement**

BYU must also prove by a preponderance of the evidence that the specification contains a sufficiently full and clear description of how to make and use the full scope of the claimed invention. ~~The patent law contains certain requirements for the part of the patent called the specification. [Alleged infringer] contends that claim(s) [ ] of [patent holder]'s [ ] patent [is/are] invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention. To succeed, [alleged infringer] must show by clear and convincing evidence that the [ ] patent does not contain a sufficiently full and clear description of the claimed invention.~~ To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the original patent application was filed. This is known as the "enablement" requirement. If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of the original filing without having to conduct undue experimentation. However, some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors: (1) the time and cost of any necessary experimentation; (2) how routine any necessary experimentation is in the field; (3) whether the patent discloses specific working examples of the claimed invention; (4) the amount of guidance presented in the

patent; (5) the nature and predictability of the field; (6) the level of ordinary skill in the field of technology of the patent; and (7) the scope of the claimed invention.

No one or more of these factors is alone dispositive.  Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the original patent application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

Source:  The Federal Circuit Bar Association, Model Patent Jury Instructions, § 4.2b; 35 U.S.C. § 112, ¶ 1; Sitrick v. Dreamworks, LLC, 516 F.3d 993, 999 (Fed. Cir. 2008) ("'The scope of the claims must be less than or equal to the scope of the enablement' to 'ensure[ ] that the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims.'" (citation omitted)); Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc., 501 F.3d 1274, 1285 (Fed. Cir. 2007) (full scope of claimed invention must be enabled); AK Steel Corp. v. Sollac, 344 F.3d 1234, 1244 (Fed. Cir. 2003) (enabling the full scope of each claim is "part of the *quid pro quo* of the patent bargain").

**SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL**

**PFIZER PROPOSED INSTRUCTION NO. 20 – Alleged Hypothetical Patents / Infringement Generally**

If you find that BYU has proven by a preponderance of the evidence Dr. Simmons conceived of and was an inventor of the hypothetical patent claims, and that the PTO would have issued the hypothetical patent claims without any modifications, then you must also decide whether Defendant would have infringed the hypothetical patent claims.

Infringement of a patent occurs when a person uses the patented invention anywhere in the United States without the owner's permission while the patent is in force. This type of infringement is called "direct infringement." In addition to enforcing a patent against a direct infringer, a patent owner also has the right to enforce the patent against those who are known as "indirect infringers."

~~I will now instruct you how to decide whether or not [alleged infringer] has infringed the~~ ~~[ ] patent.~~ Infringement is assessed on a claim-by-claim basis. ~~Therefore, there may be~~ ~~infringement as to one claim but no infringement as to another.~~ That means you must determine, separately for each asserted claim, whether or not there is infringement. There is one exception to this rule. If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers to that independent claim.

On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the process meets additional requirements of any claims that depend from the independent claim.

~~In this case, there are five possible ways that a claim may be infringed. The five types of~~ ~~infringement are called: (1) direct infringement; (2) active inducement; (3) contributory~~

infringement; (4) infringement through the supply of components from the United States to another country; and (5) infringement through importation of a product made abroad by a patented process. Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. To prove indirect infringement, [patent holder] must also prove that [alleged infringer]'s indirect infringement caused direct infringement.

In this case, [patent holder] has alleged that [alleged infringer] directly infringes the [ ] patent. [[In addition,] [patent holder] has alleged that [alleged direct infringer] directly infringes the [ ] patent, and [alleged infringer] is liable for [actively inducing or contributing to] that direct infringement by [alleged direct infringer]. [Patent holder] has also alleged that [alleged infringer] is liable for [infringement through the supply of components from the United States for combination outside of the United States] [and/or] [infringement through importation into the United States of a product made by the patented process].]

In order to prove infringement, [patent holder] must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain the different types of infringement in more detail.

Source:  Federal Circuit Bar Association, Model Patent Jury Instructions, § 3.1; 35 U.S.C. § 271; Warner-Lambert Co. v. Teva Pharms. USA, Inc., 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005) (infringement must be proven by a preponderance of the evidence); Kim v. ConAgra Foods, Inc., 465 F.3d 1312, 1316, n.1 (Fed. Cir. 2006) (dependent claims not infringed when independent claim not infringed).

**<u>SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL</u>**

**PFIZER PROPOSED INSTRUCTION NO. 21 – Alleged Hypothetical Patents / Direct Infringement**

BYU may direct infringement by demonstrating that the Defendant's own use of the accused products infringes one of the hypothetical patent claims.  In order for you to find that Defendant's use of the accused products directly infringes one of the hypothetical patent claims, you must find that Defendant has performed each and every element of one of the hypothetical patent claims.

In making your determination, you must consider each claim separately.

<u>Source</u>:  35 U.S.C. § 271(a); <u>BMC Resources, Inc. v. Paymentech, L.P.</u>, 498 F.3d 1373, 1378 (Fed. Cir. 2007) (a method claim "is infringed only where the alleged infringer performs or uses 'each and every step or element of a claimed method or product'").

**SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL**

**PFIZER PROPOSED INSTRUCTION NO. 22 – Alleged Hypothetical Patents / Literal Infringement**

~~There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."~~  In order to prove literal infringement, BYU must prove that Defendant used an accused device in a way that literally meets all of the requirements of a claim.  You must compare Defendant's use of an accused device with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.  In other words, a patent claim is literally infringed when the same combination of steps found in the patent claim can also be found identically in the  use of the accused products by Defendant.

~~You must determine, separately for each asserted claim, whether or not there is infringement. There is one exception to this rule. If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the [product or process] meets additional requirements of any claims that depend from the independent claim, thus, whether those claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own~~

Source:  Federal Circuit Bar Association, Model Patent Jury Instructions, § 3.1a; BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373, 1378 (Fed. Cir. 2007) (a method claim "is infringed only where the alleged infringer performs or uses 'each and every step or element of a claimed method or product'").

**\*\*SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL\*\***

**PFIZER PROPOSED INSTRUCTION NO. 23 – Alleged Hypothetical Patents / Indirect Infringement**

There are two types of indirect infringement:  (1) active inducement of infringement; and (2) contributory infringement.  Active inducement of infringement refers to the act of encouraging or inducing others to infringe a patent.  Contributory infringement refers to the act of contributing to the infringement of others by, for example, supplying them with components used in the patented invention.  ~~In this case, there are five possible ways that a claim may be infringed. The five types of infringement are called: (1) direct infringement; (2) active inducement; (3) contributory infringement; (4) infringement through the supply of components from the United States to another country; and (5) infringement through importation of a product made abroad by a patented process. Active inducement and contributory infringement are referred to as indirect infringement.~~

There can be no indirect infringement unless someone else is directly infringing the patent.  Thus, in order to prove that Defendant has induced others to infringe the hypothetical patent claims or has contributed to another's infringement, BYU must also prove that the other person has directly infringed the hypothetical patent claims.

Source:  Federal Circuit Bar Association, Model Patent Jury Instructions, § 3.1

**SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL****

**PFIZER PROPOSED INSTRUCTION NO. 24 – Alleged Hypothetical Patents / Active Inducement**

~~[Patent holder] alleges that [alleged infringer] is liable for infringement by actively inducing [someone else] [some other company] to directly infringe the [ ] patent literally or under the doctrine of equivalents.~~  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Defendant is liable for active inducement of a claim only if BYU proves each of the following elements by a preponderance of the evidence that:

1.      Defendant took action intending to cause acts of infringement by a third party;

2.      Defendant was aware of the hypothetical patent claims and knew or should have known that the acts, if taken, would constitute infringement of the hypothetical patent claims; and

3.      The acts were actually carried out by the third party and directly infringed one of the hypothetical patent claims.

In order to establish active inducement of infringement, it is not sufficient that a third party itself directly infringes the claim.  Nor is it sufficient that Defendant was aware of the acts by the third party that allegedly constitute the direct infringement.  Rather, BYU must prove that Defendant had specifically intended the third party to infringe the hypothetical patent claims or that Defendant believed there was a high probability that the third party would infringe the hypothetical patent claims, but remained willfully blind to the infringing nature of the third party's acts.

Source:  Federal Circuit Bar Association, Model Patent Jury Instructions, § 3.2; Global-Tech Appliances, Inc. v. SEB S.A., 131 S.Ct. 2060, 2068-71 (2011).

**SUBJECT TO PFIZER'S DAUBERT MOTION TO EXCLUDE NORVIEL**

**PFIZER PROPOSED INSTRUCTION NO. 25 – Alleged Hypothetical Patents / Contributory Infringement**

BYU asserts that Defendant's selling of the accused products has contributed to the infringement of the hypothetical patent claims by doctors and patients.  As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.  Defendant is liable for contributory infringement of the hypothetical patent claims only if BYU proves each of the following elements by a preponderance of the evidence:

1. Defendant sells, offers to sell, or imports within the United States a component of a product, or apparatus for use in a process;

2. The component or apparatus has no substantial, noninfringing use;

3. The component or apparatus constitutes a material part of the invention;

4. Defendant is aware of the hypothetical patent claims and knows that the product for which component has no other substantial use may be covered by one of the hypothetical patent claims or may satisfy one of the hypothetical patent claims under the doctrine of equivalents; and

5. That use directly infringes the claim.

To prove contributory infringement, BYU must prove that each of the above requirements is met.  This proof of each requirement must be by a preponderance of the evidence.

Source:  Federal Circuit Bar Association, Model Patent Jury Instructions, § 3.3

**PFIZER PROPOSED INSTRUCTION NO. 26 – Damages / Introduction[4]**

If you find that BYU has proved one or more of its claims against Defendant, you may award money damages to BYU.

The fact that I am instructing you on damages does not mean that I am indicating that you should award any – that is entirely for you, the jury, to decide.

Any damages you award must have a reasonable basis in the evidence. They need not be mathematically exact, but there must be enough evidence for you to make a reasonable estimate of damages without speculation or guesswork.

The burden is upon BYU to prove the existence and amount of their damages and that his damages were caused by the acts of Defendant. You are not permitted to award speculative damages.

I will now instruct you on the legal requirements for the damages that BYU seeks from Defendant.

---

[4] Pfizer will add additional damages instructions after the Court rules on the pending *Daubert* motions.

**PFIZER PROPOSED INSTRUCTION NO. 27 – Damages / Uniform Trade Secrets Act**

If you decide that BYU proved one or more of its claims against the Defendants for misappropriation of trade secrets, you also must decide how much money would reasonably compensate BYU for the harm caused by the misappropriation.

To recover damages, BYU must prove that there is a causal connection, i.e., a nexus, between the misappropriation and an economic benefit to Defendant.  Damages can include only the economic benefit received by Defendant during the period in which the information is entitled to protection as a trade secret, plus the additional period, if any, in which Defendant retained a advantage over other competitors because of the misappropriation.

You may award exemplary, *i.e.*, punitive, damages only if you find that BYU has proven by clear and convincing evidence that Defendant acted willfully and maliciously in misappropriating BYU's trade secrets.  An act is willfully done if done voluntarily and intentionally and with the specific intent to commit such an act.  An act is maliciously done, if promoted or accompanied by ill will or such gross indifference to the rights of others as to amount to a willful act done intentionally without just cause or excuse.

Source:  Uniform Act Comment to § 3; Restatement (Third) of Unfair Competition § 45 cmt H; Utah Code Ann. § 13-24-4(2); ClearOne Communications, Inc. v. Chiang, C.A. No. 07-37-TC (D. Utah).

**PFIZER PROPOSED INSTRUCTION NO. 28  – Damages / Mitigation**

BYU has a duty to exercise reasonable diligence and ordinary care to minimize the damages allegedly caused by Defendant.  Any damages awarded to BYU must not include those that BYU could have avoided by taking reasonable steps.  ~~It is [name of defendant]'s burden to prove that [name of plaintiff] could have minimized [his] damages, but failed to do so. If [name of plaintiff] made reasonable efforts to minimize [his] damages, then your award should include the amounts that [he] reasonably incurred to minimize them~~.

<u>Source</u>:  Model Utah Jury Instructions, CV2020.

**PFIZER PROPOSED INSTRUCTION NO. 29 – Damages / Multiple Claims**

You must not double-count damages for more than one claim against Defendant.  For example, if you award damages to Plaintiffs for the breach of contract claim, you should not also award those same damages for the inventorship or the trade secrets claim.

**PFIZER PROPOSED INSTRUCTION NO. 30 – Statute of Limitations**

Defendant contends that BYU filed this lawsuit too late, and, as a result, BYU's claims are barred by the statute of limitations.  Defendant contends that BYU should have known as early as March 27, 1992 (the date of termination of the Research Agreement), and as late as 1994 (when certain Monsanto publications regarding its COX-2 research became available), that BYU had a claim regarding Defendant's alleged breach of the Research Agreement and Defendant's alleged use of purported BYU trade secrets.

You must find for Defendant if Defendant proves by a preponderance of the evidence that as early as March 27, 1992 and as late as 1994, BYU and/or Dr. Simmons had actual knowledge or, by the exercise of reasonable diligence, should have discovered that it had claims for Defendant's alleged breach of the Research Agreement and Defendant's alleged use of purported BYU trade secrets.

<u>Source</u>:  Utah Code Ann. § 13-24-7; Utah Code Ann. § 78B-2-307(3); Utah Code Ann. § 78B-2-309(2).

**PFIZER PROPOSED INSTRUCTION NO. 31  – Laches / Waiver / Estoppel**

Defendant contends that BYU is not entitled to recover damages for acts that occurred before it filed a lawsuit because:  (1) BYU delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) Defendant has been or will be prejudiced in a significant way due to BYU's delay in filing the lawsuit.  This is referred to as laches.  Defendant must prove delay and prejudice by a preponderance of the evidence.

Whether BYU's delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay.  There is no minimum amount of delay required to establish laches.  If suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted.  This presumption shifts the burden of proof to BYU to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if BYU presents such evidence, the burden of proving laches remains with Defendant.  Laches may be found for delays of less than six years if there is proof of unreasonably long and unjustifiable delay causing material prejudice to Defendant.  Facts and circumstances that can justify a long delay can include:

1.  being involved in other litigation during the period of delay;

2.  being involved in negotiations with Defendant during the period of delay;

3.  poverty or illness during the period of delay;

4.  wartime conditions during the period of delay;

5.  being involved in a dispute about ownership of the patent during the period of delay; or

6.  minimal amounts of allegedly infringing activity by Defendant during the period of delay.

If you find unreasonable and unjustified delay occurred, to find laches, you must also

determine if Defendant suffered material prejudice as a result of the delay.  Prejudice to

Defendant can be evidentiary or economic.  Whether Defendant suffered evidentiary prejudice is

a question that must be answered by evaluating whether delay in filing this case resulted in

Defendant not being able to present a full and fair defense on the merits to BYU's infringement

claim.  Not being able to present a full and fair defense on the merits to an infringement claim

can occur due to the loss of important records, the death or impairment of an important

witness(es), the unreliability of memories about important events because they occurred in the

distant past, or other similar types of things.  Economic prejudice is determined by whether or

not Defendant changed its economic position in a significant way during the period of delay

resulting in losses beyond merely paying for infringement (such as if Defendant could have

switched to a noninfringing product if sued earlier), and also whether Defendant's losses as a

result of that change in economic position likely would have been avoided if BYU had filed this

lawsuit sooner.  In all scenarios though, the ultimate determination of whether laches should

apply in this case is a question of fairness, given all the facts and circumstances.  Thus, you may

find that laches does not apply if there is no evidence establishing each of the three elements

noted above (unreasonable delay, lack of excuse or justification, and significant prejudice).  You

may also find that even though all of the elements of laches have been proved, it should not, in

fairness, apply, given all the facts and circumstances in this case.

Source:  Federal Circuit Bar Association, Model Patent Jury Instructions, § 5.2; Rich v. Class,
643 S.W.2d 872, 876–77 (Mo. App. E.D. 1982)

**DRAFT PROPOSED VERDICT FORM**


QUESTIONS AND ANSWERS

We, the jury, unanimously agree to the answers to the following questions and return them under the instructions of this court as our verdict in this case.

## I. CONTRACT

### A. 1.6

1.      Has BYU proven by a preponderance of the evidence that Pfizer breached Paragraph 1.6 of the Research Agreement?

        Yes _____   No _____

2.      If you found a breach of Paragraph 1.6, was that breach justified by BYU's failure to perform under the Research Agreement?

        Yes _____   No _____

3.      If you found a breach of Paragraph 1.6, is that claim barred by the statute of limitations?

        Yes _____   No _____

4.      If you found a breach of Paragraph 1.6, was that breach justified by waiver, laches, or estoppel?

        Yes _____   No _____

If your answer to Question I.A.1 was NO and/or your answer to Question I.A.2., 3, OR 4 was YES, proceed to Question I.B.1.  If your Answer to Question I.A.1 was YES and your answer to each of Questions I.A.2, 3, and 4 was NO, proceed to Question I.A.5.

5.      Has BYU proven by a preponderance of the evidence that it suffered damages that were proximately caused by a breach of Paragraph 1.6 of the Research Agreement?

        Yes _____   No _____

If your answer to Question I.A.5 was NO, proceed to Question I.B.1.  If your answer to Question I.A.5 was YES, proceed to Question I.A.6.

6.      What amount of damages has BYU proven to a reasonable degree of certainty that it is entitled to with respect to a breach of Paragraph 1.6 of the Research Agreement?

        _____

### B. 3.1

1.      Has BYU proven by clear and convincing evidence that Daniel Simmons made a significant contribution to the subject matter of any of the following claims:

        [list specific claims of each of the three Pfizer patents at issue]

        Yes _____   No _____ [FOR EACH]

If you answered NO with respect to each claim listed in Question I.B.1, proceed to Question I.C.1.  If you answered YES with respect to any claim listed in Question I.B.1, proceed to Question I.B.2.

2.      With respect to any claim for which you answered YES in Question 1.B.1, was Daniel Simmons' contribution in the prior art?

        Yes _____   No _____

If you answered YES with respect to each claim at issue in Question I.B.2, proceed to Question I.C.1.  If you answered NO with respect to any claim at issue in Question I.B.2, proceed to Question I.B.3.

3.      With respect to any claim for which you answered YES in Question I.B.1 and NO in Question I.B.2, has BYU proven by clear and convincing evidence that Dr. Simmons collaborated with one or more named inventors with respect to the subject matter of the claim?

        Yes _____   No _____

If you answered NO with respect to each claim at issue in Question I.B.3, proceed to question I.C.1.  If you answered YES with respect to any claim at issue in Question I.B.3, proceed to Question I.B.4.

4.      Has BYU proven by a preponderance of the evidence that Pfizer breached Paragraph 3.1 of the Research Agreement?

        Yes _____   No _____

5.      If you found a breach of Paragraph 3.1, was that breach justified by BYU's failure to perform under the Research Agreement?

        Yes _____   No _____

6.      If you found a breach of Paragraph 3.1, is that claim barred by the statute of limitations?

        Yes _____   No _____

7.      If you found a breach of Paragraph 3.1, was that breach justified by waiver, laches, or estoppel?

        Yes _____   No _____

If your answer to Question I.B.4 was NO and/or your answer to Question I.B.5, 6, OR 7 was YES, proceed to Question I.C.1.  If your Answer to Question I.B.4 was YES and your answer to each of Questions I.B.5, 6, and 7 was NO, proceed to Question I.B.8.

8.      Has BYU proven by a preponderance of the evidence that it suffered damages that were proximately caused by a breach of Paragraph 3.1 of the Research Agreement?

        Yes _____   No _____

If your answer to Question I.B.8 was NO, proceed to Question I.C.1.  If your answer to Question I.B.8 was YES, proceed to Question I.B.9.

9.      What amount of damages has BYU proven to a reasonable degree of certainty that it is entitled to with respect to a breach of Paragraph 3.1 of the Research Agreement?

        _____


**C**.    **3.3**

1.      Has BYU proven by a preponderance of the evidence that Pfizer breached Paragraph 3.3 of the Research Agreement?

        Yes _____   No _____

2.      If you found a breach of Paragraph 3.1, was that breach justified by BYU's failure to perform under the Research Agreement?

        Yes _____   No _____

3.      If you found a breach of Paragraph 3.1, is that claim barred by the statute of limitations?

        Yes _____   No _____

4.      If you found a breach of Paragraph 3.1, was that breach justified by waiver, laches, or estoppel?

        Yes _____   No _____

If your answer to Question I.C.1 was NO and/or your answer to Question I.C.2., 3, OR 4 was YES, proceed to Question I.D.1.  If your Answer to Question I.C.1 was YES and your answer to each of Questions 2, 3, and 4 was NO, proceed to Question I.C.5.

5.      With respect to Paragraph 3.3, do you find that BYU has proven by a preponderance of the evidence that Pfizer should have filed or caused to be filed any of the following hypothetical patent claims on Pfizer's behalf?

[list]

        Yes _____   No _____  [WITH RESPECT TO EACH]

If you answered NO to each, proceed to Question I.D.1.  If you answered YES to any, proceed to Question I.C.6.

6.      With respect to each of the hypothetical patent claims, if any, identified in Question I.C.5, above, has BYU carried its burden of proving by a preponderance of the evidence that the hypothetical patent claim would have been:

    a.      Nonobvious

            Yes _____   No _____

    b.      Not anticipated

            Yes _____   No _____

    c.      Described with adequate written description

            Yes _____   No _____

    d.      Enabled

            Yes _____   No _____

    e.      Infringed by Pfizer

            Yes _____   No _____

    f.      Infringed by Merck

            Yes _____   No _____

If  you answered NO, to ANY of I.C.6, a, b, c, or d, proceed to Question 1.D.1.  If you answered YES to all of I.C.6, a, b, c, and d and NO to both I.C.6.e and I.C.6.f, proceed to Question I.D.1.  If you answered YES to all of I.C.6, a, b, c, and d and YES to I.C.6.e OR I.C.6.f, proceed to Question I.C.7.

7.      Has BYU proven by a preponderance of the evidence that it suffered damages that were proximately caused by a breach of Paragraph 3.3 of the Research Agreement?

            Yes _____   No _____

If your answer to Question I.C.7 was NO, proceed to Question I.D.1.  If your answer to Question I.C.7 was YES, proceed to Question I.C.8.

8.      What amount of damages has BYU proven to a reasonable degree of certainty that it is entitled to with respect to a breach of Paragraph 3.3 of the Research Agreement?

            _____

**D.     4.1**

1.      Has BYU proven by a preponderance of the evidence that Pfizer breached Paragraph 4.1 of the Research Agreement?

         Yes _____   No _____

2.      If you found a breach of Paragraph 4.1, was that breach justified by BYU's failure to perform under the Research Agreement?

         Yes _____   No _____

3.      If you found a breach of Paragraph 4.1, is that claim barred by the statute of limitations?

         Yes _____   No _____

4.      If you found a breach of Paragraph 4.1, was that breach justified by waiver, laches, or estoppel?

         Yes _____   No _____

5.      If you found a breach of Paragraph 4.1, was that breach justified by a license to Pfizer under Paragraph 3.2 of the Research Agreement?

         Yes _____   No _____

If your answer to Question I.D.1 was NO and/or your answer to Question I.D.2., 3, 4, or 5 was YES, proceed to Question I.E.1.  If your Answer to Question I.D.1 was YES and your answer to each of Questions I.D.2, 3, 4 and 5 was NO, proceed to Question I.D.6.

6.      Has BYU proven by a preponderance of the evidence that it suffered damages that were proximately caused by a breach of Paragraph 4.1 of the Research Agreement?

         Yes _____   No _____

If your answer to Question I.D.6 was NO, proceed to Question I.E.1.  If your answer to Question I.D.5 was YES, proceed to Questions I.D.7. and I.D.8.

7.      Has Pfizer proven by a preponderance of the evidence that BYU failed to mitigate damages with respect to Pfizer's breach of Paragraph 4.1 of the Research Agreement?

         Yes _____   No _____

8.      What amount of damages has BYU proven to a reasonable degree of certainty that it is entitled to with respect to a breach of Paragraph 4.1 of the Research Agreement?

         _____

**E.      Wrongful Termination**

1.      Has BYU proven by a preponderance of the evidence that Pfizer wrongfully terminated the Research Agreement?

       Yes _____  No _____

If your answer to Question I.E.1 was NO, proceed to Question II.  If your answer to Question I.E.1 was YES, proceed to Question I.E.2.

2.      Was Pfizer's termination justified by BYU's failure to perform under the Research Agreement?

       Yes _____  No _____

3.      Is BYU's claim for wrongful termination barred by the statute of limitations?

       Yes _____  No _____

4.      Is BYU's wrongful termination claim barred by waiver, laches, or estoppel?

       Yes _____  No _____

If your answer to Question I.E.1 was NO and/or your answer to Question I.E.2., 3, OR 4 was YES, proceed to Question II.  If your Answer to Question I.E.1 was YES and your answer to each of Questions I.E.2, 3, and 4 was NO, proceed to Question I.E.5.

5.      Has BYU proven by a preponderance of the evidence that it suffered damages that were proximately caused by a wrongful termination of the Research Agreement?

       Yes _____  No _____

If your answer to Question I.E.5 was NO, proceed to Question II.  If your answer to Question I.E.5 was YES, proceed to Questions I.E.6 and 7.

6.      Has Pfizer proven by a preponderance of the evidence that BYU failed to mitigate damages with respect to the wrongful termination of the Research Agreement?

       Yes _____  No _____

7.      What amount of damages has BYU proven to a reasonable degree of certainty that it is entitled to with respect to a wrongful termination of the Research Agreement?

      _____

II.     **IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

A.      Has BYU proven by a preponderance of the evidence that Pfizer breached the implied covenant of good faith and fair dealing with respect to any of the following provisions of the Research Agreement?

[list relevant provisions]

Yes _____   No _____   (FOR EACH)

B.      If you found a breach of the implied covenant of good faith and fear dealing, is that breach justified by BYU's failure to perform under the Research Agreement?

        Yes _____   No _____

C.      If you found a breach of the implied covenant of good faith and fear dealing, is that claim barred by the statute of limitations?

        Yes _____   No _____

D.      If you found a breach of the implied covenant of good faith and fear dealing, was that breach justified by waiver, laches, or estoppel?

        Yes _____   No _____

If your answer to Question II.A was NO and/or your answer to Question II.B, C, OR D was YES, proceed to Question III.  If your Answer to Question II was YES and your answer to each of Questions II.B, C, and D was NO, proceed to Question II.E.

E.      If you found a breach of the implied covenant of good faith and fair dealing with respect to Paragraph 3.3 of the Research Agreement, proceed with the following questions.  If not, proceed to Question II.F.

        1.      Do you find that BYU has proven by a preponderance of the evidence that Pfizer should have filed or caused to be filed any of the following hypothetical patent claims on Pfizer's behalf?

        [list]

        Yes _____   No _____   [FOR EACH]

If you answered NO to each, proceed to Question II.F.  If you answered YES to any, proceed to Question II.E.2.

        2.      With respect to each of the hypothetical patent claims, if any, identified in Question II.E.1, above, has BYU carried its burden of proving by a preponderance of the evidence that the hypothetical patent claim would have been:

        a.      Nonobvious

- 77 -

Yes _____   No _____

b.      Not anticipated

Yes _____   No _____

c.      Described with adequate written description

Yes _____   No _____

d.      Enabled

Yes _____   No _____

e.      Infringed by Pfizer

Yes _____   No _____

f.      Infringed by Merck

Yes _____   No _____

If you answered NO, to ANY of II.E.2 a, b, c, or d, proceed to Question II.F.  If you answered YES to all of II.E.2.a, b, c, and d and NO to both II.E.2 e and II.E.2.f, proceed to Question II.F.  If you answered YES to all of II.E.2 a, b, c, and d and YES to I.C.6.e OR II.E.2.f proceed to Question II.E.3.

3.      Has BYU proven by a preponderance of the evidence that it suffered damages that were proximately caused by a breach of the implied covenant of good faith and fair dealing with respect to Paragraph 3.3 of the Research Agreement?

Yes _____   No _____

If your answer to Question II.E.3 was NO, proceed to Question II.F.  If your answer to Question II.E.3 was YES, proceed to Question II.E.4

4.      What amount of damages has BYU proven to a reasonable degree of certainty that it is entitled to with respect to a breach of the implied covenant of good faith and fair dealing with respect to Paragraph 3.3 of the Research Agreement?

_____

F.      If you found a breach of the implied covenant of good faith and fair dealing with respect to any provisions of the Research Agreement other than Paragraph 3.3, answer the following questions:

1.      Has BYU proven by a preponderance of the evidence that it suffered damages that were proximately caused by a breach of the implied covenant of good faith and fair dealing?

Yes _____   No _____

If your answer to Question II.F.1 was NO, proceed to Question III.  If your answer to Question III.F.1 was YES, proceed to Questions I.F.2 and 3.

2.      Has Pfizer proven by a preponderance of the evidence that BYU failed to mitigate damages with respect to breach of the implied covenant of good faith and fair dealing?

Yes _____   No _____

3.      What amount of damages has BYU proven to a reasonable degree of certainty that it is entitled to with respect to a breach of the implied covenant of good faith and fair dealing?

Yes _____   No _____

### III.    FIDUCIARY DUTY

A.      Has BYU proven by a preponderance of the evidence that it had a fiduciary relationship with Pfizer by virtue of a "joint venture"?

      Yes _____   No _____

If you answered No to Question III.A then Proceed to Question IV.  If you answered YES to Question III.A, then proceed to III.B.

B.      Has BYU proven by a preponderance of the evidence that Pfizer breached the fiduciary duty it owed to BYU?

      Yes _____   No _____

If you answered NO to Question III.B then proceed to Question IV.  If you answered YES to Question III.B, then proceed to Question III.C.

C.      Has BYU proven by a preponderance of the evidence that it suffered damages that were proximately caused by a breach of fiduciary duty?

      Yes _____   No _____

D..      What amount of damages has BYU proven to a reasonable degree of certainty that it is entitled to with respect to a breach of fiduciary duty?

      Yes _____   No _____

**IV.     UNIFORM TRADE SECRET ACT**

A.      Has BYU proven by a preponderance of the evidence that it provided Pfizer with a confidential trade secret(s) that was not otherwise readily available to Pfizer or any other individual or entity working in the field?

>          Yes _____   No _____

If you answered NO to Question IV.A  then proceed to the end of the verdict form.  If you answered YES to Question IV.A. then proceed to Question IV.B.

B.      Indicate which of the following material(s) you find that BYU has proven by a preponderance of the evidence was a trade secret.

[List of material]

>          Yes _____   No _____ [FOR EACH]

C.      With respect to each of the trade secrets identified in Question IV, B, has BYU proven by a preponderance of the evidence that Pfizer misappropriated that trade secret?

>          Yes _____   No _____

If you answered NO with respect to each item addressed in Question IV.C, proceed to the end of the Verdict Form.  If you answered YES with respect to any item addressed in Question IV.C, proceed to Question IV.D.

D.      With respect to any of the items with respect to which you responded YES in Question IV.C, has Pfizer proven that its misappropriation was excused or BYU's claim is barred by any of the following:

>          a.      Statute of limitations

>                   Yes _____   No _____

>          b.      License under Paragraph 3.2 of the license agreement

>                   Yes _____   No _____

>          c.      Waiver

>                   Yes _____   No _____

>          d.      Estoppel

>                   Yes _____   No _____

e.      Laches

Yes _____ No _____


If there are any items for which you did not answer YES with respect to ANY of Questions II.D.a,b,c,d, or e., proceed to Questions IV.E, F, and G.  If there are no such items, proceed to the end of the Verdict Form.

E.      With respect to each trade secret, has BYU proven by a preponderance of the evidence that it suffered damages that were proximately caused by Pfizer's misappropriation?

Yes _____ No _____

F.      What amount of damages has BYU proven to a reasonable degree of certainty that it is entitled to with respect to each trade secret?

Yes _____ No _____

G.      With respect to each trade secret, has BYU proven by clear and convincing evidence that Pfizer's misappropriation was willful and malicious?

Yes _____ No _____

Respectfully submitted this 24th day of April, 2012.

  /s/ Brent O. Hatch                          
Brent O. Hatch
**HATCH, JAMES & DODGE, P.C.**

Richard T. Mulloy
**DLA PIPER LLP**

William F. Lee
**WILMER CUTLER PICKERING HALE AND DORR LLP**

*Attorneys for Defendants Pfizer Inc.,*
*G.D. Searle LLC, and Pharmacia Corporation*