James S. Jardine (1647)
Mark M. Bettilyon (4798)
Samuel C. Straight (7638)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
jjardine@rqn.com
mbettilyon@rqn.com
sstraight@rqn.com

Leo R. Beus (admitted *pro hac vice*)
L. Richard Williams (admitted *pro hac vice*)
Mark C. Dangerfield (admitted *pro hac vice*)
BEUS GILBERT PLLC
4800 North Scottsdale Road, Suite 6000
Scottsdale, Arizona  85251
Telephone: 480-429-3000
Facsimile:  480-429-3100
lbeus@beusgilbert.com
rwilliams@beusgilbert.com
mdangerfield@beusgilbert.com

David B. Thomas – (3228)
Office of the General Counsel
Brigham Young University
A-350 ASB
Provo, Utah 84602
Telephone:  801-422-4722
Facsimile:  801-422-0265
Dave_Thomas@byu.edu

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, a Utah Non-Profit Education Institution; and Dr. DANIEL L. SIMMONS, an individual,<br><br>                                    Plaintiffs,<br>            vs.<br><br>PFIZER, INC., a Delaware corporation; G.D. SEARLE & COMPANY, a Delaware corporation; G.D. SEARLE LLC, a Delaware limited liability company; MONSANTO COMPANY, a Delaware corporation; and PHARMACIA CORPORATION, a Delaware corporation,<br><br>                                    Defendants. | Case Number: 2:06-CV-890-TS<br><br>**REPLY IN SUPPORT OF OBJECTION TO THE MAGISTRATE JUDGE'S MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PERMISSION TO PROVIDE CERTAIN DOCUMENTS LABELED AS CONFIDENTIAL UNDER THE PROTECTIVE ORDER**<br><br>Judge Ted Stewart |

1

**INTRODUCTION**

Pfizer makes no effort to show that the aging documents BYU seeks to share with Teva contain any legitimately confidential material, and neither this Court nor any other court has ever so held. And as shown by the four "confidential" documents attached as Exhibit 2-5 to BYU's Objection—which include a letter *from* BYU, a promotion announcement, a complaint filed in federal court, and a letter to the editor of a scientific journal—the documents are anything but.

Furthermore, it is undisputed that each of the "Designated Documents" BYU seeks to share with Teva is now a "judicial document" to which a "presumption of immediate public access attaches under both the common law and the *First Amendment*."[1] Hence, the documents "should not remain under seal *absent the most compelling reasons*,"[2] and the presumption of access can be overcome only by "specific, on-the-record findings that higher values necessitate a narrowly tailored sealing."[3]

The focus of those on-the-record findings must be the content of the documents themselves: do the documents contain important and sensitive material that would unfairly harm Pfizer—and Pfizer bears the burden of so showing.[4]

But the magistrate judge, following Pfizer's arguments, ignored the content of the documents, focusing instead on the notion that BYU would be sharing them as part of a "business transaction" with Teva, a Pfizer "competitor." In truth, BYU is the real "competitor" here, and Pfizer's opposition is just another link in the chain of steps Pfizer has—from the very beginning—taken to prevent BYU from getting its rightful share of Celebrex® profits.

---

[1] *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 126 (2d Cir. 2006).
[2] *Id.,* 435 F.3d at 123 (citing *Joy v. North,* 692 F.2d at 893 (italics added).
[3] *Lugosch,* 435 F.3d at 126.
[4] *Rushford v. The New Yorker Magazine,* 846 F.2d 249, 253 (4th Cir. 1988).

1

Teva is involved for only one reason, as a potential licensee through which BYU could exercise its claimed right to manufacture and market Celebrex®. That is hardly an unrelated business transaction; it goes to the very core of this lawsuit. BYU claims an ownership interest in the invention that led to Celebrex®, and Dr. Simmons claims to be a co-inventor on the Celebrex® patents. And as this Court recently ruled—based on some of the very documents Pfizer wants to continue to keep secret—BYU's claims have considerable substance:

> The Court finds that BYU has put forward evidence (1) that Simmons discovered COX-2 and conceived of a method for determining whether a compound was COX-2 selective; (2) that Simmons's contribution was greater than the exercise of ordinary skill; and (3) that Pfizer used Simmons's method in developing its own COX-2 inhibitor.[5]

Hence, the Court concluded, "a reasonable juror could infer from this information that the inventors of the disputed [Celebrex®] patents built off Simmons's work," thus making Dr. Simmons a co-inventor of Celebrex®.[6] But as Pfizer knows—after having prevented BYU from capitalizing on its interest in Celebrex® for over a decade—those patents now have only a few years remaining lifespan. So Pfizer continues to try and block BYU's effective of use of the patents in every way it can. That is why Pfizer opposes BYU's request.

The magistrate judge erred as a matter of law in denying BYU's request to share the documents with Teva, because she applied the wrong legal standard. Specifically, she found that BYU just had a "business purpose" for wanting to share the documents, rather than wanting to share them "for a more general public benefit," and such a business purpose did "not create a compelling reason for disclosure…"[7] But since these are now judicial documents, the test is not whether there is "a compelling reason for disclosure," but just the opposite: are there compelling

---

[5] Mem. Dec. and Ord., 22 Mar 12, Dkt. 911, at pp. 8-9.

[6] *Id.,* at p. 10.

[7] Mem. Dec. and Ord., 9 Mar 12, Dkt. 893, at p. 10.

2

reasons—based on the content of the documents—for *not* requiring disclosure. Moreover, BYU's motive for wanting to share the documents is irrelevant; the case law accepted by the magistrate squarely rejects that standard. As the Second Circuit held in *Lugosch,* "we believe **motive** generally **to be irrelevant** to defining the weight accorded the presumption of access."[8]

The Court should therefore find that BYU may share the Designated Documents with Teva.

I. <u>**FACTUAL BACKGROUND.**</u>

Early in this case, BYU and Pfizer stipulated to a protective order that allowed Pfizer to designate documents as "confidential" or "highly confidential," thus restricting BYU's use of those documents.[9] Under the protective order, the Court does not review, and has not reviewed, whether the documents really do contain sensitive or proprietary information. With the Court's permission, the protective order allows the parties to disclose information "more broadly than would be otherwise permitted" by its strict terms, and is also subject to formal modification.[10]

With only one named exception, paragraph 4 of the protective order expressly allows the parties, without notice and without seeking approval, to share the confidential documents with individuals or companies who will serve as "consultants and experts," so long as those individuals or companies agree to use the documents only for purposes of such consultation or testimony.[11] The one exception Pfizer insisted on was the pharmaceutical company, Merck: the

---

[8] *Lugosch,* 435 F.3d at 123 (emphasis added); *cf.* Mem. Dec. and Ord., 9 Mar 12, Dkt. 893, at p. 7 (citing *Lugosch* and finding that the "weight of authority in other circuits supports the Second Circuit's holdings" in *Lugosch*).

[9] *See* Stipulated Mot. for Protective Ord., 5 Jun 07, Dkt. 42.

[10] *Id.* at p. 15, ¶ 18(f) ("any party [may] petition the Court for permission to disclose the or use particular Protected Information more broadly than would otherwise be permitted by the terms of this protective order"); p. 18-19, ¶ 25 (any party or a third party may "seek relief from the Court, upon good cause shown, from any of the restrictions" in the protective order).

[11] *Id.* at p. 8, ¶ 4(c).

protective order specifically forbids sharing documents with Merck.[12] Conspicuous by its absence is any restriction in the protective order barring disclosure to Teva.

The only documents BYU now seeks to share with Teva are "judicial documents" to which a "presumption of immediate public access attaches under both the common law and the *First Amendment.*"[13] Each of the Designated Documents was submitted by either Pfizer or BYU in support or opposition to motions for summary judgment on which the Court has ruled. And because "summary judgment adjudicates substantive rights and serves as a substitute for trial," documents submitted to the Court for either purpose are treated the same.[14]

Furthermore—in an effort to placate Pfizer—BYU has agreed that it will only make the documents available to Teva counsel, and that Teva counsel receiving the documents will further agree not to use them except to evaluate a proposed license agreement relating to the Celebrex® patents on which Dr. Simmons is an asserted co-inventor. And because Pfizer complained that the documents BYU intended to share included its current financial information that Pfizer claimed was sensitive, BYU also agreed not to share those documents.

Finally, as the magistrate judge acknowledged, Pfizer in any event produced many of these documents to Teva counsel several years ago in litigation with Teva, though Teva discarded them at the end of that litigation as required.

Despite the above, Pfizer argues that it will suffer some nameless prejudice if Teva is given access again to this limited set of documents.

---

[12] *Id.*

[13] *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 126 (2d Cir. 2006). Oddly, though courts typically encourage litigants to narrow the scope of discovery disputes if possible, Pfizer seems critical of BYU for reducing the number of documents it seeks to share to only those that are now judicial documents.

[14] *Rushford v. The New Yorker Magazine, Inc.,* 846 F.2d 249, 252 (4th Cir. 1988).

4

## II. PFIZER HAS SHOWN NO PREJUDICE FROM SHARING THE DESIGNATED DOCUMENTS WITH TEVA, AND THE MAGISTRATE JUDGE LACKED ANY FACTS DEMONSTRATING SUCH.

In its Response to BYU's Objection, Pfizer cites "the substantial prejudice" BYU's request supposedly presents to Pfizer. But Pfizer's evidence on this crucial point makes no reference to the Designated Documents at all. Rather, Pfizer simply describes how Teva is a "direct competitor" of Pfizer, and has been engaged in litigation with Pfizer.[15]

But those facts by themselves are meaningless, unless Pfizer can show that the Designated Documents—most of which are scientific documents that are 15-20 years old—are truly confidential and will in fact give Teva some unfair business advantage. And Pfizer has made no attempt to make such a showing. In the briefing before the magistrate, the sole type of documents that Pfizer specifically expressed concern about was financial documents—and BYU thus promptly modified its request so as to exclude those documents from disclosure.[16]

A critical fact about the Designated Documents is that Pfizer, and only Pfizer, has designated the documents as "confidential." The magistrate's order merely assumes, without discussion, that the Designated Documents contain "confidential information" that "could be harmful to Pfizer" if a competitor got a "sneak-peak" at it.[17] And the magistrate acknowledged that, in fact, "[m]any of the Designated Documents were previously disclosed to Teva in its prior litigation with Pfizer…"[18] Nonetheless, the magistrate's underlying ruling expressed concern that "[a]llowing a modification for a business purpose at the expense of one's adversary" would create "distrust" of confidentiality orders and maybe "open the floodgates" to requests for modifications.

---

[15] Pfizer Resp. at iii-vi.

[16] Pfizer Mem. in Opp., 14 Feb 12, Dkt. 867 at p. 9.

[17] Mem. Dec. and Ord., 9 Mar 12, Dkt. 893 at p. 8.

[18] *Id.* at p. 8.

5

All such analysis, however—in addition to being speculative—ignores the factual context here: the narrowly-defined Designated Documents at issue have all been submitted to the Court and used in deciding the rights and obligations of the parties in suit. That fact fundamentally changes the nature of the documents.

### III. THE MAGISTRATE JUDGE FAILED TO STATE ANY JUSTIFIABLE REASONS FOR DENYING BYU'S REQUEST.

As discussed above, the magistrate's ruling focused on the purpose for permitting access. But once there is a presumption of public access, the purpose for that access has no significance, unless the contents of the documents themselves include sensitive or proprietary information that might be unfairly used for the stated purpose. As the Second Circuit explained:

> Although the presumption of access is based on the need for the public monitoring of federal courts, **those who seek access to particular information may want it for entirely different reasons**. However, we believe **motive generally to be irrelevant** to defining the weight accorded the presumption of access.[19]

Pfizer argues that motive or purpose can be taken into account, citing *dicta* from the Supreme Court's decision in *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589 (1978). But Pfizer misunderstands the *dicta* and ignores the facts and the holding. The *dicta* Pfizer cites is that "Courts have refused to permit their files to serve as…sources of business information that might harm a litigant's competitive standing."[20] In other words, the focus must be on the *content* of the files themselves. If those files don't contain sensitive or proprietary information, no inquiry about purpose is appropriate.

*Nixon* itself involved a company that sought access to ex-President Nixon's famous presidential tapes. The tapes had been put into evidence at a criminal trial for several

---

[19] *Lugosch,* 435 F.3d at 123, *quoting United States v. Amodeo,* 71 F.3d 1044, 1050 (2d Cir. 1995) (emphasis added).

[20] 435 U.S. at 598.

"Watergate" figures, and the press and public were given full access to the published transcripts of the tapes. Nixon, however, objected to the production of the *audio recordings themselves*, on several grounds, arguing among other things that he had a "property interest in the sound of his own voice" and that "his privacy would be infringed if aural copies of the tapes were distributed to the public."[21]

The Court viewed the case as "unique," however, and did not "weigh the interests advanced by the parties in light of the public interest and the duty of the courts." Instead, it decided the case on the basis of a federal law, the Presidential Recordings and Materials Preservation Act, 44 USC § 2107, finding that—in light of this Act—the common law right of public access to judicial records did not authorize the District Court to release the tapes themselves.[22]

Pfizer also cites *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985), which contains the same quote from the *Nixon dicta*. But the *Hickey* case merely underscores the importance of the *contents* of the files sought. Mark Hopkinson was a convicted murderer who had in the past found ways to have people killed even while he was in prison. Hopkinson sought access to a sealed plea bargain of Michael Hickey, a prosecution witness who testified against Hopkinson at trial, and who then entered the witness protection program. The trial court was concerned that giving Hopkinson access to the sealed Hickey plea bargain might aid Hopkinson in locating Hickey. So the focus was on the contents of the documents sought to be disclosed.

But, other than financial information, which BYU has agreed not to share, Pfizer has studiously avoided any specific claim as to what in the Designated Documents is truly sensitive or proprietary. For example, at p. 9 of its Response to BYU's motion, Pfizer merely cited the financial information, along with general concerns about disclosing "the strategies that lead

---

[21] 435 U.S. at 600-602.

[22] *Id.,* 435 U.S. at 603-604.

Pfizer to discover Celebrex®, develop it into a drug, and secure regulatory approval for its marketing,"—with no citation to specific documents supposedly containing such information.[23] Such generalized concerns do not satisfy Pfizer's burden to show "compelling" reasons for maintaining the secrecy of the documents at issue.

### IV. CONTRARY TO PFIZER, BYU IS ENTITLED TO A PRESUMPTION OF ACCESS.

Pfizer also makes—for the first time—the near-frivolous argument that, by signing the protective order in this case, "BYU waived its First Amendment rights," and now "cannot argue that these rights have been violated"[24] In doing so, Pfizer wrongly relies on *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32 (1984).  In fact, *Seattle Times* does not support Pfizer's argument in any respect, and courts have specifically rejected such an argument. In *Rushford v. The New Yorker Magazine, Inc.,* for example, the Fourth Circuit bluntly said: "We find The New Yorker's reliance on *Seattle Times v. Rhinehart* [citation omitted] to be unpersuasive." As the court then explained:

> In *Seattle Times,* the Supreme Court merely held that the *First Amendment* did not preclude the district court from entering a protective order limiting disclosure of the products of pretrial discovery. **However, such discovery**, which is ordinarily conducted in private, **stands on a wholly different footing** than does **a motion filed by a party seeking action by the court**.

In *Rushford,* the trial court had entered a protective order to protect the confidentiality of six documents. Three of those documents were later filed under seal as part of a summary judgment motion. Just as the magistrate judge admitted in her ruling in this matter, the New Yorker acknowledged that, if the parties went to trial, the documents would have been revealed

---

[23] Pfizer Resp., 9 Apr 12, Dkt. 936 at 9.

[24] Pfizer Resp., 9 Apr 12, Dkt. 936 at 6.

to the public and would lose their protection under the protective order. As the court then emphasized:

> Because summary judgment adjudicates substantive rights and serves as a substitute for a trial, we fail to see the difference between a trial and the situation before us now.[25]

The Fourth Circuit then discussed how, under the common law, there was now a "presumption of access" accorded to the records, and that the "party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption."[26] Moreover, under the stricter *First Amendment* standard, any "denial of access" to such documents "must be necessitated by a compelling government interest and narrowly tailored to serve that interest."[27]

In this case, Pfizer never met its burden of showing that sharing the contents of the Designated Documents with Teva counsel would unfairly harm Pfizer, or that there was any "compelling government interest" at stake. Nor did the magistrate judge even consider the contents of the documents, but merely assumed that they were truly "confidential."

## **CONCLUSION**

For all these reasons, the March 9 Order should be reversed and the requested disclosure allowed.

---

[25] 846 F.2d at 252.

[26] 846 F.2d at 253.

[27] *Id.*

9

DATED this 26th day of April, 2012.

        **BEUS GILBERT PLLC**

By   */s/ Mark C. Dangerfield*
      Leo R. Beus
      L. Richard Williams
      Mark C. Dangerfield

RAY QUINNEY & NEBEKER P.C.
      James S. Jardine
      Mark M. Bettilyon
      Samuel C. Straight

OFFICE OF THE GENERAL COUNSEL
      David B. Thomas
      BRIGHAM YOUNG UNIVERSITY

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of April, 2012, I electronically filed the foregoing Reply In Support Of Objection To The Magistrate Judge's Memorandum Decision And Order Denying Motion For Permission To Provide Certain Documents Labeled As Confidential Under The Protective Order, with the Clerk of the United States District, District of Utah Central Division, using the CM/ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Richard O'Malley, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL  60603<br>Telephone:  312-853-3577<br>Facsimile:  312-853-7036<br>romalley@sidley.com | John Caleb Dougherty, Esq.<br>Richard T. Mulloy, Esq.<br>Kathy J. Owen, Esq.<br>DLA PIPER<br>6225 Smith Avenue<br>Baltimore, MD  21209<br>Telephone:  410-580-4140<br>Facsimile:  410-580-3140<br>john.dougherty@dlapiper.com<br>richard.mulloy@dlapiper.com<br>kathy.owen@dlapiper.com |
| Brent O. Hatch, Esq.<br>Phillip J. Russell, Esq.<br>Hatch, James & Dodge, P.C.<br>10 W. Broadway, Ste. 400<br>Salt Lake City, UT  84101<br>Telephone:  801-363-6363<br>Facsimile:  801-363-6666<br>bhatch@hjdlaw.com<br>prussell@hjdlaw.com | William F. Lee, Esq.<br>Amy K. Wigmore, Esq.<br>WilmerHale<br>60 State Street<br>Boston, MA  02109<br>Telephone:  617-526-6000<br>Facsimile:  617-526-5000<br>william.lee@wilmerhale.com<br>amy.wigmore@wilmerhale.com |

*s/Mark C. Dangerfield*

1175424

11